UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, | : | **COMPLAINT** |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| SARENE SERVICES, INC. d/b/a SERENE HOME NURSING AGENCY; IRENE MANOLIAS, Individually, | : | |
| Defendants. | : | |

## INTRODUCTION

Plaintiff EUGENE SCALIA, Secretary of Labor, United States Department of Labor (the "Secretary" or "Plaintiff"), by and through undersigned counsel, brings this action pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq*.) (the "Act" or the "FLSA"), alleging that Sarene Services Inc., d/b/a Serene Home Nursing Agency, and Irene Manolias (collectively, "Defendants") violated Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages, to enjoin acts and practices that violate the provisions of the FLSA, and to obtain other appropriate relief.

Defendants, who operate a home care agency in Patchogue, New York, violated the FLSA by failing to pay their home health aide employees for all hours worked. Defendants employ aides to stay constantly present with people who need home care 24 hours a day, seven days a week, because they cannot care for themselves or be left alone. Defendants paid aides only a set amount of hours per day, even though they knew aides worked far more given the needs of those they cared for.

Since at least March 15, 2017, until in or around mid-2019, Defendants paid aides for only 12.5 hours per day, regardless of the actual hours they worked. In or around mid-2019, Defendants began paying aides for 13 hours a day, again, regardless of the actual hours worked. However, Defendants' aides consistently worked far more hours than Defendants paid them for, usually 16 hours a day or more. Aides were regularly required to work at night but Defendants did not pay for this time. In fact, Defendants automatically deducted eight hours of sleep time from aides' compensable hours every 24 hours regardless of whether aides were required to work during the night and unable to sleep for at least five hours total. Similarly, even though aides generally were not able to take bona-fide meal periods or rest breaks throughout the day, Defendants automatically deducted three hours from aides' compensable hours every 24 hours for meal periods and rest breaks.

Since at least March 15, 2017, to the present (the "relevant time period"), Defendants continuously violated the minimum wage and overtime requirements of the FLSA by failing to pay for all hours worked. Defendants also violated the FLSA by failing to keep accurate and proper records of aides' actual work hours. All of these violations are continuing.

The employees listed in Exhibit A are owed millions of dollars in unpaid back wages and liquidated damages as a result of these violations for the period between 2017 and 2019 alone. However, it is likely that additional back wages and liquidated damages are owed to, and continuing to accrue for, current and former Serene employees who are presently unknown to Plaintiff.

## JURISDICTION AND VENUE

1. Jurisdiction over this action is properly conferred upon this Court by Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the United States District Court for the Eastern District of New York because a substantial part of the events and/or omissions giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### The Parties

3. Plaintiff EUGENE SCALIA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages and is the proper plaintiff for this action.

4. Defendant SARENE SERVICES, INC. d/b/a SERENE HOME NURSING AGENCY ("Serene") is a New York corporation, having its principle place of business at 42 Academy Street, Patchogue, NY 11772, within the jurisdiction of this Court.

5. Defendant Serene is a home care agency providing services to Medicaid and Medicare beneficiaries, enrollees in commercial insurance programs, and private pay clients (all "consumers" of services).

6. The services Defendant Serene provides to consumers include home health aide services, personal aide services, and nursing services.

7. Defendant Serene regulated the employment of all persons employed by it during the relevant time period, acting directly and indirectly in the company's interest in relation to the employees, and thus is an employer of the employees within the meaning of Section 3(d) of the Act.

8. Defendant IRENE MANOLIAS ("Manolias") is the Chief Executive Officer of Defendant Serene and maintained that title during the relevant time period.

9. Defendant Manolias was the majority shareholder of Defendant Serene during the relevant time period.

10. Defendant Manolias was in active control and management of Defendant Serene during the relevant time period.

11. Defendant Manolias' LinkedIn profile states that she is in charge of Serene's "day-to-day business operations of planning, directing, coordinating, and supervising the delivery of home care services . . .," among other responsibilities at Serene.

12. Defendant Manolias told the Wage & Hour Division, U.S. Department of Labor, that she was responsible for setting pay and time policies for Defendant Serene.

13. Defendant Manolias regulated the employment of all persons employed by her during the relevant time period.

14. Defendant Manolias had the authority to supervise employees at Defendant Serene during the relevant time period.

15. Defendant Manolias supervised employees at Defendant Serene during the relevant time period.

16. Defendant Manolias had the authority to control employees' hours of work at Defendant Serene during the relevant time period.

17. Defendant Manolias controlled employees' hours of work at Defendant Serene during the relevant time period.

18. Defendant Manolias had the authority to determine employees' compensation at Defendant Serene during the relevant time period.

19. Defendant Manolias determined employees' compensation at Defendant Serene during the relevant time period.

20. Defendant Manolias had authority to hire employees at Defendant Serene during the relevant time period.

21. Upon information and belief, Defendant Manolias hired employees at Defendant Serene during the relevant time period.

22. Upon information and belief, Defendant Manolias had the authority to fire employees at Defendant Serene during the relevant time period.

23. Upon information and belief, Defendant Manolias fired employees at Defendant Serene during the relevant time period.

24. Defendant Manolias acted directly and indirectly in the interest of Defendant Serene in relation to the employees during the relevant time period and is therefore an employer of the employees within the meaning of Section 3(d) of the Act.

25. Defendant Manolias resides in Medford, New York, within the jurisdiction of this Court.

**Defendants' Employees Affected Commerce**

26. Defendants employed home health aides throughout the relevant time period.

27. Home health aides are domestic service employees as prescribed by 29 C.F.R. Part 552.

28. Employment of persons in domestic service in households affects commerce. Thus, Defendants' domestic service employees were covered employees under Section 2(a) of the Act.

**Defendant Serene Is an Enterprise Engaged in Commerce**

29. Defendant Serene operated a home care agency throughout the relevant time period.

30. Defendant Serene had an annual gross volume of sales made or business done in an amount not less than $500,000 throughout the relevant time period.

31. Throughout the relevant time period, Defendant Serene employed domestic service employees handling and using goods or materials that have been moved in or produced for

commerce, such as cleaning products, food, and sterilization or other medical supplies. In addition, Defendant Serene maintained federal contracts.

32. Therefore, Serene's employees were employed in enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the Act.

**Defendants' Home Health Aides' Duties and Working Conditions**

33. Defendants' home health aides care for consumers who need home care services because their medical conditions dictate that they cannot care for themselves and cannot be left alone. Many of the consumers aides care for are home-bound or bed-bound, meaning that they cannot leave their home on their own and may also have limited mobility even within their home.

34. Defendants' home health aides were constantly present with the consumers they care for, 24 hours a day, seven days a week, including overnight. Defendants call these home health aides "live-in" aides.

35. Aides' duties involved personal care and medically-related services, including but not limited to: assisting consumers with ambulation, toileting, washing, and dressing; administering medications; food shopping; cooking meals and feeding consumers; changing linens; washing laundry; light house cleaning; calling doctors and nurses, and accompanying consumers to doctor visits.

36. Generally, aides were only relieved from duty and able to leave the consumer's home when the consumer's family members visited for short periods of time on a weekly or monthly basis, or when aides took unpaid leave for vacation.

37. On some assignments, aides did not have private living quarters furnished with a bed and other furniture in a homelike environment, with a place to leave belongings while on and off duty.

38. Sometimes aides worked shorter workweeks, usually one, two, or three days, filling in for other aides. The aides filling in were subject to the same work conditions and payment practices as the aides for whom they covered. Defendants also refer to aides filling in as "live-in" aides when they fill in under these circumstances.

**Defendants' Pay Practices**

39. Defendants paid aides for a set amount of hours each 24-hour period an aide was on duty (referred to throughout as a "day" or "shift"), regardless of the actual hours the aide worked within that period.

40. Defendants paid aides by the hour, and paid time-and-a-half of the aides' regular rate for some hours over 40, but failed to pay aides at all for a significant amount of hours worked each week.

41. From at least March 15, 2017, until around mid-2019, Defendants paid aides for only 12.5 hours per day, regardless of the actual hours they worked.

42. For example, though aides generally worked far more than 87.5 hours per week, Defendants' records show that where aides were on duty for seven days per week in 2018, Defendants paid them for exactly 87.5 hours, that is, 12.5 hours per day, regardless of actual hours worked.

43. In or around mid-2019, Defendants began paying aides for 13 hours per day, regardless of the actual hours they worked.

44. Defendants automatically deducted eight hours of sleep time from aides' compensable hours every shift, regardless of the fact that aides often worked during these hours.

45. Similarly, even though aides generally were not able to take bona-fide meal periods or rest breaks throughout the day, Defendants automatically deducted three hours from every shift for meal periods and rest breaks.

46. In fact, aides worked far more hours than they were paid for. Because they were often called to work during sleep time, and unable to take bona-fide meal or rest breaks, Defendants' aides usually worked 16 hours a day or more.

47. Aides usually worked 112 hours or more when on duty for seven days a week.

48. Aides who filled in for another aide usually worked 48 hours or more when on duty for three days a week.

49. During the relevant time period, aides were constantly on call and did not have time free from their duties when they could leave the premises and use time for their own purposes.

50. During the relevant time period, aides were regularly interrupted to care for a consumer even if they were able to take a few minutes to themselves.

51. During the relevant time period, many aides were solely responsible for the consumer they cared for, with no relief, and therefore could not leave for even a few minutes to step outside alone.

52. During the relevant time period, many aides ate all their meals with the consumer they were caring for, without any break for time to themselves throughout the day.

53. In addition, Defendants did not pay aides for time worked during interruptions to their sleep.

54. Aides' unpaid sleep time interruptions often required several hours of work providing care for consumers.

55. During the relevant time period, aides checked a consumer's bed positioning in the middle of the night, when necessary according to the consumer's diagnoses or conditions.

56. During the relevant time period, aides repositioned a consumer every two hours at night when necessary according to the consumer's diagnoses or conditions.

57. During the relevant time period, aides spent several hours a night several times per week assisting a consumer during episodes related to a mental health diagnosis.

58. During the relevant time period, aides emptied a consumer's catheter every two hours at night when necessary according to the consumer's diagnoses or conditions.

59. During the relevant time period, aides helped a bed-bound consumer to the bathroom at night for as much as 30 minutes when necessary according to the consumer's diagnoses or conditions.

60. During the relevant time period, aides spent several hours at night at the hospital with a consumer when medical emergencies arose.

61. Given the frequent interruptions to their sleep, at times Defendants' aides did not get reasonable periods of uninterrupted sleep totaling at least five hours.

62. As a result of the fact that they worked through any breaks and faced regular interruptions to sleep during which they were required to work, Defendants' aides regularly worked between 3 and 11 unpaid hours each day.

63. Accordingly, from at least March 15, 2017 to in or around mid-2019, Defendants failed to compensate aides any overtime premiums for hours worked over 87.5 each week.

64. Accordingly, from in or around mid-2019 to present, Defendants failed to compensate aides any overtime premiums for hours worked over 90 each week.

65. In addition, Defendants failed to pay even the federal minimum wage in a week an aide worked upwards of 19 hours in a single shift but was paid for only 12.5 hours of work. In those circumstances, the aide's hourly rate of pay fell below the federal minimum wage.

66. As a result of Defendants' practice of paying aides only 12.5 hours a day when aides worked far more hours for which they were not paid, Defendants violated the FLSA's requirement to pay the minimum wage. *See* 29 U.S.C. § 206.

67. Furthermore, as a result of Defendants' practice of paying aides only 12.5 or 13 hours a day when aides worked far more hours for which they were not paid, Defendants violated the FLSA's requirement to pay time-and-a-half of a worker's regular rate of pay in overtime compensation. *See* 29 U.S.C. § 207.

68. Defendants maintained the same or substantially the same unlawful pay practices for aides throughout the relevant time period.

**Defendants' Recordkeeping Violations and Knowledge of Uncompensated Time Worked**

69. Defendants did not maintain and preserve adequate and accurate records of aides' hours worked as prescribed by 29 C.F.R. Part 516.

70. Specifically, Defendants did not maintain and preserve records of actual hours worked by all aides.

71. For example, during the relevant period, Defendants maintained weekly "time sheets" for aides. These time sheets, in the "hours" section, listed the number of days aides are on duty, and under "time-in" and "time-out," contained a written notation: "live-in," without any record of start or end times worked.

72. In or around April 2020, Defendants removed any boxes to enter "time in" or "time out" from their time sheets and added a section requiring employees to confirm that they did not

experience any break or sleep time interruptions. These time sheets did not ask the aide to report how much time they worked during any break or sleep time interruptions they did experience.

73. Since early 2020, Defendants required aides to clock-in on a phone application at a specified time in the morning, clock-out at that same time the next day, and then clock-in again immediately thereafter. These time recording requirements captured the hours aides were on duty (24 hours a day, seven days a week, for example), but not how much time aides actually spent performing specific duties for a consumer versus time that aides spent sleeping or resting. Defendants' phone application also purports to capture whether an aide experienced any break or sleep time interruptions.

74. However, even when aides reported time worked during sleep or break time interruptions, Defendants did not pay them for this time.

75. In addition, Defendants knew that each aide was generally the sole person on the premises with the consumer and/or the sole person responsible for the consumer's care and well-being and therefore could not leave the premises or be completely relieved from duty.

76. Based on each consumer's diagnoses, Defendants knew when consumers' needs were such that aides could not get at least five hours of sleep and were constantly on duty and on call. Defendants' time sheets specified the tasks aides must perform to provide appropriate care. For example, patients that were bed-bound must be repositioned every two hours; patients who were incontinent must be changed and/or carried to the bathroom frequently.

77. In addition, upon information and belief, as a provider of Medicaid-funded home care services and contractor with a managed long term care plan, Serene was aware of the content of the regular assessments of consumers' needs in connection with the authorization of Medicaid payment for home care services.

78. The assessments related to Medicaid payment detailed the specific consumers' needs which made clear when consumers needed constant care such that an aide could not take bona fide meal periods and breaks, or get five hours of sleep, and/or that any meal periods, breaks, and/or sleep were frequently interrupted by a call to duty to care for the consumer. In fact, these assessments regularly contained information reporting that an aide was not able to take breaks, was called to work at night to provide care, and did not get at least five hours of sleep.

79. Therefore, Defendants were well aware that aides were required to work far more hours than Defendants paid them for.

## TOLLING AGREEMENT

80. On or about May 28, 2020, the Secretary and Defendants knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement ("tolling agreement").

81. The tolling agreement tolls the applicable statute of limitations from March 15, 2019 through July 20, 2020.

82. Accordingly, the Act's statute of limitations, as applied to all Defendants, shall be tolled from March 15, 2019 until and including July 20, 2020.

## FIRST CAUSE OF ACTION
**Violations of 6 and 15(a)(2) of the FLSA, Failure to Pay Minimum Wage**

83. The Secretary incorporates by reference and re-alleges the foregoing allegations in the Complaint.

84. Defendants violated Sections 6 and 15(a)(2) of the Act by employing aides in domestic service and in an enterprise engaged in commerce or in the production of goods for commerce without compensating the employees the statutory minimum wage rate.

85. Therefore, Defendants are liable for unpaid minimum wages owed to aides under Section 6 of the Act and an additional equal amount as liquidated damages pursuant to Section

16(c) of the Act, or in the event that liquidated damages are not awarded, minimum wages and prejudgment interest under Section 17 of the Act.

**SECOND CAUSE OF ACTION**
**Violation of Sections 7 and 15(a)(2) of the FLSA, Failure to Pay Overtime**

86. The Secretary incorporates by reference and re-alleges the foregoing allegations in the Complaint.

87. Defendants violated Sections 7 and 15(a)(2) of the Act by employing aides in domestic service and in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer than 40 hours without compensating the employees for their employment in excess of the prescribed hours at rates not less than one-and-one-half times the regular rates at which they were employed.

88. Therefore, Defendants are liable for unpaid overtime compensation owed to aides under Section 7 of the Act and an additional equal amount as liquidated damages pursuant to Section 16(c) of the Act, or in the event that liquidated damages are not awarded, overtime compensation and prejudgment interest under Section 17 of the Act.

**THIRD CAUSE OF ACTION**
**Violation of Sections 11(c) and 15(a)(5) of the FLSA, Failure to Keep Records**

89. The Secretary incorporates by reference and re-alleges the foregoing allegations in the Complaint.

90. Defendants have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants have failed to make, keep, and preserve adequate and accurate records as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants providing the following relief:

(1) An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act; and

(2) An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid minimum wage and overtime compensation found due employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional minimum wage and overtime compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the relevant time period); or,

(3) In the event liquidated damages are not awarded, an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid minimum wage and overtime compensation found due Defendants' employees, and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

(4) An order compelling Defendants to reimburse the Secretary for the costs of this action; and

(5) An order granting such other relief as the Court may deem necessary or appropriate.

DATED: July 21, 2020
New York, NY

KATE S. O'SCANNLAIN
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

s/ B. Carina De La Paz
B. CARINA DE LA PAZ
Trial Attorney

s/ Hollis V. Pfitsch
HOLLIS V. PFITSCH
Trial Attorney

U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel.: 646.264.3654, 3667
Fax: 646.264.3660
Email: delapaz.barbara.c@dol.gov, pfitsch.hollis.v@dol.gov

*Attorneys for the Secretary of Labor, Eugene Scalia*