# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,

Plaintiff,

-against-

SARENE SERVICES, INC. d/b/a SERENE HOME NURSING AGENCY and IRENE MANOLIAS, Individually,

Defendants.

Civil Action No.: 2:20-cv-03273 (WFK/ST)

---

March 29, 2024
5:06 p.m.

DEPOSITION of NEKIETA SMITH, taken by Defendants, pursuant to Notice, held at the offices of SERENE HOME NURSING AGENCY, 42 Academy Street, Patchogue, New York before Wayne Hock, a Notary Public of the State of New York.

N. Smith

A. No, I said oh, that's the reason why someone from Serene called me and was asking me about my lunch break and my sleep time.

Q. Did the person from Serene tell you about the lawsuit?

A. No.

Q. Let's go back to your testimony.

You said you learned about the lawsuit when somebody from Serene called you and asked you about your lunch breaks and sleep time?

A. No, I said after the person called me, it was then that I learned about the lawsuit.

Q. So how did you first learn about the lawsuit?

A. After the person called me, then I heard from -- I keep forgetting her name.

MS. DE LA PAZ: Hollis.

THE WITNESS: Hollis.

Q. So you learned about the lawsuit.

N. Smith

Who told you about the lawsuit first?

A. Hollis.

Q. When she called you?

A. Yes.

Q. And what did she tell you that the lawsuit was about?

MS. DE LA PAZ: Objection to form.

THE WITNESS: She told me that there was a lawsuit going on with Serene for unpaid time and lunch with the employees.

Q. Was that the first time you thought you could be owed money by Serene for your unpaid lunch breaks and sleep time?

A. No.

Q. Did you decide that this lawsuit applied to you because you weren't paid for your sleep time and meal breaks?

A. Yes.

Q. Do you expect to receive money in this lawsuit?

N. Smith

nobody named Jim or Jimmy that works for Serene, would that change your testimony today?

A. No.

Q. Could Jim or Jimmy have been from the Department of Labor?

A. No.

Q. James Daly?

A. No.

Q. So do you see the third paragraph? Did Jim tell you that you did not need the certificate? What certificate are you referring to?

A. No. He told me that if I sign the DocuSign that was sent to me, they would offer me a certificate from Serene, and I told him I do not need a certificate.

Q. What type of certificate did he offer you?

A. I think it's some honor certificate or something like that.

Q. Did you ever get that while you were employed by Serene?

N. Smith

A. No.

Q. So it was an honor certificate?

A. He said it was a certificate like something like honor certificate or something like that. I don't remember exactly. But he offered like, if I don't sign it, I wouldn't get a certificate and I told him I don't need a certificate.

Q. Did he explain to you what the certificate was?

A. No.

Q. Did you ask him what the certificate was?

A. No, because I was not interested in getting the certificate, so I did not ask him what the certificate was for.

Q. What happened when you didn't sign the declaration? What did Serene do to you when you did not sign the declaration?

MS. DE LA PAZ: Objection to form.

THE WITNESS: What they did to me?

N. Smith

Q. Did they retaliate against you for not signing the declaration?

A. Like I told you, I was told if I do not sign it and I need a reference, I will not get a reference.

Q. Did Serene offer you a job?

A. Yes.

Q. Did you consider that to be retaliation?

MS. DE LA PAZ: Objection to form.

THE WITNESS: No, I think that would be them trying to get me to sign the paper so they're offering me a job, so they decided to offer me a job.

Q. Did you ask Serene for a job?

A. No, I did not. No, I did not ask for a job.

Q. Did Serene tell you to speak to somebody in HR about a job?

A. No, no, no.

Q. So is it your testimony today that Serene just offered you a job out of

N. Smith

the blue?

A. Yes, yes.

Q. Did anybody at the Department of Labor tell you that them offering you the certificate was retaliatory?

A. No.

Q. Did anybody at the Department of Labor ever tell you what retaliation meant?

A. No.

Q. But you did look for another job a month after the declaration was sent to you; correct?

MS. DE LA PAZ: Objection to form.

THE WITNESS: Say that again?

Q. You did get a new job a month after the declaration was sent to you?

A. I transferred. I still work for Northwell. I just transferred departments because of the schedule.

Q. So you did get a new position after?

A. Yes.

N. Smith

Merriam-Webster dictionary.

"Harassment: Aggressive pressure or intimidation".

Do you believe that you receiving the declarations was aggressive pressure?

A. I believe the phone call that I got that told me that, if I don't sign it, they won't give me a reference is of such.

Q. And what was -- the date of your declaration is December 27, 2023.

Do you see that? Let's look at the dates of the references.

MS. DE LA PAZ: These are the references in Exhibit 3?

MS. RUDICH: Yes.

MS. DE LA PAZ: So Fran, we're asking about Exhibit 3?

MS. RUDICH: Yes.

MS. DE LA PAZ: I'm making sure because she doesn't have it in front of her.

(Discussion held off the record)

MS. RUDICH: I'm going to ask