UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

EUGENE SCALIA, Secretary of Labor, United States Department of Labor,

Plaintiff,

-against-

SARENE SERVICES, INC. d/b/a SERENE HOME NURSING AGENCY; IRENE MANOLIAS, Individually,

Defendants.

Civil Action No.: 2:20-cv-03273 (NJC)(ST)

---

February 14, 2024
10:22 a.m.

DEPOSITION of JENNIFER GRANT, taken by Defendants, pursuant to Notice, held at the offices of SERENE HOME NURSING AGENCY, 42 Academy Street, Patchogue, New York before Wayne Hock, a Notary Public of the State of New York.

A P P E A R A N C E S:

UNITED STATES DEPARTMENT OF LABOR
Attorney for Plaintiff
201 Varick Street
New York, New York 10014
BY: HOLLIS V. PFITSCH, ESQ.
pfitsch.hollis.v@dol.gov

LAW OFFICES OF JOSEPH KALIDA
Attorneys for Defendants
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

BY: FRAN RUDICH, ESQ.
Fran.Rudich@Laborlawfirm.org

ALSO PRESENT

IRENE MANOLIAS
KRISTI MANOLIAS
TYLER STAUBER
ERIC ANAPOL

* * *

J E N N I F E R   G R A N T, having
been first duly sworn by a
Notary Public of the State of
New York, upon being examined,
testified as follows:

EXAMINATION BY
MS. RUDICH:

Q. Please state your full name.

A. Jennifer Grant.

Q. What is your current address?

A. PII - address

PII - address

Q. Good morning, Ms. Grant. My name is Fran Rudich. I'm an attorney for Serene Home Nursing. I'm going to be asking you some questions today in connection with a lawsuit that's pending in the federal court in the Eastern District of New York, Department of Labor versus Serene.

If you don't hear a question, let me know and I'll repeat it. And if you don't understand a question, also let me know and I will try to rephrase it so

J. Grant

you can understand it.
A. Okay.
Q. I'm advising you that you have a right to have on attorney here representing you today. The Department of Labor I understand doesn't represent you at this deposition.
A. Yes.
Q. So you do have a right to have one here if you so -- if you wanted to.
A. Okay.
Q. So you're waiving your right to have an attorney here today?
A. I don't need one.
Q. That's fine.
Did you work for Serene from approximately 2019 until November, 2021?
A. Yes, ma'am.
Q. Are you currently employed?
A. Right now?
Q. Yes.
A. Yes, ma'am.
Q. Where are you employed?
A. Serene -- Synergy Home Care.

J. Grant

Q. I'm sorry?

A. Synergy Home Care.

Q. And how long have you been working for them?

A. About a year and a half.

Q. I'm sorry?

A. I'm not sure, but it's about a year, year and a half.

Q. How many places have you been employed at since leaving Serene?

A. Quite a few.

Q. More than five?

A. I don't think so. Less.

Q. Less than five?

A. Uh-huh. Yes, ma'am.

Q. Did you have any --

MS. RUDICH: Withdrawn. Strike that.

I'm going to have this marked as Exhibit 1.

(Whereupon, a document entitled Work History Investigation was marked Defendant's Exhibit 1 for identification.)

J. Grant

MS. RUDICH: Exhibit 1 is a three-page document entitled Work History Investigation.

These are three separate reference requests that Serene received on behalf of Ms. Grant.

Q. Do you see on page one where it says, "reference request policy: Serene Home Nursing agency will only verify title and dates of employment".

Do you see that stamped on page one?

A. Yes, I see.

Q. Are any of these requests after you left Serene's employment? They're dated --

MS. PFITSCH: Are you going to finish? You said they were dated.

MS. RUDICH: I was just showing her where to find the date, but you did already.

MS. PFITSCH: Do you want me to indicate where the dates are? There's a date on --

J. Grant

Q. Do you see on the bottom -- do you see where it says, "signature of applicant J. Grant" on page three, 12/08/21?

MS. RUDICH: It's over here, Hollis.

MS. PFITSCH: Page three towards the top, there's a -- can you read it?

THE WITNESS: 12/03/21.

Q. And there's also a date on the bottom of page three where it says 2/6/2022 at the very bottom of page three.

MS. PFITSCH: It's not completely legible.

MS. RUDICH: I'll state on the record that I believe it says February 6 -- February 2, 2022.

Q. And on page one, it says 6/3 -- so is page three after --

MS. PFITSCH: I just want to say on the record that the pages that we have aren't numbered, so it might help to be more clear about which is page one, two, and three.

J. Grant

MS. RUDICH: Right. But you already have these. These were already produced to you during the discovery.

MS. PFITSCH: I have not seen them before.

MS. RUDICH: You have not?

MS. PFITSCH: But I'm not saying that you haven't produced them. I'm not sure.

But mostly for the record I am noting --

MS. RUDICH: Page one it says, work history investigation Bayada Home Health Care on the top.

MS. PFITSCH: Is it possible to write a one on the one, two, and three on the pages?

MS. RUDICH: Sure.

MS. PFITSCH: Which is two?

MS. RUDICH: Two is Caring Professionals, Inc., and number three is verbal reference. I can't read the name of the company. Synergy.

J. Grant

Q. Page three, it says Synergy.
Is that where you're employed currently?
A. Yes.
Q. So you got that job? So you received that job?
A. I'm on that job now.
Q. Is there anything on any of these pages which indicates that you were either terminated or fired from Serene's employment?
A. Only Serene I got fired from.
Q. I know, but is there anything on any of these pages that represents references that Serene gave to you which are negative?
A. Could you explain that for me, what you really mean?
Q. Sure.
Is there anything listed on any of these pages from Serene that you feel could hurt you in any way with future employment?
A. Well, not what I know of right

now.

Q. I'm just asking about those pages. That's it.

A. I would say I'm not sure.

Q. Do you feel that you were retaliated against by Serene?

MS. RUDICH: Strike that.

Q. What is -- what do you believe is the definition of "retaliation" in the employment context?

A. With Serene?

Q. We'll limit it to Serene.

Do you feel that Serene has retaliated against you in any way?

A. If I feel like with the next company?

Q. No, no, no.

A. Or with Serene company?

Q. At any time has Serene retaliated against you?

A. Not what I know of.

Q. Were you asked to sign a declaration by any Serene representative?

A. The day when they called me.

J. Grant

Q. They asked you to sign a declaration?

A. Yes. There was a lady, she called me, and when she finished talked to me and everything, she asked me to sign the paper. Then she tell me what it's all about.

Q. And what was the name of that lady?

A. I don't remember the name of her.

Q. And was that from the DOL? Was that lady that called you from the DOL, the Department of Labor, or from Serene?

A. From Serene.

Q. And did you tape that conversation?

A. No, I don't.

Q. So how many times did Serene call you after you --

A. You're talking about the day I came in to sign the paper or over the phone, the conversation over the phone? Which one of them?

J. Grant

Q. You came in to Serene to sign the paper after you were terminated?

A. The day when they said I'm terminated, that's the day the signing take place.

Q. And what about -- did anybody at Serene ask you to sign a declaration in connection with this lawsuit?

A. Over the phone.

Q. And was that the call from Mr. Jenkins?

A. I'm not sure if that's his name, but he called me and asked if I'm going to send a form over more than one, I think about three times, but I only recall one of the conversation. I didn't recall the whole conversation.

Q. So it's your testimony today that you received three calls from a Serene representative?

A. Yes, he said he calling from Serene.

Q. Three different calls?

A. Yes.

J. Grant

Q. And you only taped one?
A. Yes.
MS. RUDICH: I'm going to introduce what's going to be marked as Exhibit 2. It's a declaration that you submitted in connection with this lawsuit that was submitted by the Department of Labor.
(Whereupon, a document entitled Declaration of Jennifer Grant was marked Defendant's Exhibit 2 for identification.)
MS. RUDICH: Let's take a two-minute break.
(Whereupon a break was taken)
Q. Have you reviewed the document, Ms. Grant?
A. Yes, I do.
Q. Do you see number five?
A. (Reviewing).
Yes, I see number five on here.
Q. And so you just testified under oath that you received three calls.
A. Yes.

J. Grant

Q. So -- and there's a call transcribed that's attached to this exhibit; correct? There's a transcription of a call that you received that's attached to this exhibit.

MS. PFITSCH: Objection to form. Is there a question?

MS. RUDICH: I was going to ask her a question as long as she saw it.

Q. Was this a recording of the first call you received from Serene?

A. No.

Q. You received calls before this?

A. Before.

Q. From who?

A. From this same person that I record.

Q. From Al Jenkins?

A. Yes.

Q. Is there any mention in your declaration that you received three calls?

A. I didn't mention it in my recording because I didn't record him on the two before, I record him on the third.

J. Grant

Q. I understand that, but is there anything in Exhibit 2 which indicates that you received three calls from Serene?

MS. PFITSCH: Objection to form, but you can answer.

Q. You can answer.

A. I don't see the three I mentioned, but I told -- I told her that I get more than one, which is about three, and I only recalled one.

Q. Now, is the recording -- is the recording the last call you received from Serene?

A. Yes.

MS. PFITSCH: Objection to form.

Q. So let's go through the first call -- when did you receive the first call from Serene?

A. I don't recall the date.

Q. What did you say and what did they say to you during the first call?

A. The first piece of the recording, I didn't start the recording until this man get down into talking. I

J. Grant

record the part that I sent to you guys.

He tell me that he's a case controller, then he get in and said he work with Serene, and they went to the labor board to give them more hours, like we can work a month straight or three months straight and more money. So I said -- I let him talk a while. Then I said to him I'm not interested. And he said why. I said because I work for them and they send me to a case, I have problem there. They send me to a next case and I have problem, also. He asked me what is the problem and I told him and he said he going to let someone call me and talk to me.

Nobody ever call me after the recording.

Q. During that call, did anybody ask you to sign a declaration?

MS. PFITSCH: Objection to form.

THE WITNESS: Sign a declaration?

Q. Yes.

J. Grant

A. What is a declaration? Maybe you want to answer the question right.

Q. It's something like what's the first two pages of Exhibit 2 in front of you, a declaration that you sign under oath.

A. Mr. -- the young man that call me on the phone, he said he going to send some document to me. The first document he send, I erase those documents off my phone. I didn't sign it.

Q. Let's go to the second call you received from Serene.

What did you say and what did the person say to you?

A. It's the same thing. He's saying that they want to get more head and they want to get more hours and better pay and stuff like that and I told him the same thing, I'm not interested. Even though I said I'm not interested, he sent some for form on my phone.

Q. Some what?

A. Form that I must fill out.

J. Grant

Q. But you erased those?

A. Yes.

Q. Why did you erase those?

A. Because I'm not interested.

Q. So it's your testimony here today under oath that Serene called you and asked you if you wanted to work for them after they fired you?

A. Right. That's why I keep on turning them down because I call several times for work and they said you fired. So why would he call me now and want me to sign the paper?

Q. Do you know when these two calls occurred?

A. I don't recall the date, because I keep on erase them.

Q. How far before the call you taped -- how much before the call you taped --

A. Like a month, I've been getting those calls like one month.

Q. Every month?

A. No, in the same month I get

these three call.

Q. You got a call from somebody at Serene offering you a job after they terminated you for fraud?

MS. PFITSCH: Objection to form.

You can answer.

Q. You can answer.

A. The person that called me that I record, I'm not accusing that he's from Serene because a lot of strange things going on. I record the person. He said he's from Serene. That's what he said.

Q. And so the person from Serene called you, offered you another job after you were fired for fraud?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes.

Q. Now, you said they sent you -- how many forms did you receive?

A. I received two before and I erase those and I don't sign it.

Q. What did those form say?

A. I don't read them. It's the same thing. When I see the starting in

J. Grant

the beginning, I erase them.

Q. So you did not sign any declaration?

A. No.

Q. And did Serene retaliate against you in any way for not signing those two declarations you apparently received?

MS. PFITSCH: Objection to the form.

THE WITNESS: Nobody called.

MS. PFITSCH: Can I on the record --

MS. RUDICH: You're not her attorney.

MS. PFITSCH: I'm going to ask her to pause before she answers so I can have time to object and we can have a clear transcript.

MS. RUDICH: Don't interrupt her though.

MS. PFITSCH: Exactly why I'm asking her, and I'm doing this on the record so that it's clear for everyone.

J. Grant

I'm asking you to pause a little bit between the question and the answer so that I can --

Q. Did Serene retaliate against you in any way after they sent you the declarations that you did not sign?

MS. PFITSCH: Objection to form.

THE WITNESS: No, ma'am.

Q. Was it sent by a text? Because you said it was on your phone.

Were these forms sent to you by text?

A. E-mail.

Q. And you received your e-mail on the phone?

A. Yes.

Q. So you deleted both of those?

A. Yes.

Q. And you don't remember -- you never looked at what the form was?

A. Once I see coming and the top of it, I erase it.

Q. So you never looked at it?

A. No. I'm not opening it. I see

J. Grant

on the top of the e-mail already the same person, the same thing.

Q. Was it a job offer? You don't know because you didn't read it.

A. No.

Q. Now I'm going to refer you back to Exhibit 2, the first two pages.

Have you reviewed that, Ms. Grant?

A. Yes, I do.

Q. Is there anything in here which indicates at all that you received three calls from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: Anything on this paper?

Q. Yes.

A. Yes.

Q. Where does it say you received three calls from Serene?

A. Yes.

Q. Where does it say that? Read that to me.

A. I am a former employee of

J. Grant

Serene. Yes, the person that called me, they know from when I'm start working from when I stop work, my name, what type of work I do living, and stuff.

Q. No, no, no.

My question is you mentioned a call that you received on November 16 from Serene.

Do you see that, paragraph number two?

A. Yes.

Q. Is there anywhere in this declaration where you mention you received three calls from Serene?

MS. PFITSCH: Objection to form.

Q. It's just a yes or no.

A. I don't understand the question you ask.

Q. The question I'm asking is: Is there anything in this declaration -- I'm referring to page one -- that says you received three calls from Serene?

MS. PFITSCH: Objection to form.

MS. RUDICH: What's the

J. Grant

objection?

MS. PFITSCH: You asked this question of her already.

MS. RUDICH: She didn't answer.

MS. PFITSCH: She did answer. It was before the last colloquy.

MS. RUDICH: I said is there anything --

MS. PFITSCH: She did answer and she told you that it's not there.

Q. It's not there?

A. No.

Q. And why didn't you include it --

MS. RUDICH: Let me back up for a second.

Q. Who wrote this declaration for you?

A. The labor board.

Q. The Department of Labor?

A. Yes.

Q. And who did you speak to at the Department of Labor about this declaration?

A. I make a complaint there.

J. Grant

Q. You complained to the Department of Labor? What was the nature of the complaint?

A. Because of the calling and the harassment with this man.

Q. So it's your testimony today under oath that this man harassed you by calling you? And this is a -- so it's your testimony today that you were harassed?

A. And forcing me to sign document.

Q. How did he force you to sign documents if you didn't sign them?

A. He send them on my phone more than once. That mean he want me to sign it.

Q. Right, but you deleted them, you didn't look at them, you just deleted them.

How did he harass you by sending --

A. Because he need me to sign that document which I not agree I have to sign and he keep on calling me to sign the

J. Grant

document.

Q. But you never read the document.

How do you know you didn't agree with it?

A. Because he explained it to me in the recording.

Q. What did he say -- in this recording?

A. He said he want to send -- I didn't tape the first part of what he said to me, I only catch him on what I tape. Because if I didn't know, I would do it from the beginning what he was saying.

Q. Did you tape any of those other calls?

A. I usually tape. Those two before I would listen to him and let him talk and I was go calm, but the third one though, I see that it's getting all back on.

Q. So you record the first two?

A. I didn't.

Q. You didn't record.

And you didn't mention that

J. Grant

harassment anywhere in your declaration; correct?

MS. PFITSCH: Objection to form.

Q. I'm asking if there's any mention of the harassment in your declaration.

A. I told him I get more than one call.

Q. I'm talking about this document, Exhibit 2.

Is there any mention of the harassment in this document?

MS. PFITSCH: Objection to the form.

THE WITNESS: I told labor board, I said this man been calling me and offer me to sign the paper that I'm going to get better wages, more work three months on the job, so I told them everything.

Q. And they drafted this declaration for you; correct?

A. Yes.

Q. And is everything in this

J. Grant

declaration true?

A. Yes.

Q. I'm going to refer you to the recording, page three of the -- page five of the recording.

Do you see -- I'm referring to the line where, "so what. What were you calling me about".

It's your testimony today that Mr. Jenkins had called you twice before this call, so you knew what he was calling you about; correct?

A. Yes, I know.

Q. So why did you ask him that then?

A. I want to record him this time, so I ask him that question.

Q. And why didn't you put in your declaration that you received three calls from Serene?

MS. PFITSCH: Objection to form.

Q. Why isn't that in your declaration?

A. Because I only recalled one.

J. Grant

Q. I understand that, but you received three calls; correct?

A. I want proof to my stuff. I want proof to the call he make to me so I have a recording on one, so that's the one that I record. But I let them know he called three times.

Q. Do you have your same phones when these calls were received?

A. This last one, I have the same phone.

Q. So it has a record of the calls you received; correct?

A. I don't know, because I erase, too.

Q. You erase -- no, I'm talking about the list of the recent calls on your phone. I'm talking about the calls you received. They would be -- there would be a record of that; correct?

A. I'm not sure about that.

Q. What is your telephone number?

A. PII - phone number

Q. And who is your provider?

J. Grant

A. Metro PC [sic].

Q. So if we subpoenaed Metro PC, we'd get a list of your calls?

A. No problem, if you want to do that.

Q. And the calls from Serene will show up on that list?

A. If they show up, I don't know.

MS. PFITSCH: Objection to form.

Q. So the calls you received will be on the list of calls we get from Metro?

A. I don't know. I don't know.

Q. But you testified you received three calls?

A. I receive three calls. I don't know if they're going to be there. I'm not telling you they're going to be there, I'm not saying it's not going to be there. I'm telling you what I know and what I received.

Q. Who gave you the idea to record the call?

A. Because he called me already two time before.

J. Grant

Q. And all three calls were from Mr. Jenkins?

A. The same person.

Q. Al Jenkins; is that his name?

A. I don't recall that name. I'm not listening to the name. I know the same person call me the first, the second, and the third.

Q. While you were employed by Serene, did you know anyone named Al Jenkins that worked for Serene?

A. No.

Q. How do you know Mr. Jenkins was actually calling from Serene?

A. That's what he said.

Q. Did you take a screen shot of the number that Mr. Jenkins called you from?

A. His number always come up private.

Q. So you don't know where it came from?

A. He said he's from Serene.

Q. Did you discuss the

J. Grant

circumstances surrounding your termination from Serene on any of the calls with Mr. Jenkins?

A. Yes.

Q. How many?

A. Well, the first time I get to express myself with him is the last call that I recorded. That's the time when I tell him -- I showed him everything.

Q. So you took that call as an opportunity to express your dissatisfaction with Serene?

A. Yes.

MS. PFITSCH: Objection to form.

Q. Are you concerned about being a witness in a federal court proceeding against the home care agency that fired you for falsifying medical records?

MS. PFITSCH: Objection to form.

Q. You can answer.

A. Anything I talk, I'm talking by the truth.

Q. Did you tell the truth when you were terminated for falsifying records?

J. Grant

A. I do nothing false. When I come to the company, whatever they ask me I tell them the truth.

Q. When you went to Serene? Which company are you referring to in your previous answer?

A. Serene.

Q. And you told them the truth and they still terminated you?

A. Yes.

Q. Did you sign any papers in connection with that termination?

A. When she finish -- when I sign the paper, that's when she told me I am fired.

Q. Did you put anything in writing to Serene challenging or objecting to the firing?

A. No.

Q. Did you admit it to Serene?

A. Admit what?

Q. Why were you fired from Serene.

A. Well, there was a lady call me, she work at the company, I think she was

J. Grant

some manager, I'm not sure of her name, if her name is Karine [sic], I'm not sure, and she said I have to come to the office.

I come to the office, this same office, upstairs. She said there is a timesheet that I wrote up and I put -- I should not have wrote up the timesheet like that and if I know that there is -- after you do your thirteen hours, if you work more hours, so put it on a different timesheet. I said I didn't know. And I said first mention when you guys send me to Ms. E[patient name]'. I tell you I never worked with this timesheet before and you said the person who I meet there, I ask them to train me to do the timesheet.

The person trained me properly, but the problem was I wrote down what I work. It's not the training. I told her. And then she keep on writing.

Then after every conversation now and all the paperwork, she said do you know you are fired. I said what do you mean by fired. You cannot work with the

J. Grant

company no more.

Q. And why were you fired?

A. Because she said I wrote up the timesheet and I wrote it up wrong.

Q. You wrote it up wrong or you put hours in there that you didn't work?

A. For me, it's wrote -- I would say she said I wrote it up wrong. But whatever I put on the timesheet, that's what I work.

Q. Did you talk to -- when you were talking to this person about being fired, did you ask her why you were being fired?

A. Yes, I ask her.

Q. And did she tell you it's because you falsified time records?

A. She didn't tell me that. She told me that I do the timesheet wrong. And she told me if I work somewhere else, to put it on a different timesheet, and I know that could never be right because that's the timesheet we were using for Ms. E[patient name] at that time.

Q. She told you to write the hours

J. Grant

that you worked overtime on a separate piece of paper; correct?

A. Yes.

Q. Did you do that?

A. No.

Q. Why not?

A. Because on the paper, on the timesheet that I wrote up for Ms. E[patient name], it showed down you at the bottom if you do like over the limit, it's supposed to go down the bottom of the timesheet.

Q. And what time of the day was this bathroom visit?

A. Bathroom?

Q. You said you took her to the bathroom.

A. Yes.

Q. When was --

A. I didn't took her to the bathroom because she cannot go to the bathroom. She's a bedbound patient.

Q. So you didn't take her to the bathroom?

A. She's a bedbound patient.

J. Grant

Q. On your timesheet, did you write down sentences -- did you write down a sentence that said you helped patient with medications?

A. Yes, I do help her.

Q. You did help her?

A. Yes.

Q. Did she take them herself?

A. Sorry to go against a patient the way they're sick, we're not supposed to explain it. Her sickness is her hand is deformed away. She have a medication reminder on the table. Her hand cannot go much far because of her sickness. Even if the thing ringing, she cannot access the medication from the container that it's in, so you have to assist her in any way.

Q. So if she swore under oath that you didn't assist her with these medications, she would be lying?

MS. PFITSCH: Objection to form.

THE WITNESS: You talk to she, what she want to swear. But I'm telling you the truth what I do.

J. Grant

Q. Now, did you help her with this motion during sleep hours?

A. There are certain time of the night she's supposed to take her medication, and that's the time I get up.

Q. You received medical orders about your patient; correct?

A. From who?

Q. From Serene.

Did Serene ever give you a medical order to give the patient medication in the middle of the night?

A. Let me explain this to you.

If you doing a live-in job and the patient want help, no matter what time of the night, you live there, you stay there, even though you finish work 8:00, 9:00, you have to assist the patient.

Q. I understand that.

Did any doctor ever -- did you ever have any doctor's orders telling you that Ms. E[patient name] had to take medication in the middle of the night?

A. I don't get it from a doctor,

J. Grant

but there was a lady here, coordinator Liz, I know her first name is Liz. I complain to her that I have to wake up that time of the night and she said, since I'm here, I have to do it because nobody else is here.

Q. Did you write that down that you did that on any of your timesheets?

A. I put the time when I get up.

Q. You put it on your timesheets?

A. Yes.

Q. During the night, you put it on your timesheets?

A. Yes.

Q. Do you have any members of your family or close friends who are big football fans?

A. No.

Q. Did you know that Al Jenkins was a lineman for the Miami Dolphins?

A. He did not say that to me and I did not ask him.

Q. But he said his name was Al Jenkins?

J. Grant

A. Yes, but I don't press him.

Q. Do you recall working with a woman named Karina or Karlina while working at Serene?

A. I'm not recalling.

Q. But you just said something named Karina called you.

A. I didn't say she called me. I said --

Q. You didn't say she called you?

A. I said the lady that called me to come here and sign the paper, I think her name, I'm not sure, her name is Karine or something. I'm not sure.

Q. Do you know whether Karina is an attorney for the Department of Labor?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm not sure. The laid key that calls me upstairs to sign the paper, she work here, she's some supervisor or something.

Q. In your declaration, you referred to a call you received from a person named Karina.

J. Grant

Do you see that in your declaration?

A. That's the same lady that I was talking. I don't recall her name fully.

Q. Could that call have been a call from an attorney at the Department of Labor?

A. No. She worked here and that's the lady that come to and she asked me to sign the paper. She work here.

Q. And her name was Karina or --

A. I'm not sure her name.

Q. Something like that; correct?

A. I'm not sure her name.

Q. But you wrote in your declaration her name was --

MS. PFITSCH: Objection to form.

Q. How many times did you talk to the Department of Labor about your declaration?

A. I don't recall.

Q. Did you go there in person on was it --

A. No.

J. Grant

Q. How did you sign the declaration? Were you in person or was it DocuSign? How did you sign the declaration?

A. I sign the paper.

Q. And where did you sign it?

A. It got faxed, it got e-mailed.

Q. Right.

So you did not sign it in person?

MS. PFITSCH: Objection to form.

Q. Did you sign it in person with the Department of Labor?

A. I just want to tell you that I meet up with --

Q. Hollis?

A. Yes.

Q. And where did you meet up with her?

A. I meet up with her at my home.

Q. And what did she say to you and what did you say to her?

MS. PFITSCH: Objection to form.

THE WITNESS: We talk about the

J. Grant

declaration and what happened.

Q. And was the declaration already typed up or did she do it in your presence?

MS. PFITSCH: Objection to form.

Q. Did Hollis come to your house?

A. Yes.

Q. And did she have the declaration already typed up when she came or did she do it while at your house?

A. May I say something?

MS. PFITSCH: Objection to form.

THE WITNESS: I ask her to come to me because I have three broken toes. I couldn't travel.

Q. That makes sense.

So was the declaration already typed up when you met with Hollis at your house?

MS. PFITSCH: Objection to form.

MS. RUDICH: What is the objection?

MS. PFITSCH: The dates on when your questions relate to.

J. Grant

MS. RUDICH: Well, I don't know.

Q. When did Ms. Hollis come to your house?

A. I can't recall the date. I don't remember the date.

Q. Do you remember the month?

A. Yes.

Q. What month?

A. This month.

Q. This month?

A. Yes.

Q. So you signed the declaration this month?

MS. PFITSCH: Objection to form.

THE WITNESS: I signed before, too.

Q. And when you sign it before, where were you?

A. At my home.

Q. And who was with you?

A. Three of us.

Q. Who were the three?

A. I don't remember the next lady name, but I know she was there.

J. Grant

Q. And when Hollis was there with you, did she already have the declaration typed up?

A. I spoke to her on the phone about the declaration before she came there.

Q. And what did she say to you and what did you say to her when you --

A. I told her.

Q. Let me finish. He can't take down when we talk over each other, so you have to let me finish.

You said you spoke to Hollis before she came to get you to sign the declaration; correct?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes.

Q. And what did you say to her during -- how many conversations did you have with Hollis before she came to your house for you to sign the declaration?

A. The conversation was about whatever is on the declaration.

Q. How many times did you speak to

J. Grant

Hollis before she came to your house?

MS. PFITSCH: Objection to form.

THE WITNESS: I speak to her more than once.

Q. More than five times?

A. I said more than once.

Q. And I'm trying to -- is it more than five times?

A. I wasn't counting.

Q. So it could have been more than five times?

A. Could be less, too.

Q. What did Hollis say to you about the declaration?

A. Well, she explained a lot to me and said I must speak the truth whatever happened.

Q. It says here, number five, "after the call, I had not received a call back from Serene and I had not received any kind of statement to sign from them".

You just testified ten minutes ago that you received two statements to sign and you deleted them from your phone.

J. Grant

MS. PFITSCH: Objection.

Q. Is that true?

MS. PFITSCH: Objection to form.

THE WITNESS: I receive two before I record the one to make three.

Q. And it says here, "I have not received any kind of statement to sign from Serene".

MS. PFITSCH: Objection to form.

Q. You stated that in your declaration.

MS. PFITSCH: Objection to form.

MS. RUDICH: What's your objection?

MS. PFITSCH: The document speaks for itself. The clause begins with the phrase "after this call". She has already answered your question.

Q. And you did not put in this declaration that you received a statement from Serene before the call?

MS. PFITSCH: Objection to form.

Q. Right? You didn't put that in this declaration.

J. Grant

Why not?

MS. PFITSCH: Objection to form.

Q. Why didn't you put in this declaration that you received two forms from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm giving account for the one I record. This is the one that I'm talking about, the one that I record. The one that I record is the most important one that I'm talking about. The one that I erase, I'm not giving account for that one, because I let that one go. This one that I record, this is the one I'm debating right now.

Q. Did anybody tell you to record the call?

A. Nobody.

MS. RUDICH: Off the record.

(Whereupon a break was taken)

Q. And how much of the call from Mr. Jenkins did you not record?

A. About two.

J. Grant

Q. And the first call you recorded; correct?

A. Yes.

Q. And you said -- did you start that recording right after you knew that Serene was calling you?

A. The conversation begin before, then I start to record him. Some pass away which I didn't get.

Q. And how long was the call before you started recording it?

A. About ten minutes before.

Q. Ten minutes?

A. Uh-huh.

Q. And so you didn't think to record any of that ten minutes but you thought to record -- to start recording it after ten minutes?

A. Yes.

Q. I'm going to refer you to paragraph two of your declaration and number three.

Do you see it says here that, "before I was able to start the recording,

J. Grant

the Serene representative asked me and confirmed my name and then I started to" -- "and then I was able to start the recording".

Today under oath you're saying that it was ten minutes.

A. Uh-huh.

Q. So which is true, is this true or what you testified today true?

A. On this paper, I didn't say two minutes, five minutes, or ten minutes after I start recording. I didn't put no time.

Q. You said, "before I was able to start the recording, the Serene representative asked me and confirmed my name".

A. There's no time here.

Q. So you're saying he did that in the middle of your call?

A. He asked me all these questions before and other things. That's when I start to record.

Q. And so you were talking to him

J. Grant

for ten minutes before you started to record the call; correct?

A. Because he was trying to get me somewhere. That's when I start the recording.

Q. But in your declaration, you say that, "before I was able to start the recording, the Serene representative asked for me and confirmed my name and then I was able to start the recording".

You're telling me that that took ten minutes?

A. That's not alone. You asked me before. That's not alone. He asked me other things before.

Q. Let's look at the recording then. Let's look back at the recording.

And you said you started this recording ten minutes into the phone call; correct?

A. Yes.

Q. So in the middle of the phone call, Mr. Jenkins introduced himself and told you he was from Serene Agency?

J. Grant

A. It's not the middle.

Q. And when was that?

A. This part, my name, I didn't record those parts.

Q. So this was at the beginning of the call and then you stopped recording it?

A. After he asked me several questions, then I start the recording.

Q. But the recording starts with him telling you who he was.

A. Yes, he tell me his name.

Q. So he didn't tell you his name at the beginning of the call?

A. Yes, he tell me he's the case controller, and the first time, the first time he call me he was a case controller.

Q. I'm not talking about the first call, I'm talking about this call, the third call.

You're telling me that he introduced himself ten minutes into the call?

A. Not only introduce. He talked

J. Grant

other things before he reached for that.

Q. How did you know who you were talking to before he said this?

A. Because he say his name and I'm familiar with that name before because he call me two times before already.

Q. So you're saying that ten minutes into the call Mr. Jenkins told you who he was and his name?

A. Before, when he just call me, he introduce himself to me and tell me his name before and I said yes, I know you because you call me two times already.

Q. That's not on this transcription; is it?

A. Well, that's what I'm saying. I only record one, I didn't record two.

Q. You recorded the third call you received?

A. Yes.

Q. And during that call, it's your testimony here today that he spoke to Mr. Jenkins ten minutes before he introduced himself?

J. Grant

MS. PFITSCH: Objection to form.

THE WITNESS: Yes.

Q. And what did you talk to -- what did you say to Mr. Jenkins and what did he say to you during this ten minutes that you didn't record?

MS. PFITSCH: Objection to form.

THE WITNESS: I told -- when he just called me and I pick up the phone and I say you again and he said yes, ma'am, I'm here again, and I begin to record when the conversation reach there. I wasn't going to record him, but when I see that he's trouble, I start to record him.

Q. But you just testified that the call was private when you first got it; correct?

A. I know his voice. I know his voice. I re-frame his voice in my head. I know him.

Q. And how long were the first two calls that you received from Mr. Jenkins?

A. Well, it never so long because I

J. Grant

never entertain, I just hang up. The second time, it's a little bit call, and the third time I said, well, I'm going to record you. I want to know who you are.

Q. You said that on the phone or in your head?

A. No, in my head.

Q. And so after these two short calls that you received you recognized his voice?

A. Yes, ma'am.

Q. So he never introduced himself to you --

A. Yes, he do.

Q. At the beginning of the call?

A. Yes, he do.

Q. And then he introduced himself again?

A. Yes.

Q. Did you screen shot on your phone any of these calls that you received?

MS. PFITSCH: Objection to form.

THE WITNESS: Screen shot?

J. Grant

MS. RUDICH: Withdrawn.

Q. So during the first three calls, did Mr. -- the first two calls, did Mr. Jenkins ever ask you what your experience was while working at Serene?

A. Yes.

Q. So then he said -- so then in the third call he asked you did you like working in cases in which you had a choice.

Do you see that? It's on page three.

MS. PFITSCH: Just for the record, you're referring to lines fourteen --

MS. RUDICH: Fourteen through seventeen.

THE WITNESS: Yes, he asked me that.

Q. And if he had asked you that during the first two calls, how come you didn't say here you asked me that already?

A. I didn't record the two. I said that. But I didn't record that.

J. Grant

Q. You said it but it's not on the transcription?

A. I said that to him on the second call. When he called me the first time, the second time, I said the same thing you're calling me with again.

Q. And you didn't say it on the third call?

A. No, because I record him.

Q. So it's your testimony here today that you didn't say it on this call because you knew you were recording him?

A. Yes.

MS. PFITSCH: Objection to form.

Q. Why wouldn't you say it if this was the third time he called you if he had already called you twice before?

A. I don't need to say that to him because I'm recording him.

Q. But you said it to him during the second call; correct?

MS. PFITSCH: Objection to form.

Q. Didn't you say that to him, it's you again?

J. Grant

A. I don't need to say that because I'm recording him.

Q. So you didn't say things because you were recording him? Wouldn't it make more sense to say things because it was being recorded?

MS. PFITSCH: Objection to form.

Q. And during the first two calls -- sorry, there's a question pending.

So while you were recording Mr. Jenkins' call to you, you decided not to say certain things because of the recording?

A. No.

MS. PFITSCH: Objection to form.

Q. But you just testified that you didn't say to him you again or you're calling me again --

A. I didn't say that to him.

Q. Why not?

A. Because I don't want to say that to him.

Q. But you wanted to say it to him during the second call?

J. Grant

A. Because I say it already two times.

Q. You said it two times so the third time you said I'm not saying this again; is that correct?

A. Correct.

Q. Were the first two calls about you defending yourself while you worked for Serene?

MS. PFITSCH: Objection to form.

Q. Were the first two calls -- did you defend yourself and your work at Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: If I defend myself?

Q. Yes, did you say that --

A. Which say I defend myself?

Q. About the reason you were being terminated.

MS. PFITSCH: Objection to form.

THE WITNESS: The time when I hold that conversation with Mr. Jenkins is the third call, I tell him

J. Grant

the reason why I'm not interested in his calling.

Q. So that's the first time you ever told him that?

A. Yes.

Q. So the first two calls you didn't say that but the third --

A. I just sit and listen and let him talk.

Q. So you didn't say anything during the first two calls?

A. No.

Q. Nothing?

MS. PFITSCH: Objection to form.

Q. Correct? You said nothing during the first two calls?

A. I say one or two things but nothing related too deep to the company because I didn't know who this man is.

Q. So during those first two calls, did he ask you to sign a declaration?

A. He said he going to send a form to me.

Q. But you didn't know what the

J. Grant

form was; correct?

A. He tell me already pertaining to Serene and more hours and more work and that I like to work with Serene. I told him I'm not signing the form because there's a problem going on with me and Serene. He still send the form.

The second time, the same thing.

Q. And you didn't think it was important to save these forms?

MS. PFITSCH: Objection to form.

THE WITNESS: Well, I didn't save it.

Q. You just decided that you didn't need to save it?

A. No. Yes.

Q. Do you feel that Serene retaliated against you for not signing the declaration?

MS. PFITSCH: Objection to form.

THE WITNESS: Which declaration, that Mr. Jenkins sent to me?

Q. Do you believe that Serene retaliated against you for not signing the

J. Grant

form that you were sent two times before the call that's transcribed?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't know what's in their mind. I couldn't read for Serene and say that they do that because I would be telling a lie. I don't know.

Q. Did you experience any retaliation by Serene?

MS. PFITSCH: Objection to form.

Q. You already testified you didn't.

MS. RUDICH: I'll withdraw.

Q. How did you learn that Serene representatives were calling other former live-in aides to ask them to sign a form?

MS. PFITSCH: Objection to form.

Q. How did you learn that?

A. Because I was explaining it to one of my co-worker that the call is coming to me and I'm rejecting the call and this man is calling and she said what happens the name of the man and I told him

the man name and she said I got that same call, too.

Q. And who was this co-worker?

MS. PFITSCH: Objection. I have to object on the basis of informant's privilege.

MS. RUDICH: That doesn't apply here anymore. She's already been disclosed.

MS. PFITSCH: On behalf of the other person.

MS. RUDICH: Wait a second --

MS. PFITSCH: I'm going to ask Ms. Grant not to identify the other person.

MS. RUDICH: Let's call the judge. No.

MS. PFITSCH: We can call the judge on that, sure.

THE WITNESS: Sorry, I'm not going to disclose this person's name and I'm dealing with myself, not her. I'm dealing with myself.

Q. But she's the one who told you

J. Grant

that Serene representatives were calling other live-in aides; correct?

A. Yes, but I got the call, too, and this is my paper and my document, so I don't want to go in her document. I have my own document.

MS. RUDICH: Hollis, is it your position here today that this person that she spoke to spoke to the Department of Labor?

MS. PFITSCH: It's possible. I'm not confirming anything.

MS. RUDICH: She wouldn't only have the informant privilege if she spoke to the Department of Labor.

MS. PFITSCH: I'm going to ask Ms. Grant not to respond to that on the basis of a government informant.

MS. RUDICH: We'll call the judge. In order to be an informant, you have to have spoken to the Department of Labor and you don't know this person.

MS. PFITSCH: If you would like,

J. Grant

I can go off the record and speak with Ms. Grant a bit to see who the person might be. But we're certainly going to assert informant's privilege as to the potential identity of confidential informants.

MS. RUDICH: But you don't even --

MS. PFITSCH: You want to give me some time to ascertain that?

MS. RUDICH: Yes.

THE WITNESS: But I'm not going to put this person into this problem.

Q. You have to answer unless -- why don't you spoke to Ms. Hollis.

MS. PFITSCH: Let's go talk for a second.

(Whereupon a break was taken)

MS. PFITSCH: So the person that Ms. Grant is speaking about is someone who has been speaking with the Department of Labor, so we will assert the informant's privilege as to her identity.

J. Grant

Q. Did you tell this person to contact the Department of Labor?

A. No.

Q. Did she tell you to contact the Department of Labor?

A. No.

Q. Earlier in this deposition you testified that a woman called you from Serene. Now you're saying that it was the same man that called you three times?

A. No.

MS. PFITSCH: Objection to form.

MS. RUDICH: What is your objection? Because we'll go back to the testimony.

MS. PFITSCH: I think you should just let her answer because I think she was going to clarify. But I think she was referring to the termination call, the call she got from Serene when she was terminated.

THE WITNESS: Yes.

Q. Was that one of the three calls you were referring to in this deposition

J. Grant

that you received?

A. No.

MS. PFITSCH: Objection to form.

Q. So the two calls you received from Mr. Jenkins before you taped him were very short; correct?

A. Yes.

Q. But you were able to recognize his voice during the third call?

A. I recognize his voice from the first, the second. The first one, it was new. The second know I know he's the same one. And the third one, no, that's when I record him.

Q. And how much time was between these three calls? So between the first and second call, how much time was that?

A. One of the call is like a end of one month and two is in one month.

Q. So you recognized this man's voice after you received two short calls a month before?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes, because it's

J. Grant

the same name.

Q. Oh, he said his name the first two times?

A. Yes, ma'am.

Q. So the third time you didn't -- you knew it was the same person but he introduced himself in the middle of the call; correct?

A. No, he do his name on the first call every time.

Q. I'm talking about the third call that you --

A. The third one I'm talking.

Q. So you let him talk for ten minutes before you decided to record him; correct?

A. Yes.

Q. Why didn't you record him at the beginning of the call?

A. Because that's the time I want to record him because now we're getting serious.

Q. So you're saying the first ten minutes wasn't serious?

J. Grant

A. It was serious because he introduce himself and what he was there for and he know everything about me at Serene company, so I decide to record him.

Q. So for the ten minutes, before you decided to record him, he said important things to you; correct?

A. Yes.

Q. But you decided not to record him during those ten minutes?

A. I don't recall him on the first talking.

Q. I'm talking about the third call.

A. That's the third one I'm talking.

Q. So why didn't you record the call from the beginning?

A. Because I wanted to record it where I start from.

Q. Why did you want to record it where you started?

A. There's no question for why. I record him when I started to record.

J. Grant

Q. Why did you record him at all?
A. Because it's enough, it's enough.
Q. Did you do anything to prepare for this deposition today?
A. I prepare myself.
Q. Did you speak to any attorney at the Department of Labor to prepare about this deposition?
A. We talk about it when I report the matter.
Q. Did you talk about this deposition with anyone at the Department of Labor?
A. This paper that we're reading now?
Q. No, did you speak to anyone at the Department of Labor before appearing today at the deposition?
A. Yes.
Q. How many times?
A. One time.
Q. And when was this?
A. We talk before, I don't remember

J. Grant
the date, and we talk this morning, too.
Q. So you talked before this morning.
And how long was the first time you spoke to the Department of Labor?
MS. PFITSCH: Objection to form.
THE WITNESS: I don't remember the date.
Q. Was it within this month?
A. No, before this month.
Q. In January?
A. Before January.
Q. You spoke to the Department of Labor about this deposition before January; is that your testimony today?
MS. PFITSCH: Objection to form.
MS. RUDICH: No, do not coach the witness, Hollis.
MS. PFITSCH: Objection to form.
Q. Is that your testimony today? You spoke to the Department of Labor about this deposition before January?
A. I spoke to the labor board and had the case with Serene before this one

J. Grant

came up, and then this one came up, so I go back over with this one to them.

Q. I'm asking you when the first time was that you spoke to Serene about this -- you spoke to the Department of Labor about this deposition.

A. I don't remember which month, if it's December or November, but I know I spoke to them.

Q. So it's your testimony today it was November or December?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm not sure which month. I'm not telling lie. On any date you see, that's the date I spoke to them.

Q. What did you tell them during the call when you prepared for this deposition?

A. I told him about Mr. Jenkins.

Q. To prepare for this deposition today?

A. To prepare?

MS. PFITSCH: Objection to form.

J. Grant

Q. Yes.

To prepare for this deposition today, during the first phone call in November or December, the first time you spoke to the Department of Labor about this deposition, what did you say to them?

MS. PFITSCH: Objection to form.

THE WITNESS: I told them about the gentleman that calling me two time before I record and I told them that I make a record telling me about Serene and what did I say and what did he say.

Q. But they already knew that you had the recording to prepare for this deposition; correct?

MS. PFITSCH: Objection to form.

THE WITNESS: They already knew because I told them.

Q. Right.

So did the Department of Labor tell you anything about how this deposition was going to occur?

A. Yes, they tell me.

J. Grant

Q. Did they tell you during the first call you had with them?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes, they told me said nothing but the truth and they asked me whatever and I keep on following up with them.

Q. So they told you to tell the truth at this deposition in November or December?

MS. PFITSCH: Objection to form.

THE WITNESS: From the day I make a report.

Q. And what day did you make the report?

A. That's the thing, I don't remember. I don't remember which date definitely. But if you look on the form, you can see the date.

Q. Which form?

A. Did you have a paper for the report that I make first?

Q. No. You said you didn't record the first call.

J. Grant

A. Not the first one, the one that I report to labor board.

Q. So you didn't report the two previous calls to the Department of Labor?

A. I told them --

MS. PFITSCH: Objection to form.

THE WITNESS: -- but I let them know I don't record it.

Q. And this was while you were preparing for this deposition today?

MS. PFITSCH: Objection to form.

THE WITNESS: I prepare with nothing but the truth.

Q. Who told you that you had to appear today at this deposition?

A. The labor board told me.

Q. And what did they say to you about the deposition that you had to appear at today?

A. They told me that I have to tell the truth and nothing but the truth and they gave me a highlight what it's going to be and what it's all about.

Q. And they gave you a document

J. Grant

highlighting what this deposition was all about?

MS. PFITSCH: Objection to form.

Q. Was it a piece of paper?

A. I don't have a piece of paper.

Q. You said they highlighted something.

What did you mean?

A. We talked.

Q. And did this call occur before the new year?

A. Before the new year, after the new year. Before the year start and 2023/2024.

Q. And you spoke about this deposition?

A. Yes. Because it was a day before and it changed, so we spoke about it.

Q. Did the Department of Labor suggest that you record your calls with Mr. Jenkins?

A. No.

Q. And you testified that you spoke

J. Grant

to Hollis this morning.

What did you say to her this morning about this deposition?

A. She said I must be brave, I must speak the truth, and when I go, I must speak exactly what happened.

Q. That was all she said to you?

A. Yes.

Q. About this deposition?

A. Uh-huh.

Q. Did she tell you how it was going to proceed, that you were going to be asked questions and --

A. Yes, she told me that.

Q. And when did they tell you this?

A. Well, she tell me this morning and she tell me before that you're going to ask questions.

Q. So when you say she told you before, are you talking about the calls you just testified about before the new year?

MS. PFITSCH: Objection to form.

THE WITNESS: No.

J. Grant

Q. When did she tell you the first time she told you?

A. The first time I report they said they're going to ask questions when it get to the time for the hearing. Then afterward she told you that there's a date she's going to make for me to come over by Serene at the hearing. So I know they're going to question me.

Q. So this was before the new year?

MS. PFITSCH: Objection to form.

THE WITNESS: Before and after.

Q. When -- so how many -- so you had two conversations with the Department of Labor about your deposition today?

A. More than two.

Q. How many conversations did you have with the Department of Labor about your deposition today?

A. I don't recall.

Q. More than two?

A. Yes.

Q. And when was the first -- sorry, did they tell you that you were going to

J. Grant

be asked questions about any form of retaliation?

A. Yes.

Q. Did they explain to you what retaliation was?

A. I don't recall.

Q. Because you testified today you didn't know what it was.

A. No, that's why I'm asking you.

Q. So they spoke to you about retaliation but you didn't know what that meant?

MS. PFITSCH: Objection to form.

THE WITNESS: There's a lot of things we talk about.

Q. And I want to know all of them.

A. I'm not going to remember all of them.

Q. How do you remember that they spoke to you about retaliation?

MS. PFITSCH: Objection to form.

THE WITNESS: I tell you what I remember.

Q. And you remember them telling

J. Grant

you that you were going to have to report about retaliation that you experienced from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: Who told me that?

Q. I'm asking you, did they tell you that?

A. Who?

Q. The Department of Labor.

A. Told me to do that?

Q. Told you that you were going to be asked questions today about retaliation by Serene.

MS. PFITSCH: Objection to form.

THE WITNESS: I know I'm doing that. Serene don't have to tell me. I know.

Q. I understand that, but when did they first tell you that you were going to be asked questions about retaliation?

MS. PFITSCH: Objection to form.

THE WITNESS: From the day I report.

Q. From the day you reported that

J. Grant

they told you that you were going to be asked questions about your deposition about retaliation?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes.

Q. Do you know when this deposition was scheduled?

A. Scheduled to be?

Q. Yes.

A. Today.

Q. When it was actually -- when it was scheduled to occur today but it had to have been scheduled before today to know that this was going to occur today; correct?

MS. PFITSCH: Objection to form.

THE WITNESS: I know they give me a highlight when it's going to be and when it put off, because it should be from January, December, January, and every time, but today's the date they gave me.

Q. So they told you originally it was going to be in December and then

J. Grant

January and now today?

A. Yes.

Q. And you don't know when this deposition was scheduled to occur?

MS. PFITSCH: Objection to form.

THE WITNESS: It's scheduled for today.

Q. What else did the Department of Labor tell you about retaliation in any of the phone calls you had with them?

MS. PFITSCH: Objection to form.

THE WITNESS: When is the retaliation, what do you mean? Could you explain that word for me?

Q. You just testified that the Department of Labor spoke to you about retaliation.

MS. PFITSCH: Objection to form.

Q. Did they tell you -- during any of these phone calls in preparing for this deposition, did the Department of Labor tell you that you were going to be asked questions about your declaration?

A. Yes.

J. Grant

Q. And what did they tell you that?
A. I told you more than once, more than two, from the beginning they told me.
Q. When was the first time they told you you were going to be asked questions at this deposition about your declaration?
A. From the first time I report this.
Q. What is the date of the first time you reported it?
A. I don't remember the date.
Q. What month?
A. I don't remember. It's in writing but I don't remember.
Q. Where is it in writing?
A. Well, labor board must have it because they must record the date I called them.
Q. And when was the first time that the Department of Labor told you that you were going to -- that Serene was calling you -- it was retaliation for Serene to ask you to sign a declaration?

J. Grant

MS. PFITSCH: Objection to form.

THE WITNESS: Before I answer that question, can I ask you something?

Q. Yes.

A. In your phrase, what is retaliation?

Q. Retaliation is taking adverse action against you in relation to your employment or in relation to anything. It's taking adverse action against you.

A. Well, labor board would never tell me that. I'm the one that shared the report to them.

Q. And after they you reported it to them, then they told you that it was retaliation?

MS. PFITSCH: Objection to form.

THE WITNESS: Well, if that's the meaning of it, yes.

Q. And what was the retaliation?

MS. PFITSCH: Objection to form.

THE WITNESS: By this voice note recording and this man calling me.

J. Grant

Q. So the retaliation was this man calling you?

A. Yes.

Q. Just to be clear, you never signed any form that Serene sent you?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't sign two before.

Q. You never signed any form that Serene sent to you?

MS. PFITSCH: Objection to form.

THE WITNESS: Well, if it's Serene, he put his name as Jenkins. I didn't sign the form that that man sent to me.

Q. So you said that Mr. Jenkins sent you two forms?

A. Yes.

Q. And you never signed either of those?

A. None of those.

Q. And you never read them?

A. I don't read them. I just see on the top of that coming from him and

J. Grant

with Serene name, so I reject those forms.
Q. So what did you tell the Department of Labor these forms were about?
A. I don't talk on behalf of the form, I talk on behalf of the voice note, the recording.
Q. So you never told them that you received two declarations?
A. Yes, I told them that, but I don't tell them what's in it because I didn't look in it. I tell them about what I record.
Q. And they never asked you what was in these forms?
A. Well, they couldn't ask me because I said I didn't read it.
Q. And they knew you didn't read it?
A. Yes, I told them.
Q. Was Mr. Jenkins mean to you in any way?
A. No.
Q. He was very nice?

J. Grant

A. Yes.

Q. And you don't know what these forms were, so you don't know --

MS. RUDICH: Withdrawn.

Q. So you don't know that these forms were actually declarations or asking you to sign any declarations on behalf of Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: Which form, the one that --

Q. The two that you deleted.

A. I didn't look that. I didn't read it.

Q. So you don't know anything about these forms?

A. No.

Q. Did the Department of Labor tell you that Serene was calling her former -- not former, other aides of Serene?

A. The Department of Labor?

Q. The board.

A. If they told me that?

Q. Yes.

J. Grant

A. No.

Q. They never told you that?

A. No. I don't go about that, I go about my own business.

Q. What was the purpose of the call with this unnamed person when she told you that she also received a call to ask for a declaration?

A. I am the one that mention it to her that I'm getting some weird call and she said from who. I said -- I called the name of the gentleman and said he's calling from Serene. She said I get it, too.

Q. And she said she got the call from Mr. Jenkins?

A. Yes.

Q. And she identified him by name?

A. Because Mr. Jenkins give everyone his name.

Q. And you don't recall ever working with anyone at Serene with the name Al Jenkins?

A. Not what I know of.

J. Grant

Q. So when he first called you, did you say who are you?

A. Yes.

Q. And he said he worked for Serene?

A. Yes.

Q. And did you say I didn't know anybody at Serene with that name?

A. No, I didn't say that, because he could be working there and I don't know and I don't contact with the man, nothing, so I didn't say that. I listen a little part in the first one and he was going down in details and I hang up the call.

Q. How long have you been a home healthcare aide?

A. A very long time, very long time.

Q. While you worked at a home healthcare aide, did your patients receive a visit from their case management nurse to assess the patients and check up on them?

MS. PFITSCH: Fran, I need to

object and maybe confer about the scope of where you're going, because the judge had given us a narrow --

MS. RUDICH: This goes to respite care which goes to the truthfulness of the declarations.

MS. PFITSCH: Which declaration?

MS. RUDICH: Hers, anyone's.

MS. PFITSCH: Ms. Grant's?

MS. RUDICH: Yes.

MS. PFITSCH: Which, this one, Exhibit 2?

MS. RUDICH: Yes.

MS. PFITSCH: But there isn't anything here about respite care.

It sounds like you're going into the underlying terms and conditions of work and some of the facts related --

MS. RUDICH: Are you instructing her not to answer?

MS. PFITSCH: I want to confer with you about the scope, because the judge provided a limited scope for today's deposition and I wanted to see

J. Grant

where you're going.

MS. RUDICH: It will tie in.

I have to set the foundation. If you want to call the judge, I'm setting a foundation.

MS. PFITSCH: I'm seeking to confer so we can come to an agreement. It doesn't sound relevant --

MS. RUDICH: Are you instructing her not to answer?

MS. PFITSCH: I am not yet.

MS. RUDICH: I'm laying a foundation.

MS. PFITSCH: For something related to the information she's provided for the preliminary injunction motion?

MS. RUDICH: And the information she's telling me today about her work experience, about working overtime.

MS. PFITSCH: That's not the -- the judge specifically --

MS. RUDICH: It will tie in.

MS. PFITSCH: If you'd prefer to

talk off the record so the witness doesn't hear so we can confer on the subject matter and I could better understand how it ties in.

MS. RUDICH: Ask her to step out.

MS. PFITSCH: No, I mean with you.

Let's go off the record then.

(Whereupon a break was taken)

Q. Was anybody ever mean to you while you worked at Serene?

A. The company.

Q. How were they mean to you?

A. Because they're saying when I work at Ms. E[patient , they didn't treat me fairly. I work with them before several dates. They didn't treat me fairly.

Q. How did they not treat you fairly?

MS. RUDICH: We can't put the patient's name on the record, so we're going to have to redact that.

MS. PFITSCH: We would agree to that.

J. Grant

Q. How was Serene mean to you?

A. They mean to me because they fire me and I didn't deserve to be fired.

Q. Did you ever put that in writing to Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't have to put that in writing because they know they fire me.

Q. So you believe Serene retaliated against you about submitting timesheets that they believed were false?

A. Yes.

Q. Do you feel you were retaliated against for requested overtime?

A. I don't requested overtime. I work overtime.

Q. And you never asked Serene to pay you for that overtime you worked?

MS. PFITSCH: Objection to form.

THE WITNESS: I put it on the timesheet.

Q. And did they pay you?

A. They said they pay me, but they

fire me afterward.

Q. So they did pay you for the overtime?

A. Yes.

Q. So you are not owed any overtime from Serene?

MS. PFITSCH: Objection to the form.

THE WITNESS: I'm not sure.

Q. So you did request overtime when you worked for patient SE?

A. I don't request overtime. I work overtime. I don't ask them. I work overtime. They put me there to work and I work overtime.

Q. Did they know you were working overtime?

A. Yes, they do.

Q. How do you know?

A. Because if I work seven days, you know that is over forty hours overtime.

Q. Did you ever ask for overtime for working seven days?

J. Grant

MS. PFITSCH: Objection to form.

THE WITNESS: That's -- seven days living.

Q. So you worked for Ms. SE seven days a week for the entire time you worked for her?

A. For the time when I was there, I worked seven days a week.

Q. And you never requested overtime for that?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't request it.

Q. Why not?

A. Because that's what they put me there, for, seven days.

Q. But you knew you were working overtime.

A. Yes.

Q. So why wouldn't you request that from your employer?

A. Because that's the rule, you work seven days on and seven days off. Before I was working with them, there was

J. Grant

no seven days. You work up to three, four, five, six months. Then they cut it down to seven days on, seven days off.

Q. While you were working for patient SE?

A. No.

MS. RUDICH: Let's go off the record for a minute.

(Whereupon a break was taken)

Q. How much money do you think Serene owes you for overtime?

MS. PFITSCH: Objection. Objection to form.

Ms. Grant, hold on a second.

So again, I think you're getting into the underlying case as opposed to the facts that are related to the preliminary injunction motion, which is what the judge allowed this discovery period for.

MS. RUDICH: And the facts related to this preliminary injunction includes retaliation, and she believes she was retaliated against for

requesting overtime.

MS. PFITSCH: If you're asking about the circumstances at the very end of her employment and her work with patient SE, that's, yes, I agree, that's relevant. I understand your question to be a broad one as to over her course of employment.

Q. How much money do you think Serene owes you for working for patient SE?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't track that.

Q. What?

A. I don't track that and I don't know.

Q. You didn't track that?

A. I don't track that, I don't check the money, and I don't know.

Q. Did the Department of Labor tell you how much money you would receive in this lawsuit?

A. No.

J. Grant

MS. PFITSCH: Objection.

Again, Fran, to the extent your question calls for information related to the entire lawsuit, the judge was very clear.

Q. Did the Department of Labor tell you how much money you could receive if you submitted a declaration in connection with this lawsuit?

A. No.

MS. PFITSCH: Objection to form.

Q. Did the Department of Labor ever mention a figure, an amount to you for appearing today -- how much you could get for appearing today at a deposition?

A. No.

Q. Do you have any amount in your head how much you should receive for submitting a declaration and appearing at this deposition?

A. No.

Q. So you have no number in your head?

A. No number.

J. Grant

Q. Did you ever speak to somebody named James Daly at the Department of Labor?

A. I don't recall that.

Q. You may have but you don't recall or you don't recall ever talking to him?

A. Pertaining to what?

Q. Pertaining to this lawsuit.

A. No, I don't think so.

Q. So you never spoke to James Daly?

A. As I say, I spoke to this lady. I don't know who else I spoke to. And if I do spoke to somebody else, I don't recall speaking to a gentleman, it always be a lady.

Q. So you don't recall ever talking to a male from the Department of Labor?

A. No, about this case.

Q. You did not?

A. About this case, no.

MS. PFITSCH: Objection to form.

MS. RUDICH: I'm making sure,

J. Grant

when she says no --

Q. So you never spoke to any man from the Department of Labor in connection with this lawsuit?

A. No.

MS. PFITSCH: Objection to form.

Q. Did you speak to anyone at the Department of Labor when you worked for patient SE?

A. No.

Q. So the first time you spoke to the Department of Labor was after you were fired from Serene?

A. I didn't even talk to them when I'm fired. It's when this recording.

Q. I understand.

I'm just asking the first time you spoke to the Department of Labor was after you were fired from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: As I say, when I spoke to them about this call.

Q. And that was -- so that had to have been after you were fired?

J. Grant

A. Yes.

Q. And were you fired from Serene for submitting false timesheets?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes, that's what the lady that fired me said. Not false timesheet, for additional hour.

Q. But you never asked them for additional hours.

A. I didn't ask them, because the time when I was working with SW [sic], they change the schedule seven days on and seven days off. So you work seven days and you're off seven days. I wouldn't call it overtime because when you come back and you work the seven day, you get the flat hours.

Q. Did you get paid for the seven days you didn't work?

MS. PFITSCH: Objection to form.

THE WITNESS: No.

Q. So do you believe that you were fired from Serene for putting down on your timesheet that you worked more than forty

J. Grant

hours in a week?

A. That wasn't the complaint.

Q. What was the complaint?

A. Because they said I put down two-hour extra that I worked that I shouldn't put on the timesheet. That's what the lady told me.

Q. It was true?

A. I wrote down the two hours that I wake, I go and assist the lady. It pass my thirteen hours.

Q. Did you ever file a class action against Serene?

A. This one going to be the first one.

Q. Did you ever file a lawsuit against Serene before this one?

A. Yes, but I don't know what come of it, because now we're talking about SW. There was a patient they send me to --

Q. Let me interrupt you. SE.

A. SE.

There was a patient they send me to in Port Jefferson, a wife and a

J. Grant

husband. I can say the first name, C[patient name] R[patient name]. They send me there to work. She was a bedbound patient. I work there --

Q. You can't mention the names on the record, you can't mention -- you can mention initials but not names.

MS. PFITSCH: And we can agree of course to redact the names that have been said thus far.

THE WITNESS: So they send me there. I was there for like one year. I've been working for two persons while I've been getting paid for one. I reported several times to the company, I said I only getting paid for one person and I'm working with the wife and husband and they have a three-floor house, I have to be the cleaner, the everything. I don't get paid for that. I complain several times, abuses there, no sleep at night, not good bed. I make a report of that. I didn't hear nothing back

J. Grant

from that.

Q. Who did you report to at Serene about?

A. I call Liz, there was a lady there, she's the one that put me on the job.

Q. Liz?

A. I don't recall her last name. Her name was Liz.

And that case, when I told them I'm going to leave, they throw out the case. And when the case manager told me that they throw out the case, I call Serene, I said I understand you guys are throwing out the case. I want to know ahead of time to get something to do. They said no, more than one morning I was there and they come and they said this case is not longer with Serene anymore. They leave me stranded. And I reported to labor board. I didn't follow up.

Now, this one, yes, I do, that's why I record this one, I don't want it to be lost like the first time.

J. Grant

Q. So this is the third time you're seeking money from Serene; correct?

A. I'm not seeking money, I'm seeking justice.

Q. This is the third time you're seeking justice from Serene?

MS. PFITSCH: Objection.

Q. The first time was when you submitted the timesheets that they said were false. That was the first time you sought money from Serene.

The second time is when you filed the class action lawsuit; correct? Now this lawsuit.

So this is now the third time you're seeking money from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: Could you repeat those three times you said again?

Q. The first time is when you submitted the timesheet that Serene felt was false, you weren't entitled to that money; correct? That's what they said.

A. That's not the first time. The

J. Grant

one Port Jefferson, that's the time when I report them to labor board.

Q. Did you get paid -- when you worked seven days a week straight, did you get the minimum wage?

A. I don't know. I don't check it. I just keep working.

Q. So then why did you report it to the Department of Labor?

A. Because the time when I report it -- the first report, I'm working for two persons and I'm only getting paid for one.

Q. Was that the New York State Department of Labor or the United States federal Department of Labor?

A. The labor board.

Q. What is the labor board?

A. What is the labor board?

Q. Yes, what is the labor board that you're saying you reported it to?

A. The same labor board who I report this statement to.

Q. So you're saying that you made

J. Grant

more than -- you made a report to the U.S. Department of Labor before you reported this occurrence?

A. The first time you ask me, I said I report them before already with one patient, and this is the second one.

MS. RUDICH: We're going to request any documents relating to this report to the Department of Labor.

MS. PFITSCH: We'll take it under advisement.

Q. Who did you speak to at the Department of Labor the first time you reported it?

A. That's a long time. I don't remember.

Q. Did you tape any calls relating to that report?

A. Tape? From who? Who did I tape?

Q. Well, the calls that you complained that you were working for two people.

A. I don't need to tape. I call

J. Grant

them and I talk to them.
Q. So why did you feel you had to tape Mr. Jenkins?
MS. PFITSCH: Objection to form.
THE WITNESS: Because I don't know what Mr. Jenkins is up to. He's a case controller, he's working for Serene. I don't know which one of them he's doing.
Q. And you let him talk ten minutes before you started the recording --
MS. PFITSCH: Objection to form.
Q. -- even though you didn't know what he was calling you about; correct?
MS. PFITSCH: Objection to form.
THE WITNESS: That's what I do. I will sit down and listen you carefully when you're talking. I listen you and I observe what you're saying. I just don't jump to things.
Q. So you were the class representative in a class action for unpaid overtime; correct?
A. Could you repeat that again?

J. Grant

Q. You were a named class representative in a class action case you brought for unpaid overtime?

A. From who, which company?

Q. Serene.

A. Yes.

Q. And who was your attorney for that case?

A. For that case?

Q. Yes.

A. Did that case go through?

Q. I don't know. I'm asking you. You were the plaintiff.

A. Because I never have attorney on Serene case.

Q. You never had an attorney where you were named as the class representative in a case against Serene. You did not have an attorney for that?

A. I don't have an attorney. I talk to somebody at the labor board about the first case, the first patient. I know I talk to them about this one.

Q. Do you remember bringing a

J. Grant

lawsuit against Serene for unpaid overtime?
A. I don't remember. And if I do, if it's in the record, yes, I do. But I don't remember. As I told you, those two patient SE and CR, those are the two patients I know about.
Q. Did you ever speak to an attorney about unpaid overtime?
A. Yes, I do, I remember that.
Q. And who did you speak to?
A. I speak to an attorney by the name of Michael. I don't remember his last name.
Q. Michael something?
A. Samuel.
Q. S A M W E L L?
A. S A M U E L.
Q. Samuel.
And did he file a lawsuit on your behalf?
A. No, he told me that there is a lawsuit with the labor board and you guys, so it cannot cross it. I have to wait.

J. Grant

Q. So that was after he filed the lawsuit; correct?

A. I'm talking about with the patient CR.

Q. And I'm talking about the lawsuit that you spoke to Mr. Samuel about.

A. Uh-huh.

Q. Was that ever filed in court?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't think so.

Q. So if, in fact, it was filed in court, would you be telling the truth today?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm not telling no lie. I'm telling the truth.

Q. So you don't think it was ever filed in court?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm not sure.

Q. And in that lawsuit, were you seeking money from Serene for overtime?

A. I'm not seeking money.

J. Grant
Q. You're not seeking money?
A. Well, I wouldn't say -- the one with C and R, yes, I'm seeking money for the work I do. Yes, I do.
Q. And you filed a lawsuit to obtain that money; correct?
A. I don't think Mr. Samuel pushed you because the labor board was in talk with you guys already, so he didn't want to cross it.
Q. Are you seeking money in this lawsuit?
MS. PFITSCH: Objection.
THE WITNESS: I seek money for work I do with CR.
Q. Not for SE?
MS. PFITSCH: Objection to form.
THE WITNESS: I don't even care about that one, but I work for two couple and I get paid for one.
Q. So that's what this lawsuit is about?
A. No.
MS. PFITSCH: Objection to form

J. Grant

and objection to the scope.

Q. Why did you speak to the attorney Samuel?

A. Because I work for two person, they pay me for one, it's a lot of stress and everything. When I call Serene during the pandemic to give me gear, no turn up. If I have a problem, nobody turn up.

Q. Do you claim you're owed overtime on this case?

MS. PFITSCH: Objection. again --

MS. RUDICH: I'm setting a foundation, Hollis.

MS. PFITSCH: But Fran, let's confer if you want out of the room, but if you're asking questions --

MS. RUDICH: It relates to the retaliation.

Q. Do you believe you're owed overtime?

A. Yes. Not with C --

MS. PFITSCH: Objection.

THE WITNESS: -- E[patient name] or

J. Grant

whatever, E.

MS. PFITSCH: You're asking questions beyond the parameters that the judge allowed for this deposition.

Q. So you were retaliated against for asking for overtime for the other people; is that your testimony today?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm not talking about overtime. They're supposed to pay me for -- I take care of two person and they pay me for one.

Q. And that's what you are seeking money for today?

MS. PFITSCH: Objection to form. Objection to the going beyond the parameters that the judge allowed for today.

Q. Do you remember the first time --

MS. RUDICH: Strike that.

Q. Was the first time -- what was the name of the first person from the Department of Labor that you spoke with?

J. Grant

A. Which one of the case?

Q. So you're now saying you have two cases?

MS. PFITSCH: Objection to form.

THE WITNESS: No, I bring up the two persons so I want to know. If it's the one with CR, that's like two, three years ago or more. And if it's SW or SE --

Q. SE.

A. I don't know the name of the person I spoke to. I can't recall. I don't remember.

Q. Did you take any notes during your phone calls to the Department of Labor?

A. No. I don't need because I know they have everything in writing.

Q. Who has everything in writing?

A. The labor board.

Q. The labor board has this in writing?

A. Whenever I call, they have it in writing.

J. Grant

MS. RUDICH: We request documents relating to every time Ms. Grant called the Department of Labor.

MS. PFITSCH: We'll take it under advisement.

Q. So the first time you spoke to the Department of Labor, was it because you felt you were owed more money because you were working for two people or because you were working overtime?

A. I was working for two people and I was working overtime, too.

Q. And did you ever request overtime from Serene for that?

A. I call them and I tell them everything. The line-in facility was not good. Nothing about that job. I was sleeping on a piece of sponge and a couple of pieces of board. I even call them, I said come and look where I'm on, I'm on that job for one year.

MS. PFITSCH: Fran, this is going way beyond the parameters for the deposition today.

J. Grant

Q. Were you up during the night when you worked for SE?

A. Whenever I get up to assist her.

Q. Did you work during the night when you worked for SE?

A. I get up certain time of the night to go and assist her.

Q. Did you report that to Serene?

A. Yes, I do.

Q. How did you report it to Serene?

A. I call Liz, because she's the one that give me the job, and I told her.

Q. What did she say to you after you told her?

A. I told her I'm going to put it on the timesheet. She said whatever you work, you put it on the timesheet.

Q. Did you?

A. Yes.

Q. So your timesheets will have that indicated?

A. Yes, you will see it.

MS. RUDICH: I'm going to mark this as Exhibit 3.

J. Grant

(Whereupon, a document entitled Serene Home Nursing Agency Aide Activity Sheet was marked Defendant's Exhibit 3 for identification.)

MS. RUDICH: Let me state for the record that Exhibit 3 is a multipage document -- Exhibit 3 is a fifteen-page document, and they all have the heading Serene Home Nursing aide activity sheet. And they are double-sided except for one.

Q. Were these the timesheets that you filled out when you worked for SE?

A. No.

Q. These aren't?

A. No.

Q. Is that your signature on this document?

A. Yes.

Q. So what do these documents represent?

A. I don't see no patient name, but this is not from S[patient E[patient .

Q. How do you know that?

J. Grant

A. Because this is the first time I work with that timesheet I do for her.

Q. What dates did you work for patient SE?

A. I don't remember the date.

Q. Was it in 2021?

A. I don't.

Q. When were you terminated? How long did you work for Ms. SE before you were terminated?

A. I think about three weeks.

Q. So you only works for SE for three weeks?

A. Uh-huh.

Q. Did the timesheets that you completed for patient SE contain the language that is in the box on page two?

MS. PFITSCH: These aren't numbered.

MS. RUDICH: I'm asking her about --

MS. PFITSCH: The page numbers.

MS. RUDICH: The second page.

MS. PFITSCH: I have a different

J. Grant

second page than Ms. Grant, so they may not be in the same order.

Could we number them for clarity for the record? Because there's different language on the first page of her packet as compared to the first page of mine. I don't know if it's just because the documents are reversed. Or you could identify it by date.

Q. What's your address, Ms. Grant?

A. PII - address

PII - address

Q. Did you request $3,000 in overtime from Serene for when you worked for SE?

A. I didn't request no money with nobody.

MS. RUDICH: We're taking a break.

(Whereupon a break was taken)

Q. So if Serene's records don't indicate that you ever worked for two people at the same time, would those

J. Grant
records be lying?
MS. PFITSCH: Objection to form.
And again, this is outside the
parameters --
MS. RUDICH: She testified to it.
THE WITNESS: They employ me to
work with the wife CR and then the
husband was there, so I called them
and said I'm taking care of the
husband, too. They said if you're
cooking, you can cook for him. If
you're washing, you can just put his
clothes into the washing machine, too.
Q. Are you sure it was for Serene?
Because Serene doesn't have any record of
you working for mutual patients.
MS. PFITSCH: Objection to form.
THE WITNESS: This is the lady I
was working with, all these seven days
how much months, this is the lady.
Q. And did you -- please review
these and tell me if there's any overtime
mentioned on any of these timesheets.
MS. PFITSCH: Objection to form,

J. Grant

and you're going outside the parameter.

I'm going to ask again, Fran, to confer about the scope of the deposition.

Q. Do you feel you were retaliated against by Serene for working for a mutual patient?

MS. PFITSCH: Objection to form.

THE WITNESS: What do you mean by "mutual patient"?

Q. Two people at the same time.

A. I'm not accusing them, but they put me there to work and I'm taking care of two person and I told them. They didn't do nothing to stop it. They let me stay there for a year.

Q. Do you believe you were retaliated against by Serene by them assigning you to work for two people?

MS. PFITSCH: Objection to form.

THE WITNESS: I'm not accusing them.

Q. What are you --

J. Grant
MS. RUDICH: Withdraw that.
Q. You testified that you called the Department of Labor about the fact that you were working for two people.
A. Uh-huh.
Q. Correct?
A. Yes.
Q. And what was your complaint, that you needed more money?
MS. PFITSCH: Objection to form. She's already answered these questions, and these are outside the scope of the --
MS. RUDICH: I'm going to mark this as Exhibit 4. It's a one-page document. It's the 2020 W-2.
(Whereupon, a document entitled 2020 W-2 and Earnings Summary was marked Defendant's Exhibit 4 for identification.)
MS. PFITSCH: I would request that her Social Security number be redacted.
MS. RUDICH: Sure. It is

J. Grant

redacted. It has XXX.

MS. PFITSCH: Great.

MS. RUDICH: And the employee's -- they're all X'd out.

MS. PFITSCH: I see it for her number.

Thank you.

Q. So it's your testimony today you complained to the Department of Labor because you wanted to make more money in 2020; correct?

MS. PFITSCH: Objection to form and the scope.

Fran, can we confer how this is connected to the retaliation and preliminary injunction?

MS. RUDICH: She complained to the Department of Labor about working in 2020 for two people.

MS. PFITSCH: You asked broad questions which I allowed to see whether there was a foundation that was connected to the preliminary injunction motion. And then you asked

J. Grant
whether there was a connection to retaliation and she confirmed that there isn't a connection.
So again, I think you've got -- you've probed it. There's no connection between those communications with the Department of Labor, the patients she's spoken about before she was terminated, those are all related to the underlying lawsuit. The judge has been clear that this deposition is about the preliminary injunction motion and retaliation claim.
THE WITNESS: So can I ask you a question?
MS. PFITSCH: No, no, no, please, Ms. Grant.
THE WITNESS: Can you provide me the timesheet for SE?
Q. I don't have them.
When you calmed the Department of Labor for working for the two patients at the same time, did you make a

complaint?

MS. PFITSCH: Again, Fran, you have fleshed out that this is actually not connected to the retaliation issue.

MS. RUDICH: It could be if she made a complaint.

MS. PFITSCH: You already asked her about that and she confirmed it was not connected to retaliation.

MS. RUDICH: Let's make it clear.

Q. Do you feel you were retaliated against by Serene --

MS. PFITSCH: This is all asked and answered.

MS. RUDICH: I'm going to ask this question first.

Q. Does Serene know you made the first complaint to the Department of Labor?

MS. PFITSCH: Objection.

MS. RUDICH: Because if they knew --

THE WITNESS: I don't know.

J. Grant

Q. Did you ever hear from anybody at the Department of Labor about your first complaint?

MS. PFITSCH: Objection.

Where are you going? Objection to form. I don't know what you're asking.

Two, it sounds not connected to the preliminary injunction motion.

Q. Do you know if Serene found out that you made the first complaint?

A. I don't know.

Q. Do you believe you were retaliated against by Serene for making the first complaint?

A. I still don't know.

Q. You don't know if you were retaliated against?

MS. PFITSCH: Objection to form. She said she didn't know.

Q. Did you experience retaliation from Serene for making the first Department of Labor complaint?

A. I don't know.

J. Grant

Q. So sitting here today, you do not know whether Serene retaliated against you for making the first complaint?

A. As I say again, the gentleman tell me his name, he said he worked with Serene.

Q. I'm talking about the first complaint you made to the Department of Labor about CR or whatever.

A. Uh-huh.

What happened to that complaint? What question you ask me?

Q. Did you experience any retaliation from Serene for making that complaint to the Department of Labor?

MS. PFITSCH: Objection to form.

THE WITNESS: I don't know.

Q. So it's not your -- is it your testimony today that you don't know whether you were retaliated against?

MS. PFITSCH: Objection to form.

THE WITNESS: That's what I mean. I don't know.

Q. Did you ever sign a disciplinary

J. Grant

action form saying that you didn't work and then you told Serene you did work and now you're saying you worked and are owed money for SE?

MS. PFITSCH: Objection to form.

THE WITNESS: I work. One thing I know, I work.

Q. So how many --

A. Let me get this clear.

They didn't owe me money for working with SE. They're the one terminate me because they said I put on two extra hours on my pay, which I work for it, so I didn't say they owe me.

Q. Did you sign a disciplinary form when you were fired from Serene?

A. She let me sign the form, then she explain to me what the form is all about. Because if she did before, I wouldn't sign it.

Q. And after she explained to you what the form was about, did you ask her take the form back because you didn't understand what you were signing?

J. Grant
MS. PFITSCH: Objection to form.
THE WITNESS: I didn't.
Q. How much money did you request in overtime when you worked for SE?
MS. PFITSCH: Objection to form.
THE WITNESS: I didn't.
Q. You didn't ask for $3,500?
A. No.
Q. So if Serene has that documented that you asked for that, that would not be true?
MS. PFITSCH: Objection to form.
THE WITNESS: Who did I ask for that?
Q. Serene.
A. No, I never.
Q. So if we have a document that indicated you asked them for that --
A. For what?
Q. -- that document would be false?
MS. PFITSCH: Objection to form.
Q. $3,500 for overtime for SE.
MS. PFITSCH: Objection to form.
THE WITNESS: I didn't even work

J. Grant

for SE that long to ask for
thirty-five, whatever, dollars or
cents.

Q. Name any way that Serene harmed you.

Did Serene make a police report against you for the incident in which you were terminated?

A. Which incident?

Q. When you were terminated.

A. What is the incident?

Q. The incident -- you tell me.

You told me -- why do you think you were terminated from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: She told me when I
signed the paper, then she told me
that there's an extra two hours on my
timesheet. But now I would like to
explain with the timesheet but there
is no timesheet.

Q. What?

A. I would like to explain on the timesheet what the termination is all

J. Grant

about, but there's no timesheet.

Q. Did you indicate on SE's timesheets that you worked more than thirteen hours into sleep time for the fourteen days you worked there? Seventeen days you worked there.

A. Yes.

Q. You indicated on your timesheets?

A. I worked two extra hours in the night. That's what I put on the timesheet. If the timesheet was here, it tell for itself.

Q. So could those two hours equal $3,500?

A. I never ask for money. I never ask for money.

Q. So when you reported -- what was your complaint about Serene when you worked for SE?

MS. PFITSCH: Objection to form.

MS. RUDICH: This is a one-page document saying Jennifer Grant on top.

(Whereupon, a one-page document

J. Grant

was marked Defendant's Exhibit 5
for identification.)

Q. Have you ever seen this before?

A. No.

Q. Did you work overtime the week ending November 13, 2021 that you were not paid for?

A. Which patient is that?

Q. You tell me.

A. I don't know. I've never seen this paper.

Q. It was SE.

If I tell you it was for SE --

A. Let me explain you something with SE.

I get paid for what I work for with her. I don't have a money issue with SE. The problem is they fire me accusing me wrongfully and fire me that I put two hours overtime on my timesheet. I have no other issue with money or anything with SE. That's what I am all about here for today, for firing me falsely.

Q. You're here today to explain

J. Grant

that you were fired falsely?

A. Yes, because I put the two hour I work on the timesheet. That's what the lady explain to me when she fire me.

Q. Did they explain to you why they thought you did not work the two hours you put down on your timesheet?

A. She said she told me not to put it on that timesheet, so put it on the next timesheet.

Q. Did you?

A. I didn't put it on the next timesheet. That's the timesheet I work with.

Q. So did they tell you you weren't going to be paid for the overtime because you put it on the wrong sheet?

MS. PFITSCH: Objection to form.

THE WITNESS: They didn't tell me that in the beginning. They said to put it on the next timesheet.

Q. And what reason did Serene give you for believing you didn't work those two hours?

J. Grant

MS. PFITSCH: Objection to form.

THE WITNESS: I don't know because everybody go there and go through the same thing, just like me. You have to get up in the night and assist that lady.

MS. RUDICH: I want to introduce this as Exhibit 6. It's a two-page document entitled Serene Home Nursing Agency Employee Corrective Action Form.

(Whereupon, a document entitled Serene Home Nursing Agency Employee Corrective Action Form was marked Defendant's Exhibit 6 for identification.)

Q. Have you ever seen page one of this document?

A. Yes.

Q. And do you see the paragraph in the box that says, "after investigation, it was confirmed by Jennifer's assigned patient SE, in a conversation with Paula, assistant director of nursing, that you

J. Grant

did not assist her during the additional time documented each day"?

A. I see that.

Q. Is that false?

MS. RUDICH: I'll withdraw that question.

Q. Is SE lying when she said you did not help her?

A. Yes, she did.

MS. PFITSCH: Objection to form.

Q. She lied?

A. Yes.

Q. And why would she lie about something like that?

MS. PFITSCH: Objection to form.

THE WITNESS: As I said, she lied. I don't know why she do that, but she's lying.

Q. Did you write that -- on this document, did you indicate I didn't remember that SE was lying when she said you helped her during the night?

A. This is the first time I see this document that she said I'm lying.

J. Grant

Q. You signed it.

A. This document, I sign here. This is not my handwriting.

Q. So is it your testimony today that the part where the incident was was not on this document when you signed it?

A. This wasn't on this document. As I told you, she asked me to sign the document, and then afterwards she told me what did I do and I'm fired. This is not my handwriting (indicating).

Q. What about the signature on employee's signature on the bottom?

A. That's my signature. That's where she asked me to sign.

Q. So what was the mistake you made that you stated you made?

A. This is not my handwriting (indicating).

Q. You didn't write that?

A. No. Not my handwriting. This is my handwriting, this is my handwriting (indicating).

Q. So you never told Serene that

J. Grant

you made a mistake?

A. No, I don't make no mistake with the timesheet. I wrote what on the timesheet what hour. That's what I work, that's what I do.

Q. So when you signed this, it was completely blank?

A. This paper -- this was on it but this is what I signed. There is nothing that was under here, neither here (indicating).

MS. PFITSCH: She's pointing to the signatures below hers.

MS. RUDICH: The signatures below hers?

Q. I'm not asking you about that. I'm asking you about J. Grant, your signature.

A. J. Grant, yes, that's my signature.

Q. And when you signed it, are you saying that there was nothing in the box that said, "incident and response from employee"?

J. Grant

THE WITNESS: Explain this to her. This wasn't there. (Indicating).

MS. PFITSCH: She's pointing to the response from employee section.

Q. So you never told Serene that you made a mistake with your timesheet?

A. I don't make no mistake, so I couldn't tell them that.

Q. So they ade this up? So this is all made up after you signed this?

A. I sign it and then she do the rest. Because I know I didn't make a mistake. I wrote what I work. I wasn't looking for no way because I was working for the two hours, so I don't want no money from SE because I got my pay.

Q. You got paid for your overtime?

A. Whatever I work, I got paid.

Q. So Serene doesn't owe you any money for SE?

MS. PFITSCH: Objection to form.

THE WITNESS: I didn't check overtime. I get my pay. I work; I

J. Grant

get my pay.
Q. I'm asking you is it your testimony today that Serene does not owe you any money for your work with SE?
MS. PFITSCH: Objection.
Now you're going to the underlying claims.
Q. But you asked for the two hours and you got paid for the two hours?
A. Yes, I got paid. I didn't ask for it. I put it on the timesheet what I work.
Q. Does Serene owe you any money for anything?
MS. PFITSCH: Objection.
This is beyond the parameter of the --
MS. RUDICH: Because it's retaliation.
MS. PFITSCH: It goes to the underlying claims.
Q. Does Serene owe you any money for retaliating against you?
MS. PFITSCH: Objection to form.

J. Grant

THE WITNESS: Which one of the client are you talking?

Q. I'm talking about every, for any clients.

Does Serene owe you any money for the retaliation that you're alleging?

MS. PFITSCH: Objection to form.

MS. RUDICH: You said there's no retaliation. You said there was no retaliation.

Q. So they can't owe you any money for the retaliation; correct?

MS. PFITSCH: Objection to form.

THE WITNESS: I answer you already, same question.

MS. RUDICH: You're right, you said that Serene didn't retaliate against you, so I will withdraw that question.

MS. PFITSCH: Objection to form.

Q. Did Serene ever make a formal complaint to the New York State Department of Education against you?

MS. PFITSCH: Objection to form.

J. Grant

This is far outside the parameters.

MS. RUDICH: No, it's not, it's about retaliation.

MS. PFITSCH: How so?

MS. RUDICH: Because the Department of Education monitors home health aides. That is a form of possible retaliation.

MS. PFITSCH: Fine.

Q. Did Serene ever report you to the Department of Education?

A. Nobody tell me if they do. I don't know.

Q. You were never made aware that Serene complained to the -- made a complaint against you to the Department of Education?

A. If they do, I don't know.

Q. Right.

You were never made aware of that?

A. As I say, if they do, I don't know.

MS. PFITSCH: Objection to form.

J. Grant

Q. Did Serene ever report you to the Department of Health?

A. If they do, I don't know.

MS. RUDICH: I think we might be close to the end, so give me two minutes to review my notes.

MS. PFITSCH: I'd like to put on the record a request for Ms. Grant to review the transcript and have an opportunity to correct.

MS. RUDICH: You're not ordering one?

MS. PFITSCH: Not right now. I'm not authorized to order anything.

We would request a free read and sign copy for Ms. Grant. I'm not authorized to order anything.

THE WITNESS: Can I say something?

Q. Yes.

A. I need the timesheet for SE.

Q. They're medical records.

A. The timesheet?

MS. I. MANOLIAS: That's a legal

document. That's not her property. That's the patient's property. We'd have to get an order from her to get that.

(Whereupon a break was taken)

Q. Ms. Grant, did Hollis ever tell you that SE submitted a declaration in connection with this case?

A. A declaration about me?

Q. Yes.

A. Yes, she did.

Q. When did she tell you this?

A. This morning.

Q. And what did she say to you and what did you say to her?

MS. PFITSCH: Objection to form. Go ahead.

MS. RUDICH: Because it's a compound question?

MS. PFITSCH: Yes.

THE WITNESS: She told me that she said that it's not true I'm talking.

Q. Did she show you this

J. Grant

declaration this morning?
A. No, she only tell me.
Q. So you never saw it?
A. No.
Q. Did Hollis ever tell you what the declaration said, the details of the declaration?
A. She just went over it with me and said she declare that I didn't got up to help her.
Q. You don't what?
A. I didn't got up in the night to help her.
(Whereupon, a document entitled Declaration of S[patient name] E[patient name] was marked Defendant's Exhibit 7 for identification.)
Q. Please read the whole document, Ms. Grant.
A. Pardon me?
Q. Please read the whole document.
A. (Reviewing).
Q. Have you reviewed that, Ms. Grant?

J. Grant

A. Yes, I do.

Q. Did Hollis give you any advice on how to answer questions about S[patient name] E[patient name]?

A. No.

Q. She didn't tell you that questions were going to be asked about S[patient name] E[patient name]?

A. Yes.

Q. And did you explain to her what happened?

A. I didn't get the time to explain because we were on our way coming. I know exactly what happened and I know what I do from what I don't do.

Q. Are you on any medications today?

A. What type of medication?

Q. Any, any medications today that would interfere with your ability to testify.

A. I might sound crazy? I'm asking you because you ask me about medication.

Q. Are you on any medications today

J. Grant

that would interfere with your ability to testify here?

A. I'm on no medication. My sense is sticking the right way.

Q. Are you suffering from any illnesses today that would interfere request your ability to testify honestly today?

A. I have no illness.

Q. But your testimony today is that there are things in this declaration are not true?

A. Whatever she talk about herself, that is true. But what I did and what I said I did is true. I helped her, I helped her.

Q. You helped her in the middle of the night?

A. Yes.

Q. So it's not true what she says here?

A. No, it's not true.

Q. Are you retaliating against Serene for firing you?

J. Grant

MS. PFITSCH: Objection to form.

THE WITNESS: Again, you asked me the question three times, I'm not going to answer, because you asked me already.

Q. No, I didn't. I'm asking you if you're retaliating against Serene for them firing you?

MS. PFITSCH: Objection to form.

A. Yes, they fire me, wrongfully they fire me.

Q. Are you upset about that?

A. Yes, I do, because I was working with the company and they fire me. It give me a hard time to get me another job in the space they fire me.

Q. You testified you got about four or five jobs after you worked for Serene.

A. But it take me a long time.

Q. What's a long time?

A. I'm not checking the time, but I know it take me a good time to register with the company and everything.

Q. One month?

J. Grant

A. It can be more than that, too.

Q. I'm asking, was it more than a month?

A. Yes.

Q. And you believe that's because Serene --

MS. RUDICH: Withdrawn.

Q. You testified earlier that you're not looking for money in this lawsuit but you're looking for just tiers.

MS. PFITSCH: Objection to form.

Q. Do you recall that testimony?

A. Which lawsuit? Because you're talking about two different patients right now.

Q. No, I'm talking about -- you testified that all you were looking for is justice.

MS. PFITSCH: Objection to form.

Is there a question pending?

Q. What do you mean by justice?

A. We're talking about two patients, so which are the patients? I'm not looking for overtime or pay for S [patient name]

J. Grant

because, as I told you, I work, I got my pay. They fire me wrongfully. That's all about S[patient name]. But the next patient, yes, I need my pay.

MS. PFITSCH: This is going into the underlying claims again.

MS. RUDICH: No, she testified that she's looking for justice here.

Q. What do you mean by that you were looking for justice here?

MS. PFITSCH: Again, this is going to -- I allowed you to explore these areas, but you know that there is a parameter for this deposition --

MS. RUDICH: And the justice could be part of the -- I'm asking her --

MS. PFITSCH: So can you ask a narrower question?

Q. What do you mean by justice? Do you mean that -- what do you mean by justice?

A. Justice because they fire me wrongfully. That's what I mean by

J. Grant

justice.

Q. So you're looking to clear your name in this lawsuit?

MS. PFITSCH: Objection to form.

THE WITNESS: Yes.

Q. And the purpose you're here today is to clear your name?

MS. PFITSCH: Objection to form.

THE WITNESS: Not only.

Q. What other reason?

A. My next patient, too.

Q. Who is your next patient?

A. CR.

Q. Was after S[patient name] E[patient name]?

A. Before.

Q. What about CR?

MS. PFITSCH: Fran, this is going into --

THE WITNESS: I explained to you already.

MS. RUDICH: No, she testified that she felt she was retaliated against by Serene -- no, you testified that you weren't retaliated against by

J. Grant

Serene.

I'll withdraw. I'm going to leave this alone.

MS. PFITSCH: Objection.

MS. RUDICH: No further questions.

MS. PFITSCH: I have no questions.

(Discussion held off the record)

Q. Before you received calls from Mr. Jenkins, did you ever receive calls from Serene?

A. No.

Q. You never -- in all the time you worked for Serene, you never received calls from Serene?

MS. PFITSCH: Objection to form.

THE WITNESS: No.

Q. How did you get your work assignments if you didn't receive calls from Serene?

A. I get?

Q. How did you get your assignments if you do not receive calls from Serene?

J. Grant

A. My assignment about what?

Q. Any assignment.

MS. PFITSCH: Objection to form.

THE WITNESS: They fire me. I'm not working with them no more.

Q. I mean before when you were working for Serene, did you ever receive any calls?

A. You didn't explain that's the way you're talking, I think. You said -- I didn't know that way. Yes, I do, I do get call when I was working with them.

Q. And when you were working with Serene, was it private or did the caller ID come up?

A. The caller ID come up.

Q. And then you testified that the call from Mr. Jenkins was private?

A. Yes.

Q. Do you always answer private calls?

A. Yes, I answer private calls.

Q. So Serene Home Healthcare was on the caller ID when they called you when

J. Grant

you were employed by them?

A. Yes, because I saved their name. Even now I still have their name in my phone.

Q. And the call you received from Mr. Jenkins you said was private?

A. Yes.

Q. It didn't have Serene --

A. No.

Q. -- on the ID?

A. No, he identified himself that he's Serene worker.

Q. Do you have a friend named Al Jenkins?

A. No.

(CONTINUED ON NEXT PAGE)

J. Grant

MS. RUDICH: We're done now.
Thank you for your time.

THE WITNESS: Thank you, too.

(TIME NOTED: 1:47 p.m.)

_________________________ (Signature of witness)

Subscribed and sworn to
before me this_________
day of_________________,
2024.

________________________

* * *

# I N D E X

| WITNESS | EXAMINED BY | PAGE |
|---|---|---|
| J. Grant | Ms. Rudich | 3 |

# E X H I B I T S



| DEFENDANT'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Document entitled Work History Investigation | 5 |
| Exhibit 2 | Document entitled Declaration of Jennifer Grant | 13 |
| Exhibit 3 | Document entitled Serene Home Nursing Agency Aide Activity Sheet | 118 |
| Exhibit 4 | Document entitled 2020 W-2 and Earnings Summary | 123 |
| Exhibit 5 | One-page document | 132 |
| Exhibit 6 | Document entitled Serene Home Nursing Agency Employee Corrective Action Form | 135 |

I N D E X (continued)

E X H I B I T S (continued)

| DEFENDANT'S | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 7 | Document entitled Declaration of S [patient name] E [patient name] | 145 |

REQUESTS

| Page | Line |
| --- | --- |
| 107 | 8 |
| 116 | 2 |

* * *

CERTIFICATION BY REPORTER

I, Wayne Hock, a Notary Public of the State of New York, do hereby certify:

That the testimony in the within proceeding was held before me at the aforesaid time and place;

That said witness was duly sworn before the commencement of the testimony, and that the testimony was taken stenographically by me, then transcribed under my supervision, and that the within transcript is a true record of the testimony of said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, that I am not interested directly or indirectly in the matter in controversy, nor am I in the employ of any of the counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of February, 2024.

Wayne Hock

ERRATA SHEET

NAME OF CASE: Acting Secretary of Labor v. Sarene Services, Inc., et al
CASE NUMBER: E.D.N.Y., 2:20-cv-3273 (NJC) (ST)
NAME OF WITNESS: Jennifer Grant
DATE OF DEPOSITION: Feb. 14, 2024

| Page:Line | Changes | Reason for Change |
|---|---|---|
| 4:25 | Omit "Serene" | Transcription error |
| 28:25 | "recalled" should read "recorded" | Transcription error |
| 40:20 | "laid key" should read "lady" | Transcription error |
| 44:22 | I was alone when I signed the declaration. I met later in person with Hollis and Carina. | Clarification |
| 44:24 | Replace with: Hollis and Carina | Clarification |
| 45:18 | Yes, but I had already signed the declaration when I met with Hollis and Carina. | Clarification |
| 57:7 | Omit "with" | Transcription error |
| 69:12 | "recall" should read "record" | Transcription error |
| 100:6 | "No" should read "not that I recall" | Clarification |
| 116:17 | "line-in" should read "living" | Transcription error |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on MARCH 26 2024
(Date)

J GRANT
(Signature)

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: US DOL V. SERENE
DATE OF DEPOSITION: February 14, 2024
WITNESS' NAME: JENNIFER GRANT

PAGE/LINE(S)/ CHANGE REASON
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________
____/________/____________________/____________

____________________________
WITNESS

SUBSCRIBED AND SWORN TO
BEFORE ME THIS______DAY
OF________________,2024.

__________________________
NOTARY PUBLIC

MY COMMISSION EXPIRES____________________

* * *

**0**
**03273** 1:10
**1**
**1** 5:21,24 6:2 156:10
**100** 2:9
**10014** 2:5
**107** 157:11
**10:22** 1:13
**11411** 3:13 120:14
**11530** 2:9
**116** 157:12
**116-42** 3:12 120:13
**118** 156:17
**12/03/21** 7:10
**12/08/21** 7:5
**123** 156:20
**13** 133:7 156:14
**132** 156:21
**135** 156:25
**14** 1:12 159:4
**145** 157:7
**15th** 158:23
**16** 23:8
**1:47** 155:5
**2**
**2** 7:18 13:6,12 15:3 17:5 22:8 27:11 90:13 123:17,19 156:12,19 157:12
**2/6/2022** 7:13
**201** 2:4
**2019** 4:18
**2020** 123:17,19 124:12,20 156:19
**2021** 4:18 119:7 133:7
**2022** 7:18
**2023/2024** 76:15
**2024** 1:12 155:10 158:23 159:4,22
**224th** 3:12 120:13
**2:20** 1:10
**3**
**3** 117:25 118:5 118:7,8 156:6 156:15
**3,000** 120:15
**3,500** 130:8,23 132:16
**347** 29:24
**353-7164** 29:24
**3922** 158:25
**4**
**4** 123:16,20 156:18
**42** 1:20
**5**
**5** 133:2 156:11 156:21
**6**
**6** 7:18 135:9,16 156:22
**6/3** 7:19
**7**
**7** 145:17 157:5
**8**
**8** 157:11
**8:00** 38:18
**9**
**9:00** 38:19
**a**
**a.m.** 1:13
**ability** 146:21 147:2,8
**able** 49:25 50:4 50:15 51:8,11 67:9
**abuses** 103:23
**academy** 1:20
**access** 37:16
**account** 48:8 48:14
**accusing** 19:10 122:14,23 133:19
**action** 1:10 84:10,12 102:13 105:14 108:23 109:3 129:2 135:11 135:15 156:25 158:18
**activity** 118:4 118:11 156:17
**actually** 31:15 81:12 87:7 126:4
**additional** 101:8,10 136:2
**address** 3:11 120:12
**ade** 139:11
**admit** 33:21,22
**adverse** 84:9,12
**advice** 146:3
**advisement** 107:12 116:6
**advising** 4:4
**aforesaid** 158:8
**afterward** 78:7 94:2
**agency** 1:8,20 6:10 32:18 51:25 118:3 135:11,14 156:16,24
**ago** 46:24 115:9
**agree** 25:24 26:4 92:24 97:6 103:9
**agreement** 91:8
**ahead** 104:17 144:18

**aide** 89:17,21 118:3,11 156:17
**aides** 62:18 64:3 87:21 142:8
**al** 14:19 31:5 31:11 39:20,24 88:24 154:14
**alleging** 141:7
**allowed** 96:20 114:5,18 124:22 150:13
**amount** 98:14 98:18
**anapol** 2:15
**answer** 15:6,7 17:3 19:7,8 21:4 24:5,6,10 32:21 33:7 65:15 66:18 84:3 90:21 91:11 141:15 146:4 148:5 153:21,23
**answered** 47:19 123:12 126:16
**answers** 20:17
**anybody** 12:7 16:20 48:18 89:9 92:11 127:2
**anymore** 63:9 104:20
**anyone's** 90:9
**apparently** 20:8
**appear** 75:16 75:20
**appearing** 70:19 98:15,16 98:20
**applicant** 7:4
**apply** 63:8
**approximately** 4:18
**areas** 150:14
**ascertain** 65:11
**asked** 10:23 11:2,6 12:14 16:14 18:8 24:3 41:10 50:2,17,22 51:9,14,15 52:9 56:9,19 56:21,23 74:7 77:14 79:2 80:13,21 81:3 82:23 83:6 86:15 93:19 101:9 124:21 124:25 126:9 126:15 130:11 130:19 137:9 137:16 140:9 146:8 148:3,5
**asking** 3:17 10:3 20:23 21:2 23:20 27:5 72:4 79:10 80:7 87:7 97:3 100:18 109:13 113:18 114:3,7 119:21 127:8 138:17,18 140:3 146:23 148:7 149:3 150:17
**assert** 65:5,23
**assess** 89:23
**assigned** 135:23
**assigning** 122:21
**assignment** 153:2,3
**assignments** 152:21,24
**assist** 37:18,20 38:19 102:11 117:4,8 135:7 136:2
**assistant** 135:25
**attached** 14:3,6
**attorney** 2:4 3:15 4:5,14 20:15 40:17 41:7 70:8 109:8,15,17,20 109:21 110:10 110:13 113:4
**attorneys** 2:8
**authorized** 143:15,18
**aware** 142:15 142:21

**b**

**b** 1:7 156:8 157:3
**back** 22:7 24:15 26:20 46:21 51:18 66:15 72:3 101:17 103:25 129:24
**basis** 63:6 64:19
**bathroom** 36:14,15,17,21 36:22,24
**bayada** 8:15
**bed** 103:24
**bedbound** 36:22,25 103:4
**beginning** 20:2 26:14 52:6,15 55:16 68:20 69:19 83:4 134:21
**begins** 47:17
**behalf** 6:7 63:11 86:6,7 87:8 110:22
**believe** 7:17 10:9 61:24 93:11 101:23

113:21 122:19 127:14 149:6
**believed** 93:13
**believes** 96:24
**believing** 134:24
**better** 17:19 27:19 92:4
**beyond** 114:4 114:17 116:24 140:17
**big** 39:17
**bit** 21:3 55:3 65:3
**blank** 138:8
**blood** 158:18
**board** 16:6 24:19 27:17 71:24 75:3,17 83:18 84:13 87:23 104:22 106:3,18,19,20 106:21,23 109:22 110:24 112:9 115:21 115:22 116:20
**bottom** 7:2,12 7:13 36:10,12 137:14
**boulevard** 2:9
**box** 119:18 135:22 138:23
**brave** 77:5
**break** 13:15,16 48:22 65:19
92:10 96:10 120:21,22 144:6
**bring** 115:6
**bringing** 109:25
**broad** 97:8 124:21
**broken** 43:15
**brought** 109:4
**business** 88:5

**c**

**c** 2:2 112:4 113:23
**call** 11:21 12:11 14:2,5 14:12 15:13,18 15:19,22 16:16 16:18,20 17:8 17:13 18:11,13 18:19,20 19:2 19:3 23:8 27:9 28:12 29:5 30:23 31:8 32:8,11 33:24 40:24 41:6,6 46:20,20 47:18 47:22 48:19,23 49:2,11 50:21 51:3,20,24 52:7,15,18,20 52:20,21,24 53:7,9,11,14,19 53:22 54:18 55:3,16 56:9 57:5,9,12,22 58:12,25 59:25 62:3,22,23 63:3,17,19 64:4,20 66:21 66:21 67:10,18 67:19 68:9,11 68:12,20 69:15 69:19 72:19 73:4 74:3,25 76:11 88:6,8 88:11,16 89:15 91:5 100:23 101:16 104:5 104:14 107:25 113:7 115:24 116:16,20 117:12 153:13 153:19 154:6
**called** 10:25 11:5,14 12:14 18:7 19:9,15 20:11 23:2 28:11 29:8 30:24 31:18 40:8,9,11,12 54:10 57:5,17 57:18 66:9,11 83:19 88:12 89:2 116:4 121:9 123:3 153:25
**caller** 153:15 153:17,25
**calling** 12:22 25:5,9,25 27:17 28:9,12 31:15 49:7 57:7 58:19 60:3 62:17,24 64:2 73:10 83:23 84:25 85:3 87:20 88:14 108:15
**calls** 12:20,24 13:24 14:14,22 15:4 18:15,23 22:14,21 23:15 23:23 26:16 28:20 29:3,10 29:13,18,19 30:4,7,11,12,15 30:16 31:2 32:3 40:20 54:24 55:10,22 56:3,4,22 58:9 59:8,12 60:7 60:12,17,21 66:24 67:5,17 67:22 75:5 76:22 77:21 82:11,21 98:4 107:18,22 115:16 152:11 152:12,17,21 152:25 153:9 153:22,23
**calm** 26:19

**calmed** 125:23
**cambria** 3:12 120:13
**care** 4:25 5:3 8:16 32:18 90:6,16 112:19 114:12 121:10 122:15
**carefully** 108:19
**caring** 8:22
**case** 16:3,12,13 52:16,18 71:25 89:22 96:17 99:21,23 104:11,13,13 104:14,16,20 108:8 109:3,9 109:10,12,16 109:19,23 113:11 115:2 144:9 159:3
**cases** 56:10 115:4
**catch** 26:12
**cents** 131:4
**certain** 38:4 58:13 117:7
**certainly** 65:4
**certification** 158:2
**certify** 158:5,16
**challenging** 33:18
**change** 101:13 159:5
**changed** 76:19
**check** 89:23 97:21 106:7 139:24
**checking** 148:22
**choice** 56:11
**circumstances** 32:2 97:4
**city** 2:9
**civil** 1:10
**claim** 113:10 125:15
**claims** 140:8,22 150:7
**clarify** 66:19
**clarity** 120:4
**class** 102:13 105:14 108:22 108:23 109:2,3 109:18
**clause** 47:17
**cleaner** 103:21
**clear** 7:24 20:19,24 85:5 98:6 125:12 126:12 129:10 151:3,8
**client** 141:3
**clients** 141:5
**close** 39:17 143:6
**clothes** 121:14
**coach** 71:18
**colloquy** 24:7
**come** 31:20 33:2 34:4,5 40:13 41:10 43:7,14 44:3 56:22 78:8 91:8 101:16 102:19 104:19 116:21 153:16 153:17
**coming** 21:22 62:23 85:25 146:14
**commencem...** 158:10
**commission** 159:24
**communicati...** 125:8
**company** 8:25 10:17,19 33:3 33:6,25 35:2 60:19 69:5 92:13 103:17 109:5 148:15 148:24
**compared** 120:7
**complain** 39:4 103:22
**complained** 25:2 107:23 124:10,18 142:16
**complaint** 24:25 25:4 102:3,4 123:9 126:2,8,20 127:4,12,16,24 128:4,9,12,16 132:20 141:23 142:17
**completed** 119:17
**completely** 7:14 138:8
**compound** 144:20
**concerned** 32:16
**conditions** 90:18
**confer** 90:2,22 91:8 92:3 113:17 122:5 124:15
**confidential** 65:6
**confirmed** 50:3 50:17 51:10 125:3 126:10 135:23
**confirming** 64:13
**connected** 124:16,24 126:5,11 127:9

**connection** 3:18 12:9 13:7 33:13 98:9 100:4 125:2,4 125:7 144:9
**contact** 66:3,5 89:12
**contain** 119:17
**container** 37:17
**context** 10:11
**continued** 154:17 157:2,3
**controller** 16:4 52:17,18 108:8
**controversy** 158:20
**conversation** 11:18,24 12:17 12:18 34:22 45:23 49:8 54:13 59:24 135:24
**conversations** 45:20 78:15,18
**cook** 121:12
**cooking** 121:12
**coordinator** 39:2
**copy** 143:17
**correct** 14:4 27:3,23 28:13 29:3,14,21 36:3 38:8 41:14 45:16 49:3 51:3,21 54:19 57:22 59:6,7 60:16 61:2 64:3 67:7 68:9,17 69:8 73:17 81:16 105:3,14,24 108:15,24 111:3 112:7 123:7 124:12 141:13 143:11
**corrective** 135:11,15 156:25
**counsel** 158:21
**counting** 46:10
**couple** 112:21 116:19
**course** 97:9 103:10
**court** 1:2 3:19 32:17 111:10 111:14,20
**cr** 110:7 111:5 112:16 115:8 121:8 128:10 151:14,17
**crazy** 146:23
**cross** 110:25 112:11
**current** 3:11
**currently** 4:20 9:4
**cut** 96:3
**cv** 1:10
**c**[patient name] 103:3

**d**

**d** 1:7 156:4 157:2
**daly** 99:3,13
**date** 6:21,25 7:11 15:20 18:17 44:5,6 71:2,9 72:16 72:16 74:18,20 78:7 81:22 83:11,13,19 119:6 120:11 159:4
**dated** 6:17,19
**dates** 6:11,24 43:24 92:18 119:4
**day** 10:25 11:22 12:4,5 36:13 74:13,15 76:18 80:23,25 101:17 136:3 155:9 158:23 159:21
**days** 94:21,25 95:4,6,9,17,24 95:24 96:2,4,4 101:13,14,14 101:15,20 106:5 121:20 132:6,7
**dealing** 63:23 63:24
**debating** 48:16
**december** 72:9 72:12 73:5 74:11 81:21,25
**decide** 69:5
**decided** 58:12 61:15 68:16 69:7,10
**declaration** 10:24 11:3 12:8 13:6,11 14:22 16:21,24 17:2,6 20:4 23:14,21 24:17 24:24 27:2,7 27:23 28:2,20 28:24 40:23 41:3,17,21 42:3,5 43:2,3,9 43:18 44:13 45:3,6,16,22,24 46:15 47:12,21 47:25 48:5 49:22 51:7 60:22 61:20,22 82:24 83:8,25 88:9 90:8 98:9 98:20 144:8,10 145:2,7,8,16 147:12 156:13 157:6
**declarations** 20:8 21:7 86:10 87:7,8 90:7

**declare** 145:10
**deep** 60:19
**defend** 59:13 59:16,19
**defendant's** 5:24 13:12 118:4 123:20 133:2 135:16 145:17 156:9 157:4
**defendants** 1:9 1:18 2:8
**defending** 59:9
**definitely** 74:19
**definition** 10:10
**deformed** 37:13
**deleted** 21:18 25:18,19 46:25 87:13
**department** 1:4 2:3 3:20 4:6 11:15 13:9 24:20,23 25:2 40:17 41:7,20 42:14 64:11,16 64:23 65:23 66:3,6 70:9,14 70:19 71:6,14 71:22 72:6 73:6,22 75:5 76:21 78:15,19 80:10 82:9,17 82:22 83:22 86:4 87:19,22 97:22 98:7,13 99:3,20 100:4 100:9,13,19 106:10,16,17 107:3,10,14 114:25 115:16 116:4,8 123:4 124:10,19 125:8,23 126:20 127:3 127:24 128:9 128:16 141:23 142:7,12,17 143:3
**deposition** 1:17 4:8 66:8,25 70:6,10,14,20 71:15,23 72:7 72:20,22 73:3 73:7,17,24 74:10 75:11,16 75:19 76:2,17 77:4,10 78:16 78:20 81:3,7 82:5,22 83:7 90:25 98:16,21 114:5 116:25 122:6 125:13 150:15 159:4
**description** 156:9 157:4
**deserve** 93:4
**details** 89:15 145:7
**different** 12:24 34:11 35:21 119:25 120:6 149:15
**directly** 158:19
**director** 135:25
**disciplinary** 128:25 129:16
**disclose** 63:22
**disclosed** 63:10
**discovery** 8:5 96:21
**discuss** 31:25
**discussion** 152:10
**dissatisfaction** 32:13
**district** 1:2,2 3:20
**doctor** 38:21,25
**doctor's** 38:22
**document** 5:22 6:3 13:10,17 17:10,10 25:12 25:24 26:2,3 27:10,13 47:16 64:5,6,7 75:25 118:2,8,9,19 123:17,18 130:18,21 132:24,25 135:10,13,19 136:21,25 137:3,7,8,10 144:2 145:15 145:19,22 156:10,12,15 156:18,21,22 157:5
**documented** 130:10 136:3
**documents** 17:11 25:14 107:9 116:2 118:21 120:9
**docusign** 42:4
**doing** 20:23 38:15 80:16 108:10
**dol** 11:13,14 159:3
**dol.gov** 2:6
**dollars** 131:3
**dolphins** 39:21
**double** 118:12
**drafted** 27:22
**duly** 3:3 158:9

**e**

**e** 2:2,2 3:2,2 21:14,15 22:2 42:8 110:18,19 114:2 156:4,8 157:2,3
**earlier** 66:8 149:9
**earnings** 123:19 156:19
**eastern** 1:2 3:19

**education** 141:24 142:7 142:12,18
**e**[patient name] 34:14 35:24 36:9 38:23 92:16 113:25 118:24 145:16 146:5,9 151:15 157:7
**either** 9:11 85:20
**employ** 121:7 158:21
**employed** 4:20 4:24 5:11 9:3 31:10 154:2
**employee** 22:25 135:11,14 138:25 139:6 156:24
**employee's** 124:4 137:14
**employer** 95:22
**employment** 6:11,16 9:12 9:24 10:11 84:11 97:5,9
**entertain** 55:2
**entire** 95:6 98:5
**entitled** 5:22 6:3 13:10 105:23 118:2 123:18 135:10 135:13 145:15 156:10,12,15 156:18,22 157:5
**equal** 132:15
**erase** 17:11 18:4,18 19:22 20:2 21:23 29:15,17 48:13
**erased** 18:2
**eric** 2:15
**errata** 159:2
**esq** 2:6,10
**eugene** 1:4
**everybody** 135:4
**exactly** 20:22 77:7 146:15
**examination** 3:7
**examined** 3:5 156:5
**except** 118:12
**exhibit** 5:21,24 6:2 13:6,12 14:4,6 15:3 17:5 22:8 27:11 90:13 117:25 118:5,7 118:8 123:16 123:20 133:2 135:9,16 145:17 156:10 156:12,15,18 156:21,22 157:5
**experience** 56:5 62:10 91:21 127:22 128:14
**experienced** 80:3
**expires** 159:24
**explain** 9:18 37:12 38:14 79:5 82:15 129:19 131:21 131:24 133:15 133:25 134:5,6 139:2 146:11 146:13 153:10
**explained** 26:6 46:16 129:22 151:20
**explaining** 62:21
**explore** 150:13
**express** 32:8,12
**extent** 98:3
**extra** 102:6 129:14 131:19 132:11

**f**

**f** 3:2
**facility** 116:17
**fact** 111:13 123:4
**facts** 90:19 96:18,22
**fairly** 92:17,18 92:20
**false** 33:2 93:13 101:4,8 105:11 105:23 130:21 136:5
**falsely** 133:24 134:2
**falsified** 35:17
**falsifying** 32:19 32:25
**familiar** 53:6
**family** 39:17
**fans** 39:18
**far** 18:19 37:15 103:11 142:2
**faxed** 42:8
**february** 1:12 7:18,18 158:23 159:4
**federal** 3:19 32:17 106:17
**feel** 9:22 10:6 10:14,16 61:18 93:15 108:3 122:7 126:13
**felt** 105:22 116:9 151:23
**fifteen** 118:9
**figure** 98:14
**file** 102:13,17 110:21
**filed** 105:14 111:2,10,13,20 112:6
**fill** 17:25

**filled** 118:14
**find** 6:21
**fine** 4:16 142:10
**finish** 6:19 33:14 38:18 45:11,13
**finished** 11:5
**fire** 93:4,10 94:2 133:19,20 134:5 148:11 148:12,15,17 150:3,24 153:5
**fired** 9:11,13 18:9,12 19:16 32:18 33:16,23 34:24,25 35:3 35:13,14 93:4 100:14,16,20 100:25 101:3,7 101:24 129:17 134:2 137:11
**firing** 33:19 133:24 147:25 148:9
**first** 3:3 14:12 15:17,18,22,23 17:5,10 22:8 26:11,22 31:8 32:7 34:13 39:3 49:2 52:17,17,19 54:18,23 56:3 56:4,22 57:5 58:9 59:8,12 60:4,7,12,17,21 67:12,12,17 68:3,10,24 69:12 71:5 72:4 73:4,5 74:3,23,25 75:2 78:2,4,24 80:20 83:5,9 83:11,21 89:2 89:14 100:12 100:18 102:15 103:2 104:25 105:9,11,21,25 106:12 107:5 107:14 109:23 109:23 114:20 114:23,24 116:7 119:2 120:6,7 126:18 126:20 127:4 127:12,16,23 128:4,8 136:24
**five** 5:13,15 13:20,22 28:5 46:6,9,12,19 50:12 96:3 131:3 148:19
**flat** 101:18
**fleshed** 126:4
**floor** 103:20
**follow** 104:22
**following** 74:8
**follows** 3:6
**football** 39:18
**force** 25:13
**forcing** 25:12
**form** 12:15 14:7 15:5,16 16:22 17:23,25 19:6,17,23 20:10 21:8,21 22:15 23:16,24 27:4,15 28:22 30:10 32:15,20 37:22 40:18 41:18 42:12,24 43:6,13,21 44:15 45:17 46:3 47:4,10 47:13,23 48:3 48:7 54:2,8 55:24 57:15,23 58:8,16 59:11 59:15,22 60:15 60:23 61:2,6,8 61:12,21 62:2 62:4,12,18,19 66:13 67:4,24 71:7,17,20 72:13,25 73:8 73:18 74:4,12 74:19,21 75:7 75:12 76:4 77:24 78:12 79:2,14,22 80:5,15,22 81:5,17 82:6 82:12,19 84:2 84:19,23 85:6 85:7,10,12,15 86:7 87:10,11 93:7,21 94:9 95:2,12 96:14 97:13 98:12 99:24 100:7,21 101:5,21 105:18 108:5 108:13,16 111:11,16,21 112:18,25 114:9,16 115:5 121:3,18,25 122:10,22 123:11 124:13 127:7,20 128:17,22 129:2,6,16,18 129:19,23,24 130:2,6,13,22 130:24 131:16 132:22 134:19 135:2,12,15 136:11,16 139:23 140:25 141:8,14,21,25 142:8,25 144:17 148:2 148:10 149:12 149:20 151:5,9 152:18 153:4 156:25
**formal** 141:22
**former** 22:25 62:17 87:20,21

**forms** 19:20 21:12 48:5 61:11 85:18 86:2,4,16 87:4 87:7,17
**forty** 94:22 101:25
**found** 127:11
**foundation** 91:4,6,14 113:15 124:23
**four** 96:3 148:18
**fourteen** 56:16 56:17 132:6
**frame** 54:21
**fran** 2:10 3:15 89:25 98:3 113:16 116:23 122:4 124:15 126:3 151:18
**fran.rudich** 2:11
**fraud** 19:5,16
**free** 143:16
**friend** 154:14
**friends** 39:17
**front** 17:5
**full** 3:9
**fully** 41:5
**further** 152:6 158:16
**future** 9:23

**g**

**g** 3:2
**garden** 2:9
**gear** 113:8
**gentleman** 73:10 88:13 99:17 128:5
**getting** 18:22 26:20 68:22 88:11 96:16 103:15,17 106:13
**give** 16:6 38:11 38:12 65:10 81:18 88:20 113:8 117:13 134:23 143:6 146:3 148:16
**given** 90:4
**giving** 48:8,14
**go** 15:17 17:13 26:19 36:11,21 37:10,14 41:23 48:15 64:6 65:2,17 66:15 72:3 77:6 88:4 88:4 92:9 96:8 102:11 109:12 117:8 135:4,4 144:18
**goes** 90:5,6 140:21
**going** 3:16 5:20 6:18 12:14 13:4,5 14:9 16:16 17:9 19:12 20:16 22:7 27:19 28:4 30:17,18 30:19 49:21 54:14 55:4 60:23 61:7 63:14,22 64:17 65:4,13 66:19 73:24 75:23 77:13,13,18 78:5,8,10,25 79:18 80:2,12 80:20 81:2,15 81:19,25 82:23 83:6,23 89:14 90:3,17 91:2 92:23 102:15 104:12 107:8 114:17 116:23 117:16,24 122:2,4 123:15 126:17 127:6 134:17 140:7 146:8 148:5 150:6,13 151:18 152:3
**good** 3:14 103:24 116:18 148:23
**government** 64:19
**grant** 1:17 3:10 3:14 4:1 5:1 6:1,7 7:1,4 8:1 9:1 10:1 11:1 12:1 13:1,11 13:18 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1,10 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1,15 64:1,18 65:1,3 65:21 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 96:15 97:1 98:1 99:1 100:1 101:1

102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1,3 117:1 118:1 119:1 120:1,2,12 121:1 122:1 123:1 124:1 125:1,19 126:1 127:1 128:1 129:1 130:1 131:1 132:1,24 133:1 134:1 135:1 136:1 137:1 138:1,18 138:20 139:1 140:1 141:1 142:1 143:1,9 143:17 144:1,7 145:1,20,25 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:6,14 159:4
**grant's** 90:10
**great** 124:3
**guys** 16:2 34:13 104:15 110:24 112:10

**h**

**h** 156:8 157:3
**half** 5:6,9
**hand** 37:12,14 158:23
**handwriting** 137:4,12,19,22 137:23,23
**hang** 55:2 89:15
**happened** 43:2 46:18 77:7 128:12 146:12 146:15
**happens** 62:25
**harass** 25:21
**harassed** 25:8 25:11
**harassment** 25:6 27:2,6,13
**hard** 148:16
**harmed** 131:5
**head** 17:18 54:21 55:7,8 98:19,24
**heading** 118:10
**health** 8:16 142:8 143:3
**healthcare** 89:17,21 153:24
**hear** 3:22 92:3 103:25 127:2
**hearing** 78:6,9
**heights** 3:13 120:14
**held** 1:19 152:10 158:7
**help** 7:23 37:6 37:7 38:2,16 136:9 145:11 145:14
**helped** 37:4 136:23 147:16 147:17,18
**hereunto** 158:22
**highlight** 75:23 81:19
**highlighted** 76:7
**highlighting** 76:2
**history** 5:23 6:4 8:15 156:11
**hock** 1:21 158:4
**hold** 59:24 96:15
**hollis** 2:6 7:7 42:17 43:7,19 44:3 45:2,14 45:21 46:2,14 64:8 65:16 71:19 77:2 113:15 144:7 145:6 146:3
**home** 1:7,19 3:16 4:25 5:3 6:10 8:15 32:18 42:21 44:20 89:16,20 118:3,10 135:10,14 142:7 153:24 156:16,23
**honestly** 147:8
**hour** 101:8 102:6 134:3 138:5
**hours** 16:6 17:19 34:10,11 35:7,25 38:3 61:4 94:22 101:10,18 102:2,10,12 129:14 131:19 132:5,11,15 133:21 134:7 134:25 139:17 140:9,10
**house** 43:7,11 43:20 44:4 45:22 46:2 103:20
**huh** 5:16 49:15 50:8 77:11 111:9 119:15 123:6 128:11
**hurt** 9:23
**husband** 103:2 103:19 121:9

121:11

**i**

**idea** 30:22
**identification** 5:25 13:13 118:5 123:21 133:3 135:17 145:18
**identified** 88:19 154:12
**identify** 63:15 120:10
**identity** 65:6 65:25
**illness** 147:10
**illnesses** 147:7
**important** 48:12 61:11 69:8
**incident** 131:8 131:10,12,13 137:6 138:24
**include** 24:14
**includes** 96:24
**indicate** 6:24 120:24 132:3 136:21
**indicated** 117:22 130:19 132:9
**indicates** 9:10 15:3 22:13
**indicating** 137:12,20,24 138:12 139:4
**indirectly** 158:19
**individually** 1:8
**informant** 64:15,19,21
**informant's** 63:6 65:5,24
**informants** 65:7
**information** 91:16,19 98:4
**initials** 103:8
**injunction** 91:18 96:19,23 124:17,25 125:14 127:10
**instructing** 90:20 91:10
**interested** 16:10 17:21,22 18:5 60:2 158:19
**interfere** 146:21 147:2,7
**interrupt** 20:20 102:22
**introduce** 13:5 52:25 53:12 69:3 135:8
**introduced** 51:24 52:23 53:24 55:13,18 68:8
**investigation** 5:23 6:4 8:15 135:22 156:11
**irene** 1:8 2:14
**issue** 126:6 133:18,22

**j**

**j** 3:2 4:1 5:1 6:1 7:1,4 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1,18,20 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:6
**james** 99:3,12

**january** 71:12 71:13,16,23 81:21,21 82:2
**jefferson** 102:25 106:2
**jenkins** 12:12 14:19 28:11 31:3,5,12,14,18 32:4 39:20,25 48:24 51:24 53:9,24 54:5 54:24 56:5 58:12 59:25 61:23 67:6 72:21 76:23 85:14,17 86:22 88:17,20,24 108:4,7 152:12 153:19 154:7 154:15
**jennifer** 1:17 3:10 13:11 132:24 156:13 159:4
**jennifer's** 135:23
**job** 9:6,7,8 19:4 19:15 22:4 27:20 38:15 104:7 116:18 116:22 117:13 148:16
**jobs** 148:19
**joseph** 2:8
**judge** 63:18,20 64:21 90:4,24 91:5,23 96:20 98:5 114:5,18 125:12
**jump** 108:21
**justice** 105:5,7 149:19,22 150:9,11,16,21 150:23,24 151:2

**k**

**kalida** 2:8
**karina** 40:4,8 40:16,25 41:12
**karine** 34:3 40:14
**karlina** 40:4
**keep** 18:10,18 25:25 34:21 74:7 106:8
**key** 40:20
**kind** 46:22 47:8
**knew** 28:12 49:6 57:13 68:7 73:15,19 86:19 95:18 126:24
**know** 3:23,25 9:14,25 10:22 18:15 22:5 23:3 26:4,13 28:14 29:7,15 30:9,13,13,17 30:20 31:7,11 31:14,22 34:9 34:12,24 35:22 39:3,20 40:16 44:2,25 53:3 53:13 54:20,20 54:22 55:5 60:20,25 62:5 62:9 64:23 67:13,13 69:4 72:9 75:9 78:9 79:9,12,17 80:16,18 81:7 81:14,18 82:4 87:3,4,6,16 88:25 89:8,11 93:9 94:17,20 94:22 97:18,21 99:15 102:19 104:16 106:7 108:7,9,14 109:13,23 110:8 115:7,12 115:18 118:25 120:8 126:19 126:25 127:7 127:11,13,17 127:18,21,25 128:3,18,20,24 129:8 133:11 135:3 136:18 139:14 142:14 142:19,24 143:4 146:14 146:15 148:23 150:14 153:12
**kristi** 2:14

**l**

**l** 110:18,18,19
**labor** 1:4,4 2:3 3:20 4:7 11:15 13:9 16:6 24:19,20,23 25:3 27:16 40:17 41:8,20 42:14 64:11,16 64:23 65:23 66:3,6 70:9,15 70:19 71:6,15 71:22,24 72:7 73:6,22 75:3,5 75:17 76:21 78:16,19 80:10 82:10,17,22 83:18,22 84:13 86:4 87:19,22 97:22 98:7,13 99:4,20 100:4 100:9,13,19 104:22 106:3 106:10,16,17 106:18,19,20 106:21,23 107:3,10,14 109:22 110:24 112:9 114:25 115:17,21,22 116:4,8 123:4 124:10,19 125:9,24 126:21 127:3

127:24 128:10 128:16
**laborlawfirm....** 2:11
**lady** 11:4,10,14 33:24 39:2 40:12 41:4,10 44:24 99:14,18 101:7 102:8,11 104:5 121:19 121:21 134:5 135:7
**laid** 40:20
**language** 119:18 120:6
**law** 2:8
**lawsuit** 3:18 12:9 13:8 97:24 98:5,10 99:10 100:5 102:17 105:14 105:15 110:2 110:21,24 111:3,7,23 112:6,13,22 125:11 149:11 149:14 151:4
**laying** 91:13
**learn** 62:16,20
**leave** 104:12,21 152:4
**leaving** 5:11
**left** 6:16
**legal** 143:25
**legible** 7:15
**lie** 62:8 72:15 111:18 136:14
**lied** 136:12,18
**limit** 10:13 36:11
**limited** 90:24
**line** 28:8 116:17 157:10 159:5
**lineman** 39:21
**lines** 56:15
**list** 29:18 30:4 30:8,12
**listed** 9:21
**listen** 26:18 60:9 89:13 108:18,20
**listening** 31:7
**little** 21:2 55:3 89:13
**live** 38:15,17 62:18 64:3
**living** 23:5 95:4
**liz** 39:3,3 104:5 104:8,10 117:12
**llc** 159:2
**long** 5:4 14:10 49:11 54:23,25 71:5 89:16,18 89:18 107:16 119:10 131:2 148:20,21
**longer** 104:20
**look** 25:19 51:17,18 74:19 86:13 87:14 116:21
**looked** 21:21 21:24
**looking** 139:16 149:10,11,18 149:25 150:9 150:11 151:3
**lost** 104:25
**lot** 19:11 46:16 79:15 113:6
**lying** 37:21 121:2 136:8,19 136:22,25

**m**

**m** 110:18,19
**ma'am** 4:19,23 5:16 21:9 54:12 55:12 68:5
**machine** 121:14
**made** 106:25 107:2 126:8,19 127:12 128:9 137:17,18 138:2 139:8,12 142:15,16,21
**mail** 21:14,15 22:2
**mailed** 42:8
**make** 24:25 29:5 47:6 58:5 73:12 74:14,15 74:23 78:8 103:24 124:11 125:25 126:12 131:7 138:3 139:9,14 141:22
**makes** 43:17
**making** 99:25 127:15,23 128:4,15
**male** 99:20
**man** 15:25 17:8 25:6,8 27:17 60:20 62:24,25 63:2 66:11 84:25 85:2,15 89:12 100:3
**man's** 67:21
**management** 89:22
**manager** 34:2 104:13
**manolias** 1:8 2:14,14 143:25
**mark** 117:24 123:15
**marked** 5:20 5:24 13:5,12 118:4 123:20 133:2 135:15 145:17

**marriage** 158:18
**matter** 38:16 70:12 92:4 158:20
**mean** 9:19 25:16 34:25 76:9 82:14 86:22 92:7,11 92:14 93:2,3 122:11 128:24 149:22 150:10 150:21,22,22 150:25 153:7
**meaning** 84:21
**meant** 79:13
**medical** 32:19 38:7,12 143:23
**medication** 37:13,17 38:6 38:13,23 146:19,24 147:4
**medications** 37:5,21 146:17 146:20,25
**meet** 34:16 42:16,19,21
**members** 39:16
**mention** 14:21 14:23 23:14 26:25 27:6,12 34:13 88:10 98:14 103:6,7 103:8
**mentioned** 15:9 23:7 121:24
**met** 43:19
**metro** 30:2,3,12
**miami** 39:21
**michael** 110:14 110:16
**middle** 38:13 38:24 50:21 51:23 52:2 68:8 147:18
**mind** 62:6
**mine** 120:8
**minimum** 106:6
**minute** 13:15 96:9
**minutes** 46:23 49:13,14,17,19 50:7,12,12,12 51:2,13,20 52:23 53:9,24 54:6 68:16,25 69:6,11 108:11 143:7
**mistake** 137:17 138:2,3 139:8 139:9,15
**money** 16:8 96:11 97:10,21 97:23 98:8 105:3,4,12,17 105:24 111:24 111:25 112:2,4 112:7,12,15 114:15 116:9 120:18 123:10 124:11 129:5 129:11 130:4 132:17,18 133:18,22 139:18,22 140:5,14,23 141:6,12 149:10
**monitors** 142:7
**month** 16:7 18:22,23,24,25 44:7,9,10,11,14 67:20,20,23 71:10,11 72:8 72:15 83:14 148:25 149:4
**months** 16:8 27:20 96:3 121:21
**morning** 3:14 71:2,4 77:2,4 77:17 104:18 144:14 145:2
**motion** 38:3 91:18 96:19 124:25 125:14 127:10
**multipage** 118:7
**mutual** 121:17 122:8,12

**n**

**n** 2:2 3:2,2,2 156:4 157:2
**name** 3:9,15 8:25 11:9,11 12:13 23:4 31:5,6,7 34:2,3 39:3,24 40:14 40:14 41:5,12 41:13,15,17 44:25 50:3,18 51:10 52:4,13 52:14 53:5,6 53:10,13 62:25 63:2,22 68:2,3 68:10 85:14 86:2 88:13,19 88:21,24 89:9 92:22 103:2 104:9,10 110:14,15 114:24 115:12 118:23 128:6 131:5 151:4,8 154:3,4 159:3 159:4
**named** 31:11 40:4,8,25 99:3 109:2,18 154:14
**names** 103:6,8 103:10
**narrow** 90:4
**narrower** 150:20

**nature** 25:3
**need** 4:15 25:23 57:19 58:2 61:16 89:25 107:25 115:18 143:22 150:5
**needed** 123:10
**negative** 9:17
**neither** 138:11
**never** 21:21,24 26:3 34:14 35:22 54:25 55:2,13 84:13 85:5,10,20,23 86:9,15 88:3 93:19 95:10 99:12 100:3 101:9 109:15 109:17 130:17 132:17,17 133:11 137:25 139:7 142:15 142:21 145:4 152:15,16
**new** 1:2,20,22 2:5,5,9 3:5,13 3:20 67:13 76:12,13,14 77:22 78:11 106:15 120:14 141:23 158:5 159:2
**nice** 86:25
**night** 38:5,13 38:17,24 39:5 39:13 103:24 117:2,5,8 132:12 135:6 136:23 145:13 147:19
**njc** 1:10
**notary** 1:21 3:4 158:4 159:23
**note** 84:24 86:7
**noted** 155:5
**notes** 115:15 143:7
**notice** 1:18
**noting** 8:13
**november** 4:18 23:8 72:9,12 73:5 74:10 133:7
**number** 8:23 13:20,22 23:11 29:23 31:18,20 46:19 49:23 98:23,25 120:4 123:23 124:7
**numbered** 7:23 119:20
**numbers** 119:23
**nurse** 89:22
**nursing** 1:8,19 3:16 6:10 118:3,10 135:10,14,25 156:16,23

**o**

**oath** 13:24 17:7 18:7 25:8 37:19 50:6
**object** 20:18 63:6 90:2
**objecting** 33:18
**objection** 14:7 15:5,16 16:22 19:6,17 20:9 21:8 22:15 23:16,24 24:2 27:4,14 28:22 30:10 32:15,20 37:22 40:18 41:18 42:12,24 43:6,13,21,23 44:15 45:17 46:3 47:2,4,10 47:13,15,23 48:3,7 54:2,8 55:24 57:15,23 58:8,16 59:11 59:15,22 60:15 61:12,21 62:4 62:12,19 63:5 66:13,15 67:4 67:24 71:7,17 71:20 72:13,25 73:8,18 74:4 74:12 75:7,12 76:4 77:24 78:12 79:14,22 80:5,15,22 81:5,17 82:6 82:12,19 84:2 84:19,23 85:7 85:12 87:10 93:7,21 94:8 95:2,12 96:13 96:14 97:13 98:2,12 99:24 100:7,21 101:5 101:21 105:8 105:18 108:5 108:13,16 111:11,16,21 112:14,18,25 113:2,12,24 114:9,16,17 115:5 121:3,18 121:25 122:10 122:22 123:11 124:13 126:22 127:5,6,20 128:17,22 129:6 130:2,6 130:13,22,24 131:16 132:22 134:19 135:2 136:11,16 139:23 140:6 140:16,25 141:8,14,21,25 142:25 144:17 148:2,10 149:12,20 151:5,9 152:5 152:18 153:4

**observe** 108:20
**obtain** 112:7
**occur** 73:24 76:11 81:13,15 82:5
**occurred** 18:16
**occurrence** 107:4
**offer** 22:4 27:18
**offered** 19:15
**offering** 19:4
**office** 34:4,5,6
**offices** 1:19 2:8
**oh** 68:3
**okay** 4:3,12
**once** 21:22 25:16 46:5,7 83:3
**opening** 21:25
**opportunity** 32:12 143:11
**opposed** 96:17
**order** 38:12 64:21 120:3 143:15,18 144:4
**ordering** 143:12
**orders** 38:7,22
**originally** 81:24
**outside** 121:4 122:2 123:13 142:2
**overtime** 36:2 91:21 93:16,17 93:18,20 94:4 94:6,11,13,14 94:15,16,18,23 94:24 95:10,19 96:12 97:2 101:16 108:24 109:4 110:3,10 111:24 113:11 113:22 114:7 114:11 116:11 116:13,15 120:16 121:23 130:5,23 133:6 133:21 134:17 139:19,25 149:25
**owe** 129:11,15 139:21 140:4 140:14,23 141:6,12
**owed** 94:6 113:10,21 116:9 129:4
**owes** 96:12 97:11
**own** 64:7 88:5

**p**

**p** 2:2,2
**p.m.** 155:5
**packet** 120:7
**page** 6:3,8,12 7:4,8,12,13,19 7:20,24 8:14 9:2 23:22 28:5 28:5 56:12 118:9 119:18 119:23,24 120:2,6,8 123:16 132:23 132:25 135:9 135:18 154:17 156:5,9,21 157:4,10 159:5
**pages** 7:22 8:19 9:10,15,22 10:4 17:5 22:8
**paid** 101:19 103:15,17,22 106:4,13 112:21 133:8 133:17 134:17 139:19,20 140:10,11
**pandemic** 113:8
**paper** 11:7,23 12:3 18:14 22:17 27:18 33:15 36:3,8 40:13,21 41:11 42:6 50:11 64:5 70:16 74:22 76:5,6 131:18 133:12 138:9
**papers** 33:12
**paperwork** 34:23
**paragraph** 23:10 49:22 135:21
**parameter** 122:3 140:17 150:15
**parameters** 114:4,18 116:24 121:5 142:2
**pardon** 145:21
**part** 16:2 26:11 52:4 89:14 137:6 150:17
**parties** 158:17
**parts** 52:5
**pass** 49:9 102:11
**patchogue** 1:20
**patient** 36:22 36:25 37:4,10 38:8,12,16,19 94:12 96:6 97:6,11 100:10 102:21,24 103:4 107:7 109:23 110:7 111:5 118:23 119:5,17 122:9 122:12 133:9 135:24 150:4 151:12,13
**patient's** 92:22 144:3

**patients** 89:21 89:23 110:8 121:17 125:9 125:24 149:15 149:24,24
**paula** 135:24
**pause** 20:17 21:2
**pay** 17:19 93:20,24,25 94:3 113:6 114:12,13 129:14 139:18 139:25 140:2 149:25 150:3,5
**pc** 30:2,3
**pending** 3:18 58:10 149:21
**people** 107:24 114:8 116:10 116:12 120:25 122:13,21 123:5 124:20
**period** 96:21
**person** 14:17 17:16 19:9,12 19:14 22:3 23:2 31:4,8 34:16,18 35:13 40:25 41:23 42:3,11,13 63:12,16 64:9 64:24 65:3,14 65:20 66:2 68:7 88:7 103:18 113:5 114:13,24 115:13 122:16
**person's** 63:22
**persons** 103:14 106:13 115:7
**pertaining** 61:3 99:9,10
**pfitsch** 2:6 6:18 6:23 7:8,14,21 8:6,9,17,21 14:7 15:5,16 16:22 19:6,17 20:9,12,16,22 21:8 22:15 23:16,24 24:3 24:6,10 27:4 27:14 28:22 30:10 32:15,20 37:22 40:18 41:18 42:12,24 43:6,13,21,24 44:15 45:17 46:3 47:2,4,10 47:13,16,23 48:3,7 54:2,8 55:24 56:14 57:15,23 58:8 58:16 59:11,15 59:22 60:15 61:12,21 62:4 62:12,19 63:5 63:11,14,19 64:12,17,25 65:10,17,20 66:13,17 67:4 67:24 71:7,17 71:20 72:13,25 73:8,18 74:4 74:12 75:7,12 76:4 77:24 78:12 79:14,22 80:5,15,22 81:5,17 82:6 82:12,19 84:2 84:19,23 85:7 85:12 87:10 89:25 90:8,10 90:12,15,22 91:7,12,15,22 91:25 92:7,24 93:7,21 94:8 95:2,12 96:13 97:3,13 98:2 98:12 99:24 100:7,21 101:5 101:21 103:9 105:8,18 107:11 108:5 108:13,16 111:11,16,21 112:14,18,25 113:12,16,24 114:3,9,16 115:5 116:5,23 119:19,23,25 121:3,18,25 122:10,22 123:11,22 124:3,6,13,21 125:18 126:3,9 126:15,22 127:5,20 128:17,22 129:6 130:2,6 130:13,22,24 131:16 132:22 134:19 135:2 136:11,16 138:13 139:5 139:23 140:6 140:16,21,25 141:8,14,21,25 142:5,10,25 143:8,14 144:17,21 148:2,10 149:12,20 150:6,12,19 151:5,9,18 152:5,8,18 153:4
**pfitsch.hollis.v** 2:6
**phone** 11:24,24 12:10 17:9,12 17:23 21:11,16 25:15 29:12,19 45:5 46:25 51:20,23 54:10 55:6,22 73:4 82:11,21 115:16 154:5
**phones** 29:9

**phrase** 47:18 84:7
**pick** 54:10
**piece** 15:23 36:3 76:5,6 116:19
**pieces** 116:20
**place** 12:6 158:8
**places** 5:10
**plaintiff** 1:5 2:4 109:14
**please** 3:9 121:22 125:18 145:19,22
**pointing** 138:13 139:5
**police** 131:7
**policy** 6:9
**port** 102:25 106:2
**position** 64:9
**possible** 8:17 64:12 142:9
**potential** 65:6
**prefer** 91:25
**preliminary** 91:17 96:19,23 124:17,24 125:13 127:10
**prepare** 70:5,7 70:9 72:22,24 73:3,16 75:13
**prepared** 72:19
**preparing** 75:11 82:21
**presence** 43:5
**present** 2:12
**press** 40:2
**previous** 33:7 75:5
**private** 31:21 54:18 153:15 153:19,21,23 154:7
**privilege** 63:7 64:15 65:5,24
**probed** 125:6
**problem** 16:12 16:14,15 30:5 34:19 61:7 65:14 113:9 133:19
**proceed** 77:13
**proceeding** 32:17 158:7
**produced** 8:4 8:10
**professionals** 8:23
**proof** 29:4,5
**properly** 34:18
**property** 144:2 144:3
**provide** 125:20
**provided** 90:24 91:17
**provider** 29:25
**public** 1:21 3:4 158:4 159:23
**purpose** 88:6 151:7
**pursuant** 1:18
**pushed** 112:8
**put** 28:19 33:17 34:7,11 35:6 35:10,21 39:10 39:11,13 47:20 47:24 48:4 50:13 65:14 81:20 85:14 92:21 93:5,9 93:22 94:15 95:16 102:5,7 104:6 117:16 117:18 121:13 122:15 129:13 132:12 133:20 134:3,8,9,10,13 134:18,22 140:12 143:8
**putting** 101:24

**q**

**queens** 120:14
**quentin** 2:9
**question** 3:22 3:24 14:8,10 17:3 21:3 23:7 23:18,20 24:4 28:18 47:19 58:10 69:24 78:10 84:4 97:8 98:4 125:17 126:18 128:13 136:7 141:16,20 144:20 148:4 149:21 150:20
**questions** 3:17 43:25 50:22 52:10 77:14,19 78:5 79:2 80:13,21 81:3 82:24 83:7 113:18 114:4 123:13 124:22 146:4,8 152:7 152:9
**quite** 5:12

**r**

**r** 2:2 3:2,2 112:4
**r**[patient name] 103:3
**reach** 54:13
**reached** 53:2
**read** 7:9 8:24 19:24 22:5,23 26:3 62:6 85:23,24 86:18 86:19 87:15 143:16 145:19 145:22
**reading** 70:16
**really** 9:19
**reason** 59:20 60:2 134:23 151:11 159:5

**recall** 12:16,17 15:20 18:17 31:6 40:3 41:5 41:22 44:5 69:12 78:21 79:7 88:22 99:5,7,7,17,19 104:9 115:13 149:13
**recalled** 15:11 28:25
**recalling** 40:6
**receive** 15:18 19:20 30:16 47:5 89:21 97:23 98:8,19 152:12,21,25 153:8
**received** 6:7 9:7 12:20 13:24 14:5,12 14:14,22 15:4 15:13 17:14 19:21 20:8 21:15 22:13,20 23:8,14,23 28:20 29:3,10 29:14,20 30:11 30:14,21 38:7 40:24 46:20,21 46:24 47:8,21 48:5 53:20 54:24 55:10,23 67:2,5,22 86:10 88:8 152:11,16 154:6
**recent** 29:18
**recognize** 67:9 67:11
**recognized** 55:10 67:21
**record** 7:17,22 8:12 14:18,24 14:25 16:2 19:10,12 20:13 20:24 26:22,24 28:17 29:7,13 29:21 30:22 47:6 48:9,11 48:11,16,18,21 48:24 49:9,17 49:18 50:24 51:3 52:5 53:18,18 54:7 54:13,14,16 55:5 56:15,24 56:25 57:10 65:2 67:15 68:16,19,22 69:5,7,10,18,20 69:22,25,25 70:2 73:11,12 74:24 75:9 76:22 83:19 86:14 92:2,9 92:22 96:9 103:7 104:24 110:5 118:7 120:5 121:16 143:9 152:10 158:14
**recorded** 32:9 49:2 53:19 58:7
**recording** 14:11,24 15:12 15:13,24,24 16:19 26:7,9 28:5,6 29:6 49:6,12,18,25 50:5,13,16 51:6,9,11,17,18 51:20 52:7,10 52:11 57:13,20 58:3,5,11,14 73:16 84:25 86:8 100:16 108:12
**records** 32:19 32:25 35:17 120:23 121:2 143:23
**redact** 92:23 103:10
**redacted** 123:24 124:2
**refer** 22:7 28:4 49:21
**reference** 6:6,9 8:24
**references** 9:16
**referred** 40:24
**referring** 23:22 28:7 33:6 56:15 66:20,25
**register** 148:23
**reject** 86:2
**rejecting** 62:23
**relate** 43:25
**related** 60:19 90:19 91:16 96:18,23 98:4 125:11 158:17
**relates** 113:19
**relating** 107:9 107:18 116:3
**relation** 84:10 84:11
**relevant** 91:9 97:7
**remember** 11:11 21:20 44:6,7,24 70:25 71:8 72:8 74:18,18 79:18,20,24,25 83:13,15,16 107:17 109:25 110:4,6,11,14 114:20 115:14 119:6 136:22
**reminder** 37:14
**repeat** 3:23 105:19 108:25
**rephrase** 3:25
**report** 70:11 74:14,16,23 75:3,4 78:4 80:2,24 83:9

84:15 103:24 104:3 106:3,9 106:11,12,24 107:2,6,10,19 117:9,11 131:7 142:11 143:2
**reported** 80:25 83:12 84:16 103:16 104:21 106:22 107:3 107:15 132:19
**reporter** 158:2
**reporting** 159:2
**represent** 4:7 118:22
**representative** 10:24 12:21 50:2,17 51:9 108:23 109:3 109:18
**representatives** 62:17 64:2
**representing** 4:6
**represents** 9:15
**request** 6:9 94:11,13 95:13 95:21 107:9 116:2,14 120:15,18 123:22 130:4 143:9,16 147:8
**requested** 93:16,17 95:10
**requesting** 97:2
**requests** 6:6,15 157:9
**respite** 90:5,16
**respond** 64:18
**response** 138:24 139:6
**rest** 139:14
**retaliate** 20:6 21:5 141:18
**retaliated** 10:7 10:15,21 61:19 61:25 93:11,15 96:25 114:6 122:7,20 126:13 127:15 127:19 128:3 128:21 151:23 151:25
**retaliating** 140:24 147:24 148:8
**retaliation** 10:10 62:11 79:3,6,12,21 80:3,13,21 81:4 82:10,14 82:18 83:24 84:8,9,18,22 85:2 96:24 113:20 124:16 125:3,14 126:5 126:11 127:22 128:15 140:20 141:7,10,11,13 142:4,9
**reversed** 120:10
**review** 121:22 143:7,10
**reviewed** 13:17 22:9 145:24
**reviewing** 13:21 145:23
**right** 4:5,10,13 4:21 8:2 9:25 17:3 18:10 25:18 35:22 42:9 47:24 48:17 49:6 73:21 141:17 142:20 143:14 147:5 149:15
**ringing** 37:16
**room** 113:17
**roosevelt** 2:9
**rudich** 2:10 3:8 3:15 5:18 6:2 6:20 7:6,16 8:2 8:8,14,20,22 10:8 13:4,14 14:9 20:14,20 23:25 24:5,8 24:15 43:22 44:2 47:14 48:21 56:2,17 62:15 63:8,13 63:17 64:8,14 64:20 65:8,12 66:14 71:18 87:5 90:5,9,11 90:14,20 91:3 91:10,13,19,24 92:6,21 96:8 96:22 99:25 107:8 113:14 113:19 114:22 116:2 117:24 118:6 119:21 119:24 120:20 121:6 123:2,15 123:25 124:4 124:18 126:7 126:12,17,23 132:23 135:8 136:6 138:15 140:19 141:9 141:17 142:3,6 143:5,12 144:19 149:8 150:8,16 151:22 152:6 155:2 156:6
**rule** 95:23

**s**

**s** 2:2 110:18,19 156:8 157:3 159:5
**samuel** 110:17 110:20 111:7 112:8 113:4
**sarene** 1:7
**save** 61:11,14 61:16

**saved** 154:3
**saw** 14:10 145:4
**saying** 8:9 17:18 26:14 30:19 50:6,20 53:8,17 59:5 66:10 68:24 92:15 106:22 106:25 108:21 115:3 129:2,4 132:24 138:23
**says** 6:9 7:3,12 7:17,19 8:14 9:2 23:22 46:19 47:7 49:24 100:2 135:22 147:21
**scalia** 1:4
**schedule** 101:13
**scheduled** 81:8 81:9,13,14 82:5,7
**scope** 90:3,23 90:24 113:2 122:5 123:14 124:14
**screen** 31:17 55:21,25
**se** 94:12 95:5 96:6 97:6,12 100:10 102:22 102:23 110:7 112:17 115:10 115:11 117:3,6 118:14 119:5 119:10,13,17 120:17 125:21 129:5,12 130:5 130:23 131:2 132:21 133:13 133:14,16,19 133:23 135:24 136:8,22 139:18,22 140:5 143:22 144:8
**se's** 132:3
**second** 17:13 24:16 31:8 55:3 57:4,6,22 58:25 61:9 63:13 65:18 67:12,13,18 96:15 105:13 107:7 119:24 120:2
**secretary** 1:4
**section** 139:6
**security** 123:23
**see** 6:8,12,14 7:2,3 13:20,22 15:8 19:25 21:22,25 23:10 26:20 28:7 41:2 49:24 54:15 56:12 65:3 72:16 74:20 85:24 90:25 117:23 118:23 124:6 124:22 135:21 136:4,24
**seek** 112:15
**seeking** 91:7 105:3,4,5,7,17 111:24,25 112:2,4,12 114:14
**seen** 8:6 133:4 133:11 135:18
**send** 12:15 16:12,13 17:9 17:11 25:15 26:10 34:13 60:23 61:8 102:21,24 103:3,12
**sending** 25:22
**sense** 43:17 58:6 147:4
**sent** 16:2 17:22 19:19 21:6,10 21:12 61:23 62:2 85:6,11 85:16,18
**sentence** 37:4
**sentences** 37:3
**separate** 6:5 36:2
**serene** 1:7,19 3:16,21 4:17 4:25 5:11 6:6,9 9:13,16,22 10:7,12,13,14 10:19,20,24 11:15,16,20 12:2,8,21,23 14:12 15:4,14 15:19 16:5 17:14 18:7 19:4,11,13,14 20:6 21:5 22:14,21 23:2 23:9,15,23 28:21 30:7 31:11,12,15,24 32:3,13 33:5,8 33:18,21,23 38:10,11 40:5 46:21 47:9,22 48:6 49:7 50:2 50:16 51:9,25 56:6 59:10,14 61:4,5,8,18,24 62:7,11,16 64:2 66:10,21 69:5 71:25 72:5 73:12 78:9 80:4,14 80:17 83:23,24 85:6,11,14 86:2 87:9,20 87:21 88:14,23 89:6,9 92:12 93:2,6,11,19 94:7 96:12 97:11 100:14 100:20 101:3

101:24 102:14 102:18 104:3 104:15,20 105:3,7,12,17 105:22 108:9 109:6,16,19 110:2 111:24 113:7 116:15 117:9,11 118:3 118:10 120:16 121:15,16 122:8,20 126:14,19 127:11,15,23 128:3,7,15 129:3,17 130:10,16 131:5,7,15 132:20 134:23 135:10,14 137:25 139:7 139:21 140:4 140:14,23 141:6,18,22 142:11,16 143:2 147:25 148:8,19 149:7 151:24 152:2 152:13,16,17 152:22,25 153:8,15,24 154:9,13 156:16,23 159:3

**serene's** 6:16 9:11 120:23
**serious** 68:23 68:25 69:2
**services** 1:7
**set** 91:4 158:23
**setting** 91:6 113:14
**seven** 94:21,25 95:3,5,9,17,24 95:24 96:2,4,4 101:13,14,14 101:15,17,19 106:5 121:20
**seventeen** 56:18 132:6
**several** 18:11 52:9 92:17 103:16,22
**shared** 84:14
**sheet** 118:4,11 134:18 156:17 159:2
**short** 55:9 67:7 67:22
**shot** 31:17 55:21,25
**show** 30:8,9 144:25
**showed** 32:10 36:10
**showing** 6:20
**sic** 30:2 34:3 101:12

**sick** 37:11
**sickness** 37:12 37:15
**sided** 118:12
**sign** 10:23 11:2 11:6,23 12:2,8 16:21,23 17:6 17:12 18:14 19:22 20:3 21:7 25:12,13 25:14,16,23,24 25:25 27:18 33:12,14 40:13 40:21 41:11 42:2,4,6,7,10 42:13 44:18 45:15,22 46:22 46:25 47:8 60:22 62:18 83:25 85:8,15 87:8 128:25 129:16,18,21 137:3,9,16 139:13 143:17
**signature** 7:3 118:18 137:13 137:14,15 138:19,21 155:6 158:25
**signatures** 138:14,15
**signed** 44:13,16 85:6,10,20 131:18 137:2,7 138:7,10,22

139:12
**signing** 12:5 20:7 61:6,19 61:25 129:25
**sit** 60:9 108:18
**sitting** 128:2
**six** 96:3
**sleep** 38:3 103:23 132:5
**sleeping** 116:19
**social** 123:23
**somebody** 19:3 99:2,16 109:22
**sorry** 5:2,7 37:10 58:10 63:21 78:24
**sought** 105:12
**sound** 91:9 146:23
**sounds** 90:17 127:9
**space** 148:17
**speak** 24:22 45:25 46:4,17 65:2 70:8,18 77:6,7 99:2 100:8 107:13 110:9,12,13 113:3
**speaking** 65:21 65:22 99:17
**speaks** 47:16
**specifically** 91:23

**spoke** 45:5,14 53:23 64:10,10 64:16 65:16 71:6,14,22,24 72:5,6,10,16 73:6 76:16,19 76:25 79:11,21 82:17 99:12,14 99:15,16 100:3 100:12,19,23 111:7 114:25 115:13 116:7
**spoken** 64:22 125:9
**sponge** 116:19
**st** 1:10
**stamped** 6:12
**start** 15:24 23:3 49:5,9,18 49:25 50:4,13 50:16,24 51:5 51:8,11 52:10 54:16 69:21 76:14
**started** 49:12 50:3 51:2,19 69:23,25 108:12
**starting** 19:25
**starts** 52:11
**state** 1:22 3:4,9 7:16 106:15 118:6 141:23 158:5
**stated** 47:11 137:18
**statement** 46:22 47:8,21 106:24
**statements** 46:24
**states** 1:2,4 2:3 106:16
**stauber** 2:15
**stay** 38:17 122:18
**stenographic...** 158:12
**step** 92:6
**sticking** 147:5
**stop** 23:4 122:17
**stopped** 52:7
**straight** 16:7,8 106:5
**stranded** 104:21
**strange** 19:11
**street** 1:20 2:4 3:12 120:13
**stress** 113:6
**strike** 5:18 10:8 114:22
**stuff** 17:20 23:5 29:4
**subject** 92:4
**submitted** 13:7 13:8 98:9 105:10,22
144:8
**submitting** 93:12 98:20 101:4
**subpoenaed** 30:3
**subscribed** 155:7 159:21
**suffering** 147:6
**suggest** 76:22
**summary** 123:19 156:20
**supervision** 158:13
**supervisor** 40:22
**supposed** 36:11 37:11 38:5 114:11
**sure** 5:8 8:11 8:20 9:20 10:5 12:13 29:22 34:2,3 40:14 40:15,19 41:13 41:15 63:20 72:14 94:10 99:25 111:22 121:15 123:25
**surrounding** 32:2
**s**[patient name] 118:24 145:16 146:4,9 149:25 150:4 151:15 157:6
**sw** 101:12 102:20 115:10
**swear** 37:24
**swore** 37:19
**sworn** 3:3 155:7 158:9 159:21
**synergy** 4:25 5:3 8:25 9:2

**t**

**t** 3:2 156:8 157:3
**table** 37:14
**take** 12:6 13:14 31:17 36:23 37:9 38:5,23 45:11 107:11 114:12 115:15 116:5 129:24 148:20,23
**taken** 1:18 13:16 48:22 65:19 92:10 96:10 120:22 144:6 158:11
**talk** 16:9,16 26:19 32:22 35:12 37:23 41:19 42:25 45:12 54:4 60:10 65:17 68:15 70:11,13 70:25 71:2 79:16 86:6,7 92:2 100:15

108:2,11 109:22,24 112:9 147:14
**talked** 11:5 52:25 71:3 76:10
**talking** 11:22 15:25 27:10 29:17,19 32:22 35:13 41:5 48:10,12 50:25 52:19,20 53:4 68:12,14 69:13 69:14,17 77:21 99:7,19 102:20 108:19 111:4,6 114:10 128:8 141:3,4 144:24 149:15,17,23 153:11
**tape** 11:17 26:11,12,15,17 107:18,20,21 107:25 108:4
**taped** 13:2 18:20,21 67:6
**telephone** 29:23
**tell** 11:7 16:3 32:10,24 33:4 34:14 35:16,18 42:15 48:18 52:13,14,16 53:12 59:25 61:3 66:2,5 72:18 73:23,25 74:2,9 75:21 77:12,16,17,18 78:2,25 79:23 80:7,17,20 82:10,20,23 83:2 84:14 86:3,12,13 87:19 97:22 98:7 116:16 121:23 128:6 131:13 132:14 133:10,14 134:16,20 139:10 142:13 144:7,13 145:3 145:6 146:7
**telling** 30:18,20 37:25 38:22 51:12 52:12,22 62:8 72:15 73:12 79:25 91:20 111:14 111:17,18
**ten** 46:23 49:13 49:14,17,19 50:7,12 51:2 51:13,20 52:23 53:8,24 54:6 68:15,24 69:6 69:11 108:11
**terminate** 129:13
**terminated** 9:11 12:3,5 19:5 32:25 33:10 59:21 66:22 119:9,11 125:10 131:9 131:11,15
**termination** 32:2 33:13 66:20 131:25
**terms** 90:18
**testified** 3:6 13:23 30:14 46:23 50:10 54:17 58:17 62:13 66:9 76:25 77:22 79:8 82:16 121:6 123:3 148:18 149:9 149:18 150:8 151:22,24 153:18
**testify** 146:22 147:3,8
**testimony** 12:19 18:6 25:7,10 28:10 53:23 57:11 66:16 71:16,21 72:11 114:8 124:9 128:20 137:5 140:4 147:11 149:13 158:6,10,11,15
**text** 21:10,13
**thank** 124:8 155:3,4
**thing** 17:17,21 19:25 22:3 37:16 57:6 61:9 74:17 129:7 135:5
**things** 19:11 50:23 51:16 53:2 58:4,6,13 60:18 69:8 79:16 108:21 147:12
**think** 5:14 12:15 33:25 40:13 49:16 61:10 66:17,18 66:19 96:11,16 97:10 99:11 111:12,19 112:8 119:12 125:5 131:14 143:5 153:11
**third** 14:25 26:19 31:9 52:21 53:19 55:4 56:9 57:9 57:17 59:5,25 60:8 67:10,14 68:6,12,14 69:14,16 105:2 105:6,16
**thirteen** 34:10 102:12 132:5

**thirty** 131:3
**thought** 49:18 134:7
**three** 6:3,5 7:4 7:8,12,13,20,25 8:18,23 9:2 12:16,20,24 13:24 14:22 15:4,8,10 16:7 19:2 22:13,21 23:15,23 27:20 28:5,20 29:3,8 30:15,16 31:2 43:15 44:22,23 47:6 49:23 56:3,13 66:11 66:24 67:17 96:2 103:20 105:20 115:9 119:12,14 148:4
**throw** 104:12 104:14
**throwing** 104:16
**tie** 91:3,24
**tiers** 149:11
**ties** 92:5
**time** 10:20 20:18 28:17 30:25 32:7,9 35:17,24 36:13 38:4,6,16 39:5 39:10 50:14,19 52:17,18 55:3 55:4 57:5,6,17 59:5,23 60:4 61:9 65:11 67:16,18 68:6 68:11,21 70:23 71:5 72:5 73:5 73:10 78:3,4,6 81:22 83:5,9 83:12,21 89:18 89:19 95:6,8 100:12,18 101:12 104:17 104:25 105:2,6 105:9,11,13,16 105:21,25 106:2,11 107:5 107:14,16 114:21,23 116:3,7 117:7 119:2 120:25 122:13 125:25 132:5 136:3,24 146:13 148:16 148:20,21,22 148:23 152:15 155:3,5 158:8
**times** 11:20 12:16 18:12 29:8 41:19 45:25 46:6,9 46:12 53:7,14 59:3,4 62:2 66:11 68:4 70:22 103:16 103:23 105:20 148:4
**timesheet** 34:7 34:8,12,15,17 35:5,10,19,21 35:23 36:9,12 37:2 93:23 101:8,25 102:7 105:22 117:17 117:18 119:3 125:21 131:20 131:21,22,25 132:2,13,13 133:21 134:4,8 134:10,11,14 134:14,22 138:4,5 139:8 140:12 143:22 143:24
**timesheets** 39:9 39:11,14 93:12 101:4 105:10 117:21 118:13 119:16 121:24 132:4,10
**title** 6:10
**today** 3:17 4:6 4:14 12:19 18:7 25:7,10 28:10 50:6,10 53:23 57:12 64:9 70:6,20 71:16,21 72:11 72:23 73:4 75:11,16,20 78:16,20 79:8 80:13 81:11,13 81:14,15 82:2 82:8 91:20 98:15,16 111:15 114:8 114:15,19 116:25 124:9 128:2,20 133:24,25 137:5 140:4 146:18,20,25 147:7,9,11 151:8
**today's** 81:22 90:25
**toes** 43:16
**told** 15:9,9 16:15 17:20 24:11 27:8,16 27:21 33:9,15 34:20 35:19,20 35:25 45:10 51:25 53:9 54:9 60:5 61:5 62:25 63:25 72:21 73:9,11 73:20 74:5,9 75:6,15,17,21 77:15,20 78:3 78:7 80:6,11 80:12 81:2,24 83:3,4,6,22 84:17 86:9,11 86:21 87:24 88:3,7 102:8

104:11,13 110:6,23 117:13,15,16 122:16 129:3 131:14,17,18 134:9 137:9,10 137:25 139:7 144:22 150:2
**took** 32:11 36:16,20 51:12
**top** 7:9 8:16 21:22 22:2 85:25 132:24
**towards** 7:8
**track** 97:14,17 97:19,20
**train** 34:17
**trained** 34:18
**training** 34:20
**transcribed** 14:3 62:3 158:12
**transcript** 20:19 143:10 158:14
**transcription** 14:4 53:16 57:3
**travel** 43:16
**treat** 92:16,18 92:19
**trouble** 54:15
**true** 28:2 47:3 50:9,9,10 102:9 130:12 144:23 147:13 147:15,16,21 147:23 158:14
**truth** 32:23,24 33:4,9 37:25 46:17 74:6,10 75:14,22,22 77:6 111:14,18
**truthfulness** 90:6
**try** 3:25
**trying** 46:8 51:4
**turn** 113:8,9
**turning** 18:11
**twice** 28:11 57:18
**two** 7:25 8:18 8:21,22 13:15 14:25 17:5 18:15 19:21 20:7 22:8 23:11 26:17,22 30:24 46:24 47:5 48:5,25 49:22 50:11 53:7,14,18 54:23 55:9 56:4,22,24 58:9 59:2,4,8 59:12 60:7,12 60:17,18,21 62:2 67:5,20 67:22 68:4 73:10 75:4 78:15,17,22 83:4 85:8,18 86:10 87:13 102:6,10 103:14 106:13 107:23 110:6,7 112:20 113:5 114:12 115:4,7 115:8 116:10 116:12 119:18 120:24 122:13 122:16,21 123:5 124:20 125:24 127:9 129:14 131:19 132:11,15 133:20 134:3,7 134:25 135:9 139:17 140:9 140:10 143:6 149:15,23
**tyler** 2:15
**type** 23:4 146:19
**typed** 43:4,10 43:19 45:4

**u**

**u** 110:19
**u.s.** 107:2
**uh** 5:16 49:15 50:8 77:11 111:9 119:15 123:6 128:11
**under** 13:23 17:6 18:7 25:8 37:19 50:6 107:11 116:5 138:11 158:13
**underlying** 90:18 96:17 125:11 140:8 140:22 150:7
**understand** 3:24 4:2,7 15:2 23:18 29:2 38:20 80:19 92:5 100:17 104:15 129:25
**understood** 97:7
**united** 1:2,4 2:3 106:16
**unnamed** 88:7
**unpaid** 108:24 109:4 110:2,10
**upset** 148:13
**upstairs** 34:6 40:20
**using** 35:23
**usually** 26:17

**v**

**v** 2:6 159:3
**varick** 2:4
**verbal** 8:24
**verify** 6:10
**veritext** 159:2
**versus** 3:21
**visit** 36:14 89:22

**voice** 54:20,21 54:21 55:11 67:10,11,22 84:24 86:7

**w**

**w** 110:18 123:17,19 156:19
**wage** 106:6
**wages** 27:19
**wait** 63:13 110:25
**waiving** 4:13
**wake** 39:4 102:11
**want** 6:23 7:21 17:3,18,19 18:13 25:16 26:10 28:17 29:4,5 30:5 37:24 38:16 42:15 55:5 58:22 64:6 65:10 68:21 69:22 79:17 90:22 91:5 104:16,24 112:10 113:17 115:7 135:8 139:17
**wanted** 4:11 18:8 58:24 69:20 90:25 124:11
**washing** 121:13 121:14
**way** 9:23 10:15 20:7 21:6 37:11,18 86:23 116:24 131:5 139:16 146:14 147:5 153:11 153:12
**wayne** 1:21 158:4
**week** 95:6,9 102:2 106:5 133:6
**weeks** 119:12 119:14
**weird** 88:11
**went** 16:5 33:5 145:9
**whereof** 158:22
**wife** 102:25 103:19 121:8
**withdraw** 62:15 123:2 136:6 141:19 152:3
**withdrawn** 5:18 56:2 87:5 149:8
**witness** 7:10 16:23 19:18 20:11 21:9 22:16 27:16 32:17 37:23 40:19 42:25 43:14 44:16 45:18 46:4 47:5 48:8 54:3 54:9 55:25 56:19 59:16,23 61:13,22 62:5 63:21 65:13 66:23 67:25 71:8,19 72:14 73:9,19 74:5 74:13 75:8,13 77:25 78:13 79:15,23 80:6 80:16,23 81:6 81:18 82:7,13 84:3,20,24 85:8,13 87:11 92:2 93:8,22 94:10 95:3,13 97:14 100:22 101:6,22 103:12 105:19 108:6,17 111:12,17,22 112:15,19 113:25 114:10 115:6 121:7,19 122:11,23 125:16,20 126:25 128:18 128:23 129:7 130:3,7,14,25 131:17 134:20 135:3 136:17 139:2,24 141:2 141:15 143:19 144:22 148:3 151:6,10,20 152:19 153:5 155:4,6 156:5 158:9,15,22 159:4,20
**woman** 40:4 66:9
**word** 82:15
**work** 4:17 5:23 6:3 8:15 16:5,7 16:11 18:8,12 23:4,5 27:20 33:25 34:11,20 34:25 35:7,11 35:20 38:18 40:21 41:11 59:13 61:4,5 90:19 91:20 92:16,17 93:18 94:14,14,15,16 94:21 95:24 96:2 97:5 101:14,17,20 103:4,4 112:5 112:16,20 113:5 117:5,18 119:3,4,10 121:8 122:15 122:21 129:2,3 129:7,8,14 130:25 133:6 133:17 134:4,7 134:14,24

138:5 139:15 139:20,25 140:5,13 150:2 152:20 156:11
**worked** 31:12 34:15 36:2 41:9 59:9 89:5 89:20 92:12 93:20 94:12 95:5,6,9 100:9 101:25 102:6 106:5 117:3,6 118:14 120:16 120:24 128:6 129:4 130:5 132:4,6,7,11,21 148:19 152:16
**worker** 62:22 63:4 154:13
**working** 5:5 23:3 40:3,5 56:6,10 88:23 89:11 91:21 94:17,25 95:18 95:25 96:5 97:11 101:12 103:14,18 106:8,12 107:23 108:8 116:10,11,12 116:13 121:17 121:20 122:8 123:5 124:19 125:24 129:12 139:16 148:14
153:6,8,13,14
**works** 119:13
**write** 8:18 35:25 37:2,3 39:8 136:20 137:21
**writing** 33:17 34:21 83:16,17 93:5,9 115:19 115:20,23,25
**wrong** 35:5,6,9 35:19 134:18
**wrongfully** 133:20 148:11 150:3,25
**wrote** 24:17 34:7,8,19 35:4 35:5,6,8,9 36:9 41:16 102:10 138:4 139:15

**x**

**x** 156:4,8 157:2 157:3
**x'd** 124:5
**xxx** 124:2

**y**

**year** 5:6,9,9 76:12,13,14,14 77:23 78:11 103:13 116:22 122:18
**years** 115:9
**york** 1:2,21,22 2:5,5,9 3:5,13 3:20 106:15 120:14 141:23 158:5 159:2
**young** 17:8

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.