**Court Exhbit 3**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lori Chavez-DeRemer, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>-v-<br><br>Sarene Services, Inc. d/b/a Serene Home Nursing Agency, and Irene Manolias, Individually,<br><br>Defendants. | 20-cv-3273<br>(NJC) (ST) |

Formatted: Indent: Left: 1.98"

**JURY CHARGE**

**Court Exhbit 3**

**TABLE OF CONTENTS**

I. GENERAL INSTRUCTIONS ........ 5

1. The Duties of a Jury ........ 5
2. Parties are Equal Before the Court ........ 5
3. The Evidence ........ 7
   A. What is evidence: ........ 7
   B. What is not evidence: ........ 8
   C. Direct and Circumstantial Evidence ........ 9
   D. Stipulations ........ 11
   E. Judicial Notice ........ 11
4. Available Evidence ........ 11
5. Inferences ........ 12
6. Rulings by the Court ........ 13
7. Expert Testimony ........ 14
8. Summaries and Charts ........ 15
9. Summary Witness ........ 16
10. Uncalled Witnesses Equally Available ........ 16
11. Burden of Proof – Preponderance of the Evidence ........ 17
12. Preparation of Witnesses ........ 18
13. Credibility of Witnesses ........ 19
14. Impeachment by Prior Inconsistent Statements ........ 20
15. Evidence Introduced for a Limited Purpose ........ 21
16. Government Witnesses ........ 21

II. SUBSTANTIVE LAW ........ 23

**Court Exhbit 3**

1. Nature of the Claims ........ 23

2. The FLSA Generally ........ 25

3. Employees Cannot Waive Their Rights Under the Fair Labor Standards Act ........ 25

4. Elements of the Overtime Claim ........ 26

5. Determination of Compensable Time: Suffer or Permit ........ 28

6. Bona Fide Meal Periods ........ 30

7. Bona Fide Sleep Periods ........ 31

8. Recordkeeping Claim: Failure to Make, Keep, and Preserve Adequate and Accurate Records ........ 32

9. Effect of Failure to Keep Accurate Records on the Third Element of the Overtime Claim ........ 33

10. Retaliation ........ 36

11. Punitive Damages ........ 40

III. CLOSING INSTRUCTIONS ........ 42

1. Selecting a Foreperson ........ 42

2. Note Taking ........ 43

3. Communication with the Court ........ 43

4. Juror's Recollection Governs and Requests for Trial Testimony ........ 44

5. Deliberations and Unanimous Verdict ........ 44

6. Verdict Forms ........ 45

VERDICT FORM ........ 47

**Court Exhbit 3**

NUSRAT J. CHOUDHURY, United States District Judge:

Jurors, now that the evidence in this case has been presented and the attorneys for the plaintiff and the defendants have finished their closing arguments, it is my responsibility to instruct you as to the law that governs this case. We are all grateful to you for the close attention you have given to this case thus far. I ask that you continue to pay close attention as I give you these instructions.

My instructions will be in three parts:

First: I will instruct you regarding the general rules that define and govern the duties of a jury in a civil case.

Second: I will instruct you as to the legal elements of the Plaintiff's claims.

Third: I will instruct you as to some general rules regarding your deliberations following these instructions.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

You may also recall that I gave you some preliminary instructions at the outset of this case. To the extent there is any difference between those preliminary instructions and the instructions that I am now giving you, the instructions I am now giving you control and you are to apply them in your deliberations.

**Court Exhbit 3**

## I. GENERAL INSTRUCTIONS

### 1. The Duties of a Jury

To begin with, it is your duty to find the facts from all the evidence in this case. You are the sole judges of the facts, and it is therefore for you and you alone to pass upon the weight of the evidence, to resolve such conflicts as may have appeared in the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence or lack of evidence in this case.

It is your job—not mine—to find the facts. I have neither expressed nor attempted to suggest that I have an opinion about how you should decide the facts of this case. You should not consider anything I have said or done in the course of the trial, including these instructions, as an expression of an opinion about the facts or the merits of this case.

With respect to any question concerning the facts, it is your recollection of the evidence that controls.

My job is to instruct you on the law. You must apply the law to the facts as you find them in accordance with my instructions. While the lawyers may have commented on some of these rules, you must be guided only by what I instruct you about them. You must follow all the rules as I explain them to you. You may not follow some and ignore others; even if you disagree with some of the rules or don't understand the reasons for some of them, you are bound to follow them.

### 2. Parties are Equal Before the Court

In this case, the Plaintiff is the Secretary of the United States Department of Labor. I will refer to the Plaintiff as the "Secretary." She is represented by attorneys at the United States Department of Labor, which I refer to as "the DOL."

**Court Exhbit 3**

There are two Defendants. One is Sarene Services, Inc., a corporation that does business as "Serene Home Nursing Agency," which I will refer to as "Serene." The other Defendant is the CEO of that company, Irene Manolias. I will refer to both Defendants collectively at times and individually at times.

Throughout these instructions I will refer to the Plaintiff and the Defendants together as "the Parties."

The Parties—the Secretary, Defendant Serene, and Defendant Manolias—are equal before this Court, and they are entitled to equal consideration.

The fact that the Plaintiff is the Secretary of the United States Department of Labor does not mean that it is entitled to any greater consideration than what the Defendants are entitled to. By the same token, the Secretary is entitled to no less consideration.

As I noted, Defendant Serene is a corporation. The fact that Defendant Serene is a corporation does not mean that it is entitled to any greater consideration than what the Secretary is entitled to. By the same token, Defendant Serene is entitled to no less consideration than what the Secretary is entitled to.

And similarly, the fact that Defendant Manolias is an individual does not mean that she is entitled to any greater or lesser consideration than what the Secretary or Defendant Serene are entitled to.

Neither the Secretary nor the Defendants are entitled to any sympathy or favor.

All litigants are equal before the law. All entities, no matter how big or small, are entitled to the same fair consideration as you would give any other individual party. As I noted, all litigants are entitled to the same fair consideration whether the litigant is a government entity, a corporation, or an individual.

**Court Exhbit 3**

In determining the issues of fact and rendering a verdict in this case, you should perform your duty with complete impartiality and without bias, sympathy, or prejudice with respect to any person or entity.

You are not to be swayed by sympathy for the P~~p~~arties or any other person or entity, whether the verdict will please or displease anyone, be popular or unpopular or, indeed, by any consideration outside the case as it has been presented to you in this courtroom.

It would be improper for you to allow any feelings you might have about the nature of the claims in this case to influence your decision as to whether the P~~p~~arties have sustained their burden of proof. It is also improper for you to allow any personal feelings you may have about the race, religion, national origin, ethnic background, sex, or age of any party, witness, or attorney to influence your decision.

All P~~p~~arties are equal before the law and are entitled to the same fair consideration. I know that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

**3. The Evidence**

I will instruct you now about what counts as evidence, and how you should consider it.

**A. What is evidence:**

The evidence upon which you are to decide the facts comes in several forms:

1. The sworn testimony of witnesses, both on direct and cross-examination, regardless of which party called the witness and regardless of whether the witness appeared in court physically or testified remotely through a video link.

**Court Exhbit 3**

- I remind you of my instruction that certain witnesses were permitted to testify remotely through a video link to the Court pursuant to my order, that I permitted both P~~p~~arties to be present with the witness, and that I required the P~~p~~arties to ensure that these witnesses were provided necessary documents in advance.

2. Exhibits that have been received in evidence by the Court; and
3. Facts or testimony to which the lawyers have agreed or stipulated. A stipulation is an agreement among the P~~p~~arties that a certain fact is true. You must regard such agreed-upon facts as true.

**B. What is not evidence:**

Certain things are not evidence and you should~~are to be~~ disregard~~ed~~ them~~by you~~ in deciding what the facts are.

1. Arguments or statements by lawyers are not evidence.
2. Questions put to the witnesses are not evidence.
3. Objections made by the attorneys to the questions or to exhibits are not evidence.
4. Nothing I have said or done during trial, including the rulings that I have made, is evidence. During the course of the trial, I may have questioned witnesses. I ~~also~~ may have also had limited colloquy, debate, and argument with the attorneys. You should not draw any inferences from observing these interactions. They were conducted for the sole purpose of e~~i~~nsuring the orderly and clear presentation of evidence to you, the jury.
5. What I say in these instructions is not evidence; and

**Court Exhbit 3**

6. Obviously, anything you may have seen or heard outside the courtroom is not evidence.

In light of this distinction between what is evidence and what is not, you should bear in mind particularly that a question put to a witness is never evidence. It is only the answer that is evidence.

If I have sustained an objection to a question or stricken testimony, the answers given by a witness are no longer part of the evidence in the case and you may not consider those answers.

Where evidence was admitted for a limited purpose, you must consider that evidence for that limited purpose only.

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.

**C. Direct and Circumstantial Evidence**

I told you that evidence comes in various forms such as the sworn testimony of witnesses, exhibits, and stipulations.

There are, in addition, different kinds of evidence—direct and circumstantial.

In deciding whether or not the Plaintiff has met her burden of proof, you may consider both direct evidence and circumstantial evidence.

***1. Direct evidence***

One type of direct evidence is the communication of a fact by a witness who testifies to the knowledge of that fact as having been obtained through one of the five senses. So, for example, a witness who testifies to knowledge of a fact because he saw it, heard it, smelled it,

tasted it, or touched it is giving direct evidence. What remains is your responsibility to pass upon the credibility of that witness.

Direct evidence may also be in the form of an exhibit.

### *2. Circumstantial Evidence*

The other type of evidence is circumstantial evidence. Circumstantial evidence tends to prove a fact in issue by proof of other facts.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came to the courthouse this morning, the sun was shining and it was a nice day. And now, assume that as we are sitting here in this windowless courtroom, a person walks into the courtroom wearing a raincoat that is soaking wet and carrying an umbrella dripping water.

Under this hypothetical, you cannot look outside the courtroom and you cannot see whether or not it is raining, so you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time this person walked in, it had started to rain.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact. The word "infer"—or the expression "to draw an inference"—means to find that a fact exists from proof of another fact. Circumstantial evidence involves using your reason and experience to infer from established facts the existence or the nonexistence of some other fact.

**Court Exhbit 3**

Please note, however, that circumstantial evidence is not a matter of speculation or guess: it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

**D. Stipulations**

The Pparties have entered into stipulations concerning certain facts that are relevant to this case. These stipulated facts were ready into the record prior to the close of evidence and are set forth in Exhibit PX-62.[insert].

A stipulation of fact is simply an agreement among the Pparties that a certain fact is true. You must treat these stipulated facts as having been proven for purpose of this case.

However, what weight to give those facts is entirely up to you. You are the sole judges of the facts and you decide what weight to give those facts.

**E. Judicial Notice**

The rules of evidence permit the judge to accept facts that cannot be reasonably disputed. This is called judicial notice.

Throughout the course of the trial, I accepted as proven certain facts, even though no evidence was introduced to prove those facts.

You must accept those facts as true for the purpose of this case.

**4. Available Evidence**

Although the Plaintiff bears the burden of proving her claims, the law does not require the Plaintiff to call as witnesses all persons who may appear to have some knowledge of the

**Court Exhbit 3**

matters at issue at this trial. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits.

**5. Inferences**

During the trial you may have heard the attorneys use the term "inference." In the attorneys' arguments, they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact which you find exists.

There are times when different inferences may be drawn from facts, whether proven by direct or circumstantial evidence. The Secretary asks you to draw one set of inferences, while the Defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw——but are not required to draw——from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Court Exhbit 3**

**6. Rulings by the Court**

My next instruction relates to the rulings and statements that I made during the course of this trial. I hereby instruct you that nothing that I said during the course of the trial, no question that I have asked, no ruling that I have made, and no statement that I may make in this charge, should be interpreted in any way whatsoever as a suggestion of what decision I believe you should make. You should understand that I have no opinion as to the decision you should make in this case.

You will remember that at various times throughout the trial, I have been called upon to make rulings on various questions of law. I have sustained objections, and I have overruled objections. Please do not concern yourself with my reasons for making the rulings that I made. These are purely legal matters and must not affect your deliberation on the factual matters in this case.

You may not draw any inferences for or against a party because that party raised objections during trial. It is the duty of the attorneys on each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. You should not hold it against an attorney or a party either because the attorney has made objections, or because I may have overruled some of those objections.

Similarly, you should not concern yourselves with, or speculate about, the contents of any discussion between me and the attorneys at sidebar. You should not hold it against any attorney that the attorney asked for a sidebar conference out of your hearing. And you are not to draw any inferences for or against any party because that party may have requested such a sidebar conference.

**Court Exhbit 3**

To repeat, your verdict must be based exclusively upon the evidence, or lack of evidence, as it has been presented in this case.

When the Court has sustained an objection to a piece of evidence or a question addressed to a witness, you must disregard it entirely and may draw no inference from it or speculate as to what the witness would have said if permitted to answer the question.

My reasons for these rulings relate to matters of law which are no concern of yours and not for your consideration. The reasons for my rulings should not be discussed among you, nor should you speculate or guess about the basis for my rulings. By the same token, where I allowed testimony or exhibits to be received into evidence over the objection of counsel, this was not an indication that I have any opinion as to the weight or effect of such evidence. That is for you to decide.

You also must not draw any conclusion whatsoever from the fact that from time to time I may have asked questions of witnesses. This was solely to elicit facts which may or may not be material to your determination.

Remember that, in making your determination as to the facts, you should rely upon your own recollection of the evidence. What I said from time-to-time during the course of the trial, or what I say in the charge that I am now giving you, should not be taken in place of your own recollection of the evidence in this case.

**7. Expert Testimony**

The Court permitted Dr. Jennifer Reckrey to testify as an expert in her field. If scientific, technical, or other specialized knowledge will assist the jury to understand the evidence or to

decide a disputed fact, a witness with particular knowledge, skill, experience, training, or education may be called to testify about such evidence or facts in issue in the form of an opinion.

The rules of evidence ordinarily do not permit witnesses to testify to opinions or conclusions. An exception to this rule exists for those we call "expert" witnesses who may state their opinions and provide the reasons for their opinions.

You should consider the expert witnesse's opinions received in this case and give them such weight as you may think they deserve. If you should decide that the opinion of the expert witness is not based upon sufficient knowledge, skill, experience, training, or education, or that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

In sum, the expert witness is in all other respects the same as any other witness. You should consider her qualifications, experience, interest in the outcome of the case, if any, demeanor, and all the other factors you are to consider in assessing the credibility of other witnesses.

**8. Summaries and Charts**

During the trial, as well as during closing arguments, you may have seen the Pparties present charts or summaries. The charts or summaries were shown to you in order to make other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based and are not themselves independent evidence. Therefore, you are to give no greater consideration to these charts or summaries than you would give to the evidence upon which they are based.

Formatted: English (United States)

**Court Exhbit 3**

It is for you to decide whether the charts or summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts or summaries if you find they help you in analyzing the evidence.

**9. Summary Witness**

During the trial, you heard testimony from a witness who provided summary testimony. This witness is not an expert, but a lay witness just like the other lay witnesses whose testimony you have observed during trial.

That witness may have provided testimony that summarizes other evidence in this case, including voluminous records. The witness's testimony summarizing other evidence may make the other evidence more meaningful and aid you in considering that evidence. This summary testimony is no better than the testimony or the documents upon which it is based and is not itself independent evidence. You are to give no greater consideration to summary testimony than you would give to the evidence upon which it is based.

It is for you to decide whether the summary testimony correctly presents the information contained in the testimony and in the exhibits on which it is based. You are entitled to consider the summary testimony if you find it helps you analyze the evidence.

**10. Uncalled Witnesses Equally Available**

There are a number of persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what these individuals would have testified to had they been called.

**Court Exhbit 3**

**11. Burden of Proof – Preponderance of the Evidence**

The Secretary has the burden of proving each essential element of her claims by a preponderance of the evidence. The Defendants have the burden of proving the defenses that they are asserting by a preponderance of the evidence.

Another way to say this is that the party with the burden of proof on an issue must establish the claim by a fair preponderance of the credible evidence. To establish a claim "by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means evidence that, when you consider and compare it with the evidence opposed to it, convinces you that what is sought to be proved is, more likely than not, true.

A preponderance of the evidence means the greater weight of the evidence. That does not mean the greater number of witnesses or the greater length of the time taken by either side. This determination is based on the quality and persuasiveness of the evidence—the weight and effect it has on your minds.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of which side called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the evidence produced by the party who does not have the burden outweighs the evidence produced by the party who does have the burden of proof, you must find in favor of the party without the burden of proof, and against the party with the burden of proof.

If you find that the credible evidence on a given issue is in balance or evenly divided between the Pparties—that it is as probable that one side is right as it is that the other side is right—then you must decide that issue against the party having the burden of proof. That is

**Formatted:** Font: Font color: Auto

because the party that has the burden of proof must prove more than simply equality of evidence—that party must prove the element at issue by a preponderance of the evidence. On the other hand, the party with the burden of proof does not have to prove more than a preponderance. As long as you find that the scales tip, however slightly, in favor of the party with the burden of proof—that what that party claims is more likely true than not true—then the element will have been proved by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the standard in a criminal trial. That requirement does not apply to a civil case like this one, and you should put it out of your mind.

**12. Preparation of Witnesses**

You have heard evidence during the trial that some witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subject they will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultations.

Again, the weight you give to the fact or the nature of the witness's preparation for their testimony and what inferences you draw from such preparation are matters completely within your discretion.

**Court Exhbit 3**

**13. Credibility of Witnesses**

In deciding what the facts are in this case, you must decide which testimony to believe and which testimony not to believe. You are the sole judges of credibility and may choose to disbelieve all or part of any witness's testimony you have listened to and observed. Credibility simply speaks to the believability, veracity, or truthfulness of the witness's testimony. In making these judgments, you should carefully scrutinize the full testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the veracity or believability and the importance of each witness's testimony. In making that decision, you should consider any number of factors, including the following:

- the opportunity the witness had to see, hear, and know the things about which the witness testified;
- the accuracy of the witness's memory;
- the witness's candor or lack of candor;
- any bias or hostility the witness may have shown for or against any party;
- the reasonableness and probability of the witness's testimony; and
- the consistency and corroboration of the witness's testimony with other believable testimony.

Everything a witness said or did on the witness stand counts in your determination. Additionally, a witness's demeanor may be informative in assessing their credibility. You may also consider whether a witness has any possible bias or relationship with a party, or any possible interest in the outcome of the case. Such a bias, relationship, or interest may create a motive to testify falsely.

**Court Exhbit 3**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. For example, both Plaintiff and Defendants have an interest in prevailing at trial. An interest in the outcome may create a motive to testify falsely and may sway a witness to testify in a way that advances the witness's own interests.

Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of that witness's testimony and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would testify truthfully. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected their testimony.

**14. Impeachment by Prior Inconsistent Statements**

You have heard evidence that at some earlier time certain witnesses have said or done something which counsel has argued is inconsistent with the witness's testimony at trial.

Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted themselves. If you find that the witness made an earlier statement that conflicts with this trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe. But you may not consider that prior statement as affirmative evidence in determining liability.

**Court Exhbit 3**

First, you should decide whether there was a prior inconsistent statement. Then, if you find that the witness made an earlier statement that conflicts with their trial testimony, you may consider that fact in deciding how much of that witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**15. Evidence Introduced for a Limited Purpose**

You have seen certain documents and heard counsel conduct cross-examination and redirect examination of witnesses about those documents for the limited purpose of helping you assess the witnesses's credibility or believability.

You cannot consider that evidence as direct evidence. Rather, you can consider it for the limited purpose of helping you determine the credibility or believability of the witness.

**Formatted:** normaltextrun, Font: Aptos, 14 pt

**Formatted:** Normal

**16. Government Witnesses**

You have heard the testimony of a government employee. The fact that a witness may be employed as a government employee does not mean that their testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

**Court Exhbit 3**

It is your decision, after reviewing all the evidence, whether to accept the testimony of the government witness and to give to that testimony whatever weight, if any, you find it deserves.

**Court Exhbit 3**

## II. SUBSTANTIVE LAW

I will now instruct you as to the substantive law to be applied in this case. As I have noted, it is your duty to determine liability based on the evidence and facts presented to you and using the law as I instruct you. To that end, I want you to listen closely to the following instructions because understanding the law you are bound to apply is crucial to rendering a fair and accurate verdict. It will help you understand the verdict form, which I will discuss more substantively later.

### 1. Nature of the Claims

This case concerns claims brought under the Fair Labor Standards Act, which I will refer to as the "FLSA." The FLSA is a federal law that, since 1938, requires employers to pay employees for all hours they work, to pay overtime pay when employees work more than forty hours in a week, and to keep accurate time and pay records, among other things, as I will discuss further.

A provision of the FLSA, 29 U.S.C. § 216(c), authorizes the Secretary to bring a lawsuit in federal court on behalf of one or more employees to enforce the FLSA's requirements.

The Secretary brings this case on behalf of Defendants' former employees, specifically home health aides that Defendants called "live-in" home health aides. Throughout these instructions I will refer to the former employees affected by this lawsuit as "live-in aides."

The Secretary brings three claims against the Defendants under the FLSA.

First, the Secretary claims that Defendants did not pay live-in aides for all the time they worked in violation of the requirement to pay overtime pay for all hours worked over~~after~~ 40 hours in a workweek. Specifically, the Secretary claims that Defendants did not pay live-in aides for time they worked during unpaid meal periods and sleep periods, even though Defendants

were aware or should have been aware that live-in aides worked additional time. I will refer to this claim as the "**Overtime Claim**."

Second, the Secretary claims that Defendants did not make or keep records of all the time live-in aides actually worked. I will refer to this claim as the "**Recordkeeping Claim**."

Third, the Secretary claims that Defendants retaliated against live-in aides because some of them participated in this lawsuit. I will refer to this claim as the "**Retaliation Claim**."

In response to these claims, Defendants maintain that live-in aides were paid for all hours for which they performed work and are not entitled to compensation during their meal and sleep periods. Furthermore, Defendants assert that they had established policies and procedures sufficient to determine the hours worked by their employees. Finally, Defendants maintain that they did not take any action against current or former employees in an attempt to prevent their participation in this litigation.

What I have just described to you are merely the Pparties' claims and denials. They are not evidence.

Formatted: Font color: Auto

In reaching a verdict, you must bear in mind that the Secretary bears the burden of proving each essential element of the claims by a preponderance of the evidence, unless I instruct you otherwise. In order to meet that burden, the Secretary may rely on all of the evidence received at trial, regardless of which side presented it.

You have each been given verdict forms with questions you must answer regarding each of the Secretary's claims. I will review these questions with you as I read the charge to you.

If you find that Defendants violated the FLSA~~Fair Labor Standards Act~~, any amounts of money you may award as a result will be paid directly to the live-in aides.

**Court Exhbit 3**

### 2. The FLSA Generally

The FLSA has two purposes. First, the law protects workers by establishing minimum wage and overtime requirements. Second, the law protects competition in the marketplace by eliminating any advantage for employers who underpay their workers and violate the law.

To ensure a "fair day's pay for a fair day's work," the FLSA requires employers to pay employees for all hours worked, to pay an overtime rate for hours worked over 40 hours per week, and to pay at least the minimum wage. The FLSA also requires employers to keep accurate and complete records of how many hours their employees work and the wages the employees are paid. The FLSA also prohibits employers from interfering with an action brought by the Secretary and DOL to enforce the Fair Labor Standards Act and from retaliating against employees for exercising their rights under the law.

### 3. Employees Cannot Waive Their Rights U~~u~~nder the Fair Labor Standards Act

The law does not allow employees to give up the wage protections of the FLSA, including the right to be paid for all time worked and the right to be paid overtime. This means that an employer who requires, knows about, or should know about work must compensate the worker, regardless of whether the worker requests pay and regardless of whether the employer knows the worker will not be paid.

In addition, an employer's announcement that no overtime work will be permitted, or that overtime work will not be paid unless authorized in advance, does not affect the employees' right to be paid for work they actually performed or were permitted to perform. It is the employer's duty to ensure they pay their employees all the money the FLSA requires for all hours worked.

**Court Exhbit 3**

**4. Elements of the Overtime Claim**

I will now explain the elements of the Overtime Claim. Under the FLSA, the Secretary must establish each of the following three elements by a preponderance of the evidence to prove that Defendants violated the FLSA's overtime requirements:

(1) Defendants were an enterprise engaged in commerce;

(2) Defendants employed the live-in aides at issue in this case during the relevant time period; and

**Formatted:** Indent: Left: 0.5", First line: 0"

(3) Defendants did not pay the live-in aides for all the overtime hours they worked in violation of the FLSA's requirement to pay employees overtime pay for all time worked after the first 40 hours.

The first two elements of the Overtime Claim are already established in this case. There is no dispute that Serene was an enterprise under the FLSA and that both Defendants were employers of the live-in aides affected by this lawsuit. This means that Defendant Serene and Defendant Manolias are both liable and legally responsible for any FLSA overtime violations you find.

Since the first two elements of the Overtime Claim are already established, you only need to consider the third element: whether Defendants did not pay live-in aides for all the overtime hours they worked.

Under the law, an employee is entitled to receive overtime pay for all hours worked over 40 hours during a particular workweek, which are called "**Overtime Hours**." **Overtime pay** is one-and-a-half times the regular rate of pay. For example, if an employee makes $20 an hour, their overtime pay is $30.

**Court Exhbit 3**

In this case, there is no dispute that Defendants' live-in aides regularly worked Overtime Hours, that is, more than 40 hours in a workweek. There is also no dispute that Defendants paid proper overtime pay for the hours that are listed in Defendants' payroll records. The Pparties also agree that Defendants' records accurately reflect: (1) the number of shifts worked each week by each live-in aide, (2) the live-in aides' regular rate of pay, and (3) the live-in aides' overtime rate of pay.

Formatted: Default Paragraph Font

The Pparties dispute, however, whether live-in aides worked more hours than are listed in Defendants' payroll records.

If you find that the Secretary has proven the third element of the Overtime Claim by a preponderance of the evidence—meaning that it is more likely than not that Defendants did not pay live-in aides for all of the overtime hours they worked—then you must find in the Secretary's favor and against Defendants on the Overtime Claim.

By contrast, if you find that it is more likely than not that Defendants did pay live-in aides for all of the overtime hours they worked, or that this issue is in balance or evenly divided between the Parties,—then you must find in Defendants' favor and against the Secretary on the Overtime Claim.

Formatted: Underline

Defendants' financial position is not relevant, and must be not considered, in determining whether the Secretary has shown, by a preponderance of the evidence, that Defendants violated the FLSA's overtime requirement.

**Court Exhbit 3**

**5. Determination of Compensable Time: Suffer or Permit**

As I noted, in order to resolve the Overtime Claim, you must determine whether Defendants did not pay live-in aides for all the overtime hours they worked. The principles of the FLSA provide guidance to help you answer this question.

First, under the FLSA, the number of hours an employee works in a day is determined under what is called the "continuous workday" rule. Under that rule, the workday begins when the employee begins to engage in their "principal activities" and continues until they have completed those activities. An employee's principal activities are activities an employee performs as part of their regular work in the ordinary course of their employment. All of the time between the employee's first principal activity and their last principal activity is considered hours worked and the employer must pay for all hours worked. The only exceptions to this rule are what are called "bona fide" meal periods and "bona fide" sleep periods—meaning meal and sleep periods that meet specific requirements under the law, which I will explain in a few minutes.

Second, under the FLSA, an employer must pay employees for all time in which the employee performs activities that benefit the employer. Even time that an employer does not specifically request, but allows, must be paid. And all time an employer requires an employee to be on duty is considered working time. Idle time while waiting for a task can constitute work time if the employee is not free to leave the workplace during downtime. For example, a firefighter who plays checkers while waiting for alarms is working and entitled to be paid. Working time also includes rest periods or breaks that are approximately 20 minutes or less in duration. The law requires employers to pay employees for short rest periods of 20 minutes or less, such as coffee and snack breaks.

**Court Exhbit 3**

Third, the Secretary bears the burden of proving by a preponderance of the evidence that Defendants had knowledge of, or had reason to know about, the unpaid overtime work for which live-in aides were not properly compensated. An employer must have actual or constructive knowledge that an employee is working in order to be found liable for not paying an employee for all hours worked. An employer has constructive knowledge of an employee's work if he would obtain actual knowledge of that work by the use of reasonable care or diligence. This means that an employer must compensate employees for all work that they know or have reason to believe is being performed, even if the employer has not specifically asked the employee to do the work, and even if an employee fails to report their time. However, the employer may show that they exercised reasonable diligence in ensuring that all work time was recorded by establishing a reasonable process to report hours worked.

Furthermore, when an employer claims a lack of knowledge of hours worked, but the evidence supports an inference of deliberate ignorance, the proper conclusion is that the employer knew about the hours worked. For instance, an unwritten policy discouraging the reporting of overtime, if proven, would support a claim for unpaid overtime and also allow you to infer that the employer knows about the work. Likewise, an employer who assigns work to an employee either knows or has reason to know about the work the employee does, including the time it takes to do the task, and therefore has knowledge of the work and must pay for it.

Fourth, an employer cannot sit back and accept the benefits of an employee's work without paying for it. It is an employer's duty to exercise control and make sure that work is not performed if the employer does not wish to pay for the hours. Simply having a rule against performing work is not enough for the employer to avoid responsibility for paying wages if the employer required the work, knew about it, or failed to exercise reasonable diligence to discover

**Court Exhbit 3**

it. Instead, the employer must make every effort to enforce the rule.

**6. Bona Fide Meal Periods**

As I explained earlier, the FLSA requires employers to pay employees for rest periods except for "bona fide"—or real—meal periods, which meet certain requirements that I will explain now.

For a meal period to be "bona fide," and therefore unpaid, the employee must be relieved from duty for the purposes of eating a meal. A bona fide meal period ordinarily must last at least 30 minutes. Employees are not relieved from duty if they are required to perform any tasks, whether active or inactive, while eating. Employees are not relieved from duty if their time is spent predominantly for the benefit of the employer. Whether the time was spent predominantly for the benefit of the employer, as opposed to the employee, depends on all the facts and circumstances of each case. If during meal periods the employee's time or attention is taken up principally by work responsibilities that prevent the employee from comfortably spending the mealtime, then the employee has not been relieved from duty. For example, an office employee who is required to be at her desk while eating and a security guard who is required to remain on watch while eating are both working and must be paid for that time.

If any unpaid meal period is not bona fide, then the work time must be paid.

In addition, paid rest periods cannot be offset against other unpaid working time. For example, an employer who provides an employee with a short paid break cannot use that paid time as a credit against unpaid overtime the same employee works at another time.

**Court Exhbit 3**

**7. Bona Fide Sleep Periods**

Similarly, when an employee is required to be on duty for at least 24 hours, a "bona fide"—or real—sleep period can be unpaid but only under certain circumstances, four of which are relevant to this case.

First, the sleep period must be regularly scheduled and no longer than 8 hours. This means that any deduction from compensable time for a bona fide sleep period is limited to eight (8) hours.

Second, the employer must provide the employee with private quarters in a homelike environment, for example, a sleeping space that is separate from the patient and has a place to store belongings, as well as access to cooking and eating facilities, a bathroom, and a space for recreation. This means that on any night an employee does not have a private place to sleep, the full 8-hour sleep period must be paid.

Third, the employee must get reasonable periods of uninterrupted sleep time totaling at least five hours. This means that on any night the employee does not get the total of five hours of uninterrupted sleep time, the full 8-hour sleep period must be paid.

Fourth, the employee must be compensated for the time that the employee works if the sleep period is interrupted by a call to duty. This means that even if a sleep period is otherwise bona fide, the employer still must pay the employee if there are any "call-to-duty" interruptions to that sleep period. In determining whether a worker experienced a call to duty interruption to a sleep or meal period, you must apply my prior instructions to you concerning the **Determination of Compensable Time**, *see supra* Subsection II.5.

**Court Exhbit 3**

**8. Recordkeeping Claim: Failure to Make, Keep, and Preserve Adequate and Accurate Records**

Before I complete my instructions regarding your evaluation of the **Overtime Claim**, I am going to address the standards you apply to the **Recordkeeping Claim**. The Secretary must prove this claim by a preponderance of the evidence.

The FLSA requires employers to make and keep accurate records of the hours each employee works each workday and the total hours each employee works each workweek. This requirement applies to live-in employees just like other kinds of employees. The employer must make, keep, and preserve a record showing the exact number of hours that live-in employees work.

An employer cannot shift its duty under the law to maintain accurate and complete records, including timesheets, to employees. Although an employer may require employees to submit accurate records of their time actually worked, the employer is still under the obligation to maintain accurate records of employee hours. This means that an employer must pay for all hours worked even if an employee signed an inaccurate timesheet that does not list all hours worked. Similarly, an employer must pay for all overtime hours worked even if the employee has not recorded those hours in a timesheet and has not complained that the timesheets are inaccurate.

The FLSA does not allow an employer to record employees' scheduled shift times instead of actual hours worked when the employee is a live-in domestic service worker, as are the live-in aides in this case. If an employee who works a 24-hour, live-in shift experiences a "call to duty" interruption to a meal or sleep period, that interruption must be counted as hours worked.

**Court Exhbit 3**

The ~~p~~Parties dispute whether Defendants recorded all of the hours worked by live-in aides, including any work they performed during sleep or meal periods.

Defendant S~~a~~erene and Defendant Manolias are both liable and legally responsible for any FLSA recordkeeping violations you may find.

If you find that it is more likely than not that Defendants did not make or keep accurate and complete records of live-in aides' actual hours worked, then you must find a recordkeeping violation, and your verdict must be for the Secretary and against Defendants on the Recordkeeping Claim, which is **Question #1** on your **Verdict Sheet**.

If you find that it is more likely than not that Defendants did make and keep accurate and complete records of live-in aides' actual hours worked, or that this issue is in balance or evenly divided between the Parties, then your verdict must be for the Defendants on the Recordkeeping Claim.

**9. Effect of Failure to Keep Accurate Records on the Third Element of the Overtime Claim**

I now turn your attention back to the **Overtime Claim**. As I instructed you earlier, to prevail on this claim, the Secretary must establish by a preponderance of the evidence that Defendants did not pay live-in aides for all of the overtime hours they worked.

The Secretary claims that Defendants' failure to keep and maintain adequate records has made it difficult to prove the exact amount of total hours that each live-in aide worked each day. If, in response to **Question # 1** on your **Verdict Sheet**, you find that Defendants failed to keep accurate records of the hours that live-in aides worked each day, then the Secretary is permitted to prove that live-in aides worked unpaid overtime hours and the number of such hours through evidence other than Defendants' records. In this situation, the Secretary may satisfy her burden

**Court Exhbit 3**

by proving that live-in aides performed some work for which they were improperly compensated and by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

The Secretary's burden is not high. It is possible for the Secretary to meet this burden through any evidence in the record, including estimates based on live-in aides' own recollection, documentary exhibits, and other evidence. In this respect, the recollection of a live-in aide must be more than mere speculation, but need not be precise, and may consist solely of an approximation of the hours that the live-in aide worked. You may draw inferences from the evidence in the record based on reason and common sense.

To establish that Defendants failed to pay overtime wages owed to a group of employees, such as the live-in aides in this case, the Secretary is not required to present testimony from each underpaid employee. Rather, the Secretary may present testimony and other evidence that is representative of the entire group of employees who perform substantially similar work. This is called "representative evidence."

Representative evidence eliminates the need for every single employee to testify. Representative evidence means that not all employees who were uncompensated for all of their overtime hours need to testify for the Secretary to prove that Defendants failed to pay overtime to all live-in aides. In addition, not all employees who were paid less than what they were owed need to testify in order for all employees to receive back wages.

The law does not require or set a precise percentage of employees who must testify in order for the Secretary to prove an FLSA overtime violation through evidence about a representative sample of employees. Representative evidence can include testimony by employees, experts, and other individuals familiar with the employers' practices, as well as

documents, such as time and pay records. The weight of representative evidence is not necessarily determined by the number of witnesses who testify. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary. The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

IfOnce the Secretary satisfies her burden to show by a preponderance of the evidence that Defendants did not pay live-in aides for all of the overtime hours they worked, the Defendants may then rebut with evidence of the precise amount of work performed by live-in aides or with evidence to negate the reasonableness of the inferences to be drawn from the Secretary's evidence.

Weighing all of the evidence, you must determine whether it is more likely than not that live-in aides worked a greater number of hours than Defendants paid. In deciding this issue, you must consider only those live-in aides who worked more than 40 hours in a week, considering all the hours they worked, including any hours you find that they worked above those listed in Defendants' payroll records.

If you find that it is more likely than not that live-in aides did work additional overtime hours for which Defendants did not pay them, you must conclude that Defendants violated the FLSA's overtime requirement, and mark "Yes" under **Question #2** on your **Verdict Sheet**. You must then answer **Question #3** on your **Verdict Sheet,** which asks you to provide a numerical estimate of the approximate average number of hours live-in aides worked without pay in each 24-hour shift, which I will call "**Unpaid Hours.**" You will insert the number of **Unpaid Hours** in the blank underneath **Question #3**.

**Court Exhbit 3**

By contrast, if you find that it is more likely than not that live-in aides did not work additional overtime hours for which Defendants did not pay them, or that this issue is in balance or evenly divided between the Parties, you must conclude that Defendants did not violate the FLSA's overtime requirement and mark "No" under **Question #2** on your **Verdict Sheet**. Then, you must skip Question #3 and proceed directly to **Question #4**.

**10. Retaliation**

I now turn to the Secretary's **Retaliation Claim**.

Section 15(a)(3) of the FLSA~~Fair Labor Standards Act~~ protects from retaliation any current or former employee who, among other things, "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in such a proceeding . . . ." An employer can be liable for retaliation against a former employee even after the individual's employment has ended.

To prevail on the Retaliation Claim, the Secretary must prove the following three elements by a preponderance of evidence:

(1) that at least one employee engaged in protected activity known to one or more Defendants;

(2) that one or more Defendants took an adverse action against the employee; and

(3) that but for the protected activity by one or more employees, the Defendant(s) would not have taken adverse action against the employee(s).

It is not an element of the Retaliation Claim that there was a violation of the FLSA's overtime or recordkeeping requirements.

**Court Exhbit 3**

The Parties' dispute concerning the Retaliation Claim centers on Defendants' conduct in relation to asking former live-in aides to sign statements that could be used in this litigation. I will now define the elements of the Retaliation Claim that you will apply to resolve this dispute.

The first element concerns protected activity known to the employer. Protected activity includes sharing information with the DOL during ana FLSA action, including an investigation or court case. Protected activity is also established where an employer reasonably anticipates that an employee may share information with the DOL, provide a statement, or otherwise testify in an FLSA action, even if the employee never takes that action and even if the employer's belief is mistaken.

Formatted: No underline

The Secretary will meet her burden to prove protected activity if you find it more likely than not that Defendants were aware that one or more live-in aides provided information to DOL or agreed to testify in this lawsuit, or that Defendants reasonably anticipated that one or more live-in aides were about to do so.

Next, I will define the second element of the Retaliation Claim: adverse action. An adverse action is an employment action disadvantaging the person engaged in the protected activity. It includes any action that might well dissuade a reasonable worker from making or supporting similar charges, that is, engaging in protected activity. In other words, any action that may discourage an employee from exercising a right under the FLSA is an adverse action. An adverse action does not have to be an ultimate employment decision like being fired or subject to reduced hours or pay. An employer can engage in an adverse action by asking a current or former employee to sign a statement that contains conclusory language stating that the employee has no claim to overtime pay or misleading testimony about an FLSA claim. Adverse action can also involve making statements that lead an employee to believe they will face some negative

Formatted: No underline

action, such as a bad reference or blacklisting, that is, preventing an employee from getting future employment.

In deciding whether the Secretary has proven by a preponderance of evidence that Defendants took an adverse action against one or more live-in aides, you must determine whether Defendants' conduct might discourage a reasonable worker in the same situation as the former live-in aides from engaging in protected activity, such as sharing information with DOL or otherwise participating in this lawsuit.

Finally, I now define the third element of the Retaliation Claim: that but for the protected activity by one or more employees, the Defendant(s) would not have taken adverse action against the employee(s). The Secretary must prove by a preponderance of the evidence that the Defendant(s) would not have taken the adverse action against the employee except as a response to the protected activity. However, the Secretary does not need to prove that the protected activity of one or more live-in aides was the sole or exclusive reason for the adverse action. Nor does the Secretary have to disprove every other possible basis for Defendants' adverse action(s). The Secretary may establish this third element either indirectly by showing that the protected activity was closely followed by the adverse action or directly through evidence of Defendants' retaliatory animus directed against a former employee. If you find that Defendants would not have taken one or more adverse actions were it not for the protected activity concerning one or more live-in aides, that is enough to establish the third element.

**Formatted:** No underline

Here, Defendants have provided a non-retaliatory reason for the alleged adverse action. The Secretary may establish the third element by showing that the reasons Defendants have given for the alleged adverse action(s) are not the real reasons for their conduct. This is called

"pretext." Factors that you may consider when assessing whether an employer's stated reasons are pretext include, but are not limited to:

- whether the employer, at different times, has stated different or arguably inconsistent explanations for its actions; and
- whether there are weaknesses, implausibilities, incoherencies, or contradictions in the employer's stated reasons for its actions.

In assessing why Defendants took the actions they did, you may examine their actions and words, and all of the surrounding circumstances. In doing so, you may draw reasonable inferences from the facts in evidence. An employer's reason need not be based on a falsehood to be pretextual. Even a true fact put forward by the employer as a reason for taking an action may be pretext for retaliation if that fact was not the real reason for the employer's action.

If you find Defendants' reasons for their conduct while soliciting declarations from live-in aides to be pretextual, that is, they were not the real reasons for the decision, then you may infer, or not infer, as you choose, that the pretext was designed to conceal retaliation for protected activity by one or more live-in aides. In resolving the third element of the Retaliation Claim, for the purposes of determining whether Defendant Searene is liable, you may consider whether an agent is acting, explicitly or implicitly, upon the orders of a superior who has the required knowledge.

With respect to the Retaliation Claim, you must consider the Secretary's claim against each Defendant separately. Liability on this specific claim is individual. In reaching a verdict on the Retaliation Claim, you must bear in mind that each Defendant is to be considered separately solely on the evidence, or lack of evidence, presented against that Defendant without regard to the liability of the other Defendant.

**Court Exhbit 3**

If you find that the Secretary has proven each element of the Retaliation Claim by a preponderance of evidence, then you must find for the Secretary on this claim and mark "Yes" in response to **Question #4** on your **Verdict Sheet**. You must also provide a check mark next to the name of each Defendant who you find engaged in retaliation. If you find that both Defendant Saerene and Defendant Manolias engaged in retaliation, you may place a check mark next to each of their names.

If you find that the Secretary has not proven each element of the Retaliation Claim by a preponderance of the evidence, then you must find for Defendants on this claim and mark "No" in response to **Question #4** on your **Verdict Sheet**. In that case, you will not place any check mark next to the name of either Defendant.

**11. Punitive Damages**

If you find for the Secretary on the Retaliation Claim, you may also award punitive damages. You are not required to do so. The purpose of punitive damages is not to compensate live-in aides. Punitive damages are awarded, in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent Defendants, and others like them, from committing such acts in the future. You should consider each Defendant's conduct as to the Retaliation Claim separately.

The Secretary has the burden of proving by a preponderance of the evidence that punitive damages should be awarded. You may award punitive damages if you find that the conduct by one or both Defendants that constituted retaliation against one or more live-in aides was done with either malice or reckless indifference to the rights of live-in aides' to share information with the DOL and to otherwise participation in this FLSA action, or if you find that the retaliatory

conduct otherwise constituted outrageous conduct. An act or failure to act is maliciously done if it is prompted by ill will or spite toward the injured person. The Secretary has the burden of proving, by a preponderance of the evidence, that a D~~d~~efendant acted with malice or with reckless indifference to the rights of live-in aides’ under the FLSA~~Fair Labor Standards Act~~, or that any retaliatory conduct was otherwise “outrageous.”

An award of punitive damages is discretionary; that is, if you find the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

The Secretary also has the burden of proving the amount of punitive damages that should be awarded. If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes I stated a few minutes ago, but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the conduct of the Defendant or Defendants, including whether there was deceit, cover-up, insult, intended or reckless injury, whether the D~~d~~efendants’~~s~~ conduct was motivated by bias, prejudice, or by a desire to obtain some type of benefit or profit, and whether the conduct that harmed the employee was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish a Defendant for harm to anyone other than an employee in this case.

You may impose punitive damages against one of the Defendants and not the other. You may also award different amounts against different Defendants.

**Court Exhbit 3**

If you decide to award punitive damages, please answer **Questions #5** and **#6** on the Verdict Sheet.

## III. CLOSING INSTRUCTIONS

I have outlined for you the rules of law applicable to this case, the process by which you weigh the evidence and determine the facts, and the legal elements which must be provend by a preponderance of the evidence. In a few minutes you will retire to the jury room for your deliberations. I will now give you some general rules regarding your deliberations.

Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think your verdict should be. That is entirely for you to decide.

By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case from the evidence presented during the trial and to apply the law as I have given it to you. Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, not on anything else.

### 1. Selecting a Foreperson

In order for your deliberations to proceed in an orderly fashion, you must have a foreperson. The custom in this courthouse is for Juror No. 1 to act as the foreperson. However, if, when you begin deliberations, you decide that you want to elect another foreperson, you are entitled to do so. The foreperson will be responsible for signing all communications to the court and for handing them to my Courtroom Deputy during your deliberations. But, of course, the foreperson's vote is entitled to no greater weight than that of any other juror.

**Court Exhbit 3**

**2. Note Taking**

During the trial, I permitted the taking of notes by those of you who wished to do so. At that time, I pointed out that while you could take notes, there is no need for your doing so, because the court reporter takes down everything that is said in the courtroom.

For those of you who did take notes during the trial, I point out to you and your fellow jurors that your notes are simply an aid to memory for the particular juror who takes the notes. You are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in your deliberations. Jurors who did not take notes should not be influenced by the fact that other jurors have taken notes. Your notes are not evidence, may be inaccurate, and are by no means a complete recording of the trial testimony. If you have any doubt as to the testimony, you may request that the official trial transcript of these proceedings be read or otherwise provided to you.

Formatted: Normal

**~~2.~~3. Communication with the Court**

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching on this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me, you may send a note, through my Courtroom Deputy, signed by your foreperson. No member of the jury should attempt to communicate with me except by a signed writing, and I will never communicate with any member of the jury on any subject touching upon the merits of the case other than in writing, or orally here in open court.

**Court Exhbit 3**

**~~3.~~4. Juror's Recollection Governs and Requests for Trial Testimony**

Your recollection governs. Nobody else's. If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should find yourself in doubt concerning my instructions to you on the law, you may request that a witness's or witnesses' testimony, or portions thereof, be sent back to you in the jury room. Again, you may make such a request by a note to my Courtroom Deputy. I suggest, however, that you be specific to avoid receiving testimony that you do not want or need. Describe as best and precisely as you can what you want to hear and be patient because it sometimes takes a while to find the testimony in the record.

**~~4.~~5. Deliberations and Unanimous Verdict**

Your duty is to reach a fair conclusion from the law and the evidence. It is an important one. When you are in the jury room, listen to each other, and discuss the evidence and issues in the case amongst yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and conscience. While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper deference to, and regard for, the opinions of your fellow jurors.

You should not hesitate to reconsider your opinions from time to time and to change them if you are convinced they are wrong. However, do not surrender an honest conviction as to the weight and effect of the evidence simply to arrive at a verdict.

The decision you reach must be unanimous; you must all agree.

**Court Exhbit 3**

When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict. Do not indicate what the verdict is. In *no* communication with the Ccourt should you give a numerical count of where the jury stands in its deliberations.

Remember in your deliberations that the dispute between the Pparties is, for them, no passing matter. They and the Court rely upon you to give full and conscientious deliberation and consideration to the issues and evidence before you. By so doing, you carry out to the fullest your oaths as jurors to well and truly try the issues of this case and render a true verdict.

Formatted: Font color: Auto

**5.6. Verdict Forms**

Once you have reached your verdict, you will record your decisions on the Verdict Sheets that I have prepared for you. You should proceed through the questions in the order in which they are listed. The foreperson should complete the Verdict Sheet, date it, and sign it. Then theThe foreperson should alert the Court Room Deputy by pushing the jury button and handingthen give a note to the Court Room Deputy or a member of my staffSecurity Officer outside your door stating that you have reached a verdict. Do not specify what the verdict is in your note. The foreperson should keep the Verdict Sheet until I ask for it. You must all be in agreement with the verdict that is announced in court.

***

Formatted: Centered, Indent: First line: 0"

Jurors, all litigants stand equal in this room. All litigants stand equal before the bar of justice. All litigants stand equal before you. Your duty is to decide the issues before you fairly and impartially. You must make a fair and impartial decision so that you will arrive at a just verdict.

**Court Exhbit 3**

Your oath sums up your duty, and that is this: without fear or favor to any person, you will well and truly try the issues in this case according to the evidence given to you in court and the laws of the United States.

This concludes my instructions. Thank you for your close and careful attention.

**Court Exhbit 3**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lori Chavez-DeRemer, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>-v-<br><br>Sarene Services, Inc. d/b/a Serene Home Nursing Agency; Irene Manolias, Individually,<br><br>Defendants. | 2:20-cv-3273<br>(NJC) (ST) |

**VERDICT FORM**

- All jurors must agree on the answers to all of the questions.
- Jurors must answer the questions in the order they are presented.
- Terms defined in the Jury Instructions appear **Capitalized and Bold**.

**ISSUE #1: Fair Labor Standards Act Recordkeeping Claim**

1. Did Plaintiff prove by a **Preponderance of the Evidence** that Defendants did not make or keep records of all hours that **Live-in Aides** worked at any time during the relevant time period?

**CHECK ONLY ONE:** **YES ☐** **NO ☐**

**Please proceed to Question 2**.

**Court Exhbit 3**

**ISSUE #2: Fair Labor Standards Act Overtime Claim**

Consider only **Live-in Aides** who worked more than 40 hours in a week.

2. Did Plaintiff prove by a **Preponderance of the Evidence** that Defendants failed to pay **Live-in Aides** for all the overtime hours they worked?

   **CHECK ONLY ONE: YES ☐ NO ☐**

**If you answered "Yes," please proceed to Question 3.**
**If you answered "No," please skip Question 3 and proceed to Question 4.**

3. How many **Unpaid Hours**, as an approximate average, did **Live-in Aides** work per 24-hour shift during the relevant time period?

   FILL IN THE NUMBER: ______

**Please proceed to Question 4.**

**ISSUE #3: Fair Labor Standards Act Retaliation Claim**

4. Did Plaintiff prove by a **Preponderance of the Evidence** that Defendant(s) retaliated against one or more **Live-in Aides**?

   **CHECK ONLY ONE: YES ☐ NO ☐**

**If you answered "Yes," please identify the Defendant(s) who retaliated:**

Defendant Serene ☐
Defendant Irene Manolias ☐

**If you answered "Yes" to Question 4, please proceed to Question 5.**
**If you answered "No" to Question 4, you are done. Please proceed to the end of this sheet.**

5. Did Plaintiff prove by a preponderance of the evidence that Live-in Aides are entitled to punitive damages for retaliation?

   **CHECK ONLY ONE: YES ☐ NO ☐**

**If you answered "Yes" to Question 5, please proceed to Question 6.**
**If you answered "No" to Question 5, you are done. Please proceed to the end of this sheet.**

**Court Exhbit 3**

6. If you answered "Yes" to Question 5: Please indicate the amount of punitive damages appropriate to deter the Defendant(s), and others like them, from committing similar acts in the future:

Defendant Serene: $_________________

Defendant Irene Manolias: $_________________

**You are finished.**
**The foreperson should ensure that each juror agrees with the answer to each question.**
**If so, the foreperson should date and sign below.**

Dated: ________, 2025

Foreperson's Signature

_________________________