UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

LORI CHAVEZ-DEREMER, Secretary of Labor,       :
United States Department of Labor,

                                                      :

                     Plaintiff,

               v.                             :   Civil Action No. 20-cv-03273
                                             (NJC) (ST)

SARENE SERVICES, INC. d/b/a SERENE HOME       :
NURSING AGENCY, and IRENE MANOLIAS,
Individually,

                                               :

                    Defendants.
-------------------------------------------------------------------   :

## THE SECRETARY OF LABOR'S POST-HEARING BRIEF REGARDING DEFENDANTS' "GOOD FAITH" DEFENSE TO LIQUIDATED DAMAGES

JONATHAN L. SNARE
Acting Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

B. CARINA DE LA PAZ
HOLLIS V. PFITSCH
Trial Attorneys

U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel: 646.264.3654/3667

*Attorneys for Plaintiff,*
*Secretary of Labor*

**Filed September 30, 2025**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iii-iv

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................ 3

ARGUMENT ...................................................................................................... 10

I.    Defendants did not take "active steps" to ascertain the requirements of the FLSA .... 10

    A.    Serene made no attempt to ascertain the FLSA-specific requirements for employers of live-in home health aides........................................... 11

    B.    Serene's reliance on industry norms and generalized human resources guidance is insufficient to establish good faith..................................... 12

    C.    Defendants presented no evidence of efforts to obtain relevant, specific legal advice about Serene's FLSA compliance ...................................... 13

II.   Defendants did not "move to comply" with the FLSA ................................... 14

III.  Defendants' conduct was not objectively reasonable .................................... 16

    A.    Defendants' practice of deducting full sleep and meal periods from all live-in aides' pay every shift was not reasonable........................................ 16

    B.    Defendants' conduct was unreasonable because Serene failed to follow its own supposed policies ........................................................................ 17

    C.    Defendants' conduct was unreasonable because they did not follow the policies which they claim to have developed to comply with New York State Labor Law ........................................................................... 20

    D.    Defendants' conduct shows bad faith ............................................... 21

CONCLUSION ................................................................................................. 21

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                         <u>Page(s)</u>

*Acosta v. Lifetime Living, Inc.*,
    2020 WL 10758976 (S.D. Tex. June 4, 2020)........................................................16

*Andryeyeva v. New York Health Care, Inc.*,
    33 N.Y.3d 152, 124 N.E.3d 162 (2019).................................................................21

*Bowrin v. Catholic Guardian Soc.*,
    417 F. Supp. 2d 449 (S.D.N.Y. 2006)..........................................................2, 13, 14

*Chavez-Deremer v. Med. Staffing of Am., LLC*,
    147 F.4th 371 (4th Cir. 2025).................................................................................14

*Chen v. Glow Asian Food, Inc.*,
    2023 WL 2613834 (E.D.N.Y. Mar. 23, 2023)......................................................2, 15

*Debejian v. Atl. Testing Lab'ys, Ltd.*,
    64 F. Supp. 2d 85 (N.D.N.Y. 1999)........................................................................14

*Dep't of Lab. v. Americare Healthcare Servs., LLC*,
    762 F. Supp. 3d 666 (S.D. Ohio 2025)...................................................................12

*Dole v. Solid Waste Servs., Inc.*,
    733 F. Supp. 895 (E.D. Pa. 1989)....................................................................12, 16

*Elghourab v. Vista JFK, LLC*,
    818 F. App'x 63 (2d Cir. 2020)...............................................................................13

*Harold Levinson Assocs., Inc. v. Chao*,
    37 F. App'x 19 (2d Cir. 2002).................................................................................16

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999)........................................................................1, 10, 15

*Martineko v. 212 Steakhouse, Inc.*,
    2024 WL 3928849 (S.D.N.Y. Aug. 13, 2024)........................................................13

*McKinney v. Med Grp. Transp. LLC*,
    988 F. Supp. 2d 993 (E.D. Wis. 2013)...................................................................11

*Mummert v. Vencor Inc.*,
    21 F. App'x 710 (9th Cir. 2001)..............................................................................17

*Nqadolo v. Care at Home, LLC*,
    2025 WL 2432612 (D. Conn. Aug. 22, 2025).........................................................16

*Rafter v. Everlast Sign & Serv. Inc.*,
   2025 WL 2240446 (E.D.N.Y. Aug. 6, 2025).............................................................14

*Ramirez v. Lin*,
   830 F. App'x 672 (2d Cir. 2020)..................................................................2, 15

*Randolph v. PowerComm Const., Inc.*,
   309 F.R.D. 349 (D. Md. 2015).....................................................................14

*Reich v. S. New England Telecomm. Corp.*,
   121 F.3d 58 (2d Cir. 1997)...................................................................Passim

*Reich v. S. New England Telecomm. Corp.*,
   892 F. Supp. 389 (D. Conn. 1995)...........................................................15, 17

*Serrano v. Repub. Servs., Inc.*,
   2017 WL 2531918 (S.D. Tex. June 12, 2017).................................................11

*Young v. Cooper Cameron Corp.*,
   2006 WL 1562377 (S.D.N.Y. June 6, 2006)..............................................10, 12

<u>Regulations</u>

29 C.F.R. § 516.2....................................................................................7

29 C.F.R. § 552.102..............................................................................1, 7

29 C.F.R. § 552.110(b)..............................................................................7

29 C.F.R. § 785........................................................................................7

# INTRODUCTION

After three weeks of trial in April 2025 and a separate hearing on "good faith" on September 4, 2025 ("Sept. 4 Hearing"), Defendants' cursory presentation of evidence failed to meet their "difficult" burden to avoid liquidated damages. *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999).

CEO Irene Manolias's testimony failed to provide any support that Defendants acted with objective or subjective good faith. While she acknowledged her responsibility for Serene's compliance with the Fair Labor Standards Act ("FLSA") and claimed that Serene took compliance measures, her vague testimony entirely failed to substantiate those claims. Instead, Manolias was confronted with her prior admission that she did not look into the FLSA requirements for live-in aides[1] when Serene began providing live-in services in 2016, and her prior statements that federal law concerning live-in aides "did not exist." Hearing Transcript dated Sept. 4, 2025 ("LD Tr.") 52:5-7; 55:7-13; 75:3-22. Former Serene executive Craig Hoffman, who oversaw the H.R. Department during the relevant time period, also provided only vague testimony about overseeing Serene's compliance generally. LD Tr. at 113-125. Such general compliance efforts are not the "active steps" an employer must take to ascertain specific FLSA requirements needed to establish a good faith defense. *RSR*, 172 F.3d at 142.

Defendants also provided no evidence that they relied on specific legal advice about the FLSA even though Manolias claimed that Serene eventually contracted with legal counsel to consult about wage-and-hour compliance "after 2019," after the U.S. Department of Labor ("Department") began its investigation. LD Tr. at 90:9-15. Notably, while Defendants originally

---

[1] The Secretary assumes without conceding that all Serene's aides were "live-in domestic service employees" without waiving the right to challenge whether they properly met the definition in 29 C.F.R. § 552.102.

1

listed three purported advisors as trial witnesses, none of those individuals appeared to testify. ECF No. 299-1, at 1-2. Moreover, Defendants presented absolutely no details about the content, frequency, or timing of alleged consultations with these individuals, and nothing at all to show that Defendants received legal guidance related to their specific policies and practices for live-in aides. *See, e.g.,* LD. Tr. at 39, 41, 50, 90, 102, 121-122 (testimony about attorney Emina Poricanin); *Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 473 (S.D.N.Y. 2006) (finding no good faith defense where employer testified to "conversations with counsel generally about coverage under the Act, [but did not] proffer evidence that it discussed in detail the nature of services provided," nor evidence "of conversations with counsel or work product from counsel on the [FLSA issue in dispute]").

As the jury trial record revealed, Defendants did not "move to comply" with the dictates of the law or act with the "objective reasonableness" required to show good faith. *Reich v. S. New England Telecomm. Corp. ("SNET"),* 121 F.3d 58, 70–71 (2d Cir. 1997). The jury found that Defendants violated the FLSA's recordkeeping requirements and failed to pay aides for an average of three additional hours worked in each 24-hour shift. ECF No. 284 (completed verdict sheet). Defendants' recordkeeping failure alone is sufficient to find that Defendants did not act in good faith. *E.g., Chen v. Glow Asian Food, Inc.*, 2023 WL 2613834, at *6 (E.D.N.Y. Mar. 23, 2023) (citing *Ramirez v. Lin*, 830 F. App'x 672, 675 (2d Cir. 2020)). But in addition, Defendants ignored aides' reports of working through breaks and sleep time and did not pay a single aide for this additional time worked in the entire relevant period of this case. *See, e.g.*, *infra* FN 3. Defendants' "utter failure" to comply with the law shows they did not act with "objective reasonableness." *SNET,* 121 F.3d at 70–71.

Defendants' spurious claims of good faith at the Sept. 4 Hearing only solidify the logical conclusion from the evidence presented to the jury: that Defendants lacked any "honest intention" to pay live-in aides for all their time worked, as required by the FLSA. *SNET,* 121 F.3d at 71. Thus, Defendants must pay $5,293,437.55—i.e. an amount equal to back wages owed—in liquidated damages. *See* ECF No. 302.

## BACKGROUND

### *Relevant Evidence from Sept. 4 Hearing*

Defendants presented two witnesses at the Sept. 4 Hearing: Chief Executive Officer Irene Manolias and former Chief Operating Officer Craig Hoffman. As CEO Irene Manolias testified, when Serene became a licensed homecare service agency in 2009, it did not employ any home health aides. LD Tr. at 11:11-19. In 2013, Serene began the process of requesting to expand its license so that it could provide home health aide services. LD Tr. at 11:23-12:5. During that process, Serene submitted various policy materials related to patient care and aide supervision to the New York State Department of Health ("NYS DOH"). LD Tr. at 12:6-13:13. Manolias testifed that she prepared the materials required for expanding Serene's license herself, with *ad hoc* assistance from a consultant named Julie Anunziata. LD Tr. at 14:13-20. For example, Anunziata assisted with the creation of the Aide Activity Sheet that Serene utilized to track live-in aides' shifts from at least March 2017 to April 2019. LD Tr. at 38:1-11. Anunziata was a former NYS DOH employee, not an attorney. LD Tr. at 14:18-20; 89:14-16. Accordingly, Manolias conceded that Anunziata's role was limited to helping Serene have "policies and procedures sufficient to be approved by the [NYS DOH]." LD Tr. at 10:1-4.

Since at least March 2017 and through February 2019, before the Department began investigating Defendants, Serene compensated live-in home health aides for a set 12.5 hours of

work per 24-hour shift. *E.g.*, ECF No. 262 (stipulation). Manolias conceded that Serene paid aides this way because of the manner in which insurance companies reimbursed Serene for live-in aide services, and the fact that she saw some home health agencies paying 13 hours per shift and others paying 12 hours per shift. LD Tr. at 66:16-25. Serene paid 12.5 hours per shift: "in the middle." LD Tr. at 68:6-10.

Manolias acknowledged her personal responsibility for Serene's compliance with the FLSA. LD Tr. at 52:5-7. She testified to only nominal efforts to learn about the FLSA, such as attending seminars that "include[d] wage and hour requirements" and utilizing ADP as Serene's payroll company. LD Tr. at 49:10-25. However, she was also confronted with her prior deposition testimony that she did not look into the FLSA's requirements for live-in home health aides when Serene started employing them, LD Tr. at 52:5-7; 55:7-13, and that she did not follow federal law, LD Tr. at 75:3-22 ("…and if you're asking me if I follow federal law with regard to this, that doesn't exist, no, I didn't. I only followed the laws of my state where regulations do exist"). As late as 2022, Manolias believed that "there is no federal law on recordkeeping for live-in aides." LD Tr. at 75:12-13.

Defendants also presented only conclusory information about other Serene personnel who purportedly played a role in ascertaining the requirements of the FLSA. Specifically, in January 2018, Serene hired Craig Hoffman as Chief Operating Officer and human resources manager. LD Tr. at 113:5-8; *see also id*. at 42:2-4. He explained that his responsibilities included "day-to-day operations," customer relations, and staff development. LD Tr. at 113:18-24. Hoffman's responsibilities did not include payroll, however, and he could not recall "having any direct conversations" about how Serene should pay live-in aides with any Serene staff. LD Tr. at 117:2-

19. Payroll handled the payments to aides, and Hoffman "did not see any of the time cards for aides" and was "not aware if anything was not being done correctly." LD Tr. at 117:6-8.

Before working for Serene, Hoffman worked in various human resource management roles, first for Allstate Insurance and then for Stericycle Incorporated, a waste management company. LD Tr. at 111:22-12:10. Hoffman had no prior experience in the homecare industry, however, and no experience with the FLSA requirements specific to homecare workers. LD Tr. at 116:18-23. During his employment with Serene, the only step Hoffman took to consult the federal and state departments of labor about Serene's compliance with applicable laws was to review publicly available materials on government websites. LD Tr. at 115:6-9; 123:3-13; 124:1-9. Notably, Hoffman could not specify any materials he consulted on these websites, LD Tr. at 123:7-10, and did not describe any particular issues he researched concerning live-in aides. Hoffman testified generally to consulting the Society of Human Resources Management website and chatrooms about "just about anything that pertains to HR," LD Tr. at 124:12-125:2, but could not recall the names of any individuals he consulted using the chat function or whether he even used that function to request information about specific policies related to Serene live-in aides. LD Tr. at 125:6-24.

In November 2018, Serene also hired Ira Podlofsky. LD Tr. at 90:16-22. Podlofsky had previously provided personal legal advice to Manolias on personal injury and risk management matters, LD Tr. at 91:1-9, and was not a labor attorney. LD Tr. at 99:12-15. In fact, at the time Serene hired him, Manolias admitted she was aware that Podlofsky's New York State bar license had been suspended in October 2018. LD Tr. at 100:7-23. Accordingly, she also admitted that Defendants never consulted Podlofsky about issues related to employee pay, timekeeping requirements, or recordkeeping requirements. LD Tr. at 99:9-18; 101:12-16.

In March 2019, the New York State Court of Appeals issued a decision in *Andryeyeva v. New York Health Care, Inc.*, a state court case that Ms. Manolias was following. LD Tr. at 44:4-45:4. Soon after the decision was issued, in April 2019, Serene revised its Aide Activity Sheets to add a section titled HHA/PCA Personal Care and Sleep Allotment. LD Tr. at 120:2-7. Hoffman, who helped Manolias create the mid-2019 sheets, LD Tr. at 118:9-19:15, stated that the revision was prompted by the state court's finding that live-in aides would not need to be compensated for *all 24 hours* spent in a patient's home each 24-hour shift. LD Tr. at 120:8-17. Also in 2019, and following the Department's investigation into Serene's pay practices, Serene began compensating live-in aides for a set 13 hours of work—and no more—per 24-hour live-in shift. *See, e.g.*, *infra* FN 3; ECF No. 262 (stipulation).

Manolias testified that Serene entered into a contract with a labor lawyer named Emina Poricanin sometime "in either 2019 or '20" to provide consultation services on an *ad hoc* basis. LD Tr. at at 41:21-22; *see also id.* at 90:9-15 (noting that contract with Poricanin was "after '19"). Poricanin was never Serene's in-house counsel. LD Tr. at 90:4-8. Notably, Manolias did not provide any specific examples of times when Serene personnel availed themselves of Poricanin's services. *See, e.g.,* LD. Tr. at 39, 41, 50, 90, 102, 121-122. Defendants also did not introduce any exhibits of any kind related to Poricanin, such as documents corroborating the existence of this contract, the parameters of her services, or advice provided. *See id.* Hoffman, for his part, could not recall any conversations with Poricanin during his employment at Serene, LD Tr. at 122:2-6, which lasted until December 2019. LD Tr. at 113:5-8.

## *Relevant Evidence from April Jury Trial*

Despite the purported compliance efforts Defendants claimed to have taken when testifying at the Sept. 4 Hearing, and as the jury concluded, Defendants violated the FLSA by failing to keep appropriate records and by failing to pay live-in aides for all hours worked.

First, Defendants' many shifting recordkeeping systems never captured all the time that live-in aides worked.[2] In particular, Defendants never had any method in place to capture the time aides worked during the 8-hour sleep period and 3 hours of meal periods that Serene deemed non-compensable for every shift worked by every live-in aide. First, Defendants used Aide Activity Sheets that required aides to sign off on completed tasks but did not track the time it took an aide to do any task. Trial Transcript ("Trial Tr.") at 549:19-25 (K. Manolias). Defendants relied on these sheets to keep track of the days aides worked. Trial Tr. at 550:1-4 (K. Manolias). But for two years of the relevant time period, the sheets had no instructions requiring aides to report time worked during sleep or meals. Trial Tr. at 552:21–553:6 (K. Manolias). In fact, many sheets did not contain any information about hours worked at all, just noting "live-in." Trial Tr. at 919:13–922:6 (K. Manolias) (referencing PX-7C at 70-74, 82). Even when Defendants amended the sheets to direct aides to confirm that they had obtained sleep and meal time, the amended sheets did not have a section for hours worked at all, and did not track any time worked during sleep and meal periods. Trial Tr. at 923:4–924:4 (K. Manolias); 1355:3-11 (K. Manolias). The sheets also had no instruction to aides to record the time worked during their breaks. Trial Tr. at 924:20-925:17 (K.

---

[2] The FLSA's recordkeeping requirements require that employers of live-in aides "make, keep, and preserve a record showing the **exact number of hours worked** by the live-in domestic service employee." 29 C.F.R. § 552.110(b); *see also* 29 C.F.R. § 516.2; 29 C.F.R. § 552.102 (If the sleeping time, meal periods or other periods of free time are interrupted by a call to duty, **the interruption must be counted as hours worked**.) (emphasis added); *see also* 29 C.F.R. §§ 785, 785.23.

Manolias); 1076:21–1077:2 (K. Manolias); 1354:1-14 (K. Manolias). Then, when Defendants used an electronic clock-in system, that system similarly required aides to sign off on completed tasks, but did not track the time it took aides to perform any particular task. Trial Tr. at 1360:3–1361:6 (K. Manolias). Defendants directed aides to report interruptions to sleep time or meal periods using codes 444 and 555, but the system did not track the time or duration of those interruptions. Trial Tr. at 1734:3-6, 11-19 (T. Stauber). Defendants soon abandoned that system and disregarded the data it generated but continued to direct aides to use codes 444/555 for years. Trial Tr. at 1733:10–1734:2; 1736:5–1738:6, 1741:7-25 (T. Stauber).

Second, as the jury concluded, Defendants knew that aides did work unpaid hours and failed to pay them for that work. ECF No. 284 at 2 (completed verdict sheet); 282 at 29 (jury instruction regarding employer knowledge). Defendants knew about this work because even though Defendants had no formal system to capture the time aides worked during sleep and meal periods, aides reported that work, sometimes through notes on their Aide Activity Sheets or through electronic clock-in systems like HHAeXchange, other times through phone calls referenced in Defendants' records—i.e., Skype messages and call logs. Regardless of form, Defendants ignored those reports, as demonstrated both through Defendants' witnesses' admissions and Defendants' payroll showing Defendants never paid an aide more than 12.5 or 13 hours per 24-hour shift in any part of the relevant time period.

For example, Serene's managerial witnesses repeatedly admitted aides were not paid any additional compensation each time they were asked to testify about documents that showed an aide reporting that they were working at night, or through breaks. Trial Tr. at 918:24–919:12 (K. Manolias) (referencing PX-7C at 57 where an aide noted working 15 hours per day on her sheet, for a total of 105 hours, and sheet also indicated aide was paid only 87.5 hours for the week);

1607:3–1610:6 (T. Stauber) (referencing PX-13 at 9, where an aide reported to Serene being woken up every night by her patient, and admitting the aide was not paid more for those interruptions); 2228:4–2235;4; 2238:5-2239:2; 2241:7-2242:11, 2298:8–2300:15 (I. Manolias) (referencing PX-7C at 605; PX-47, where an aide reported to Serene "wake up at night and sleep daytime," admitting Serene did nothing after receiving the time sheet and the aide was not paid for any additional time worked).[3] *E.g.*, Trial Tr. at 2427:14-15, 18-20; 2431:11-15; 2432:21-2433:4; 2437:17-2438:12; 2438:24-2439:20 (Wage and Hour Division Investigator Nicole Stahl ("Stahl") testifying that payroll records show 12.5 or 13 hours paid for each shift, depending on the time period, and no more); 2612:10-22 (Stahl testifying she reviewed all Serene's payroll from March 2017 to December 2020). The trial evidence made clear that Defendants' practice was to pay a set amount of hours regardless of actual hours worked.

---

[3] *See also, e.g.,* Trial Tr. at 935:20–939:24 (K. Manolias) (referencing PX-7C at 603; PX-30, where an aide reported she received no sleep for six of seven shifts, but admitting the aide was not paid more for that pay period); 1610:11–1611:24 (T. Stauber) (referencing PX-13 at 2, where a patient's family member reported to Serene that an aide wasn't sleeping due to the patient's dementia, and admitting the aide was not paid more for those interruptions); 1620:9–1624:24 (T. Stauber) (referencing PX-13 at 59, 81; PX-34; PX-35, where aides reported working during breaks, and admitting they were not paid for the time); 1631:17-1635:15 (T. Stauber) (referencing PX-14 at 17, 18; PX-36; PX-37, where aides reported accompanying their patients to the hospital in the middle of the night, and admitting those aides were not paid more for that pay period); 1725:25–1729:1 (T. Stauber) (referencing PX-15 Excerpts at 1; PX-38, where an aide reported not sleeping during the night due to her patient's care needs, and admitting she was not paid more for that pay period); 1729:5–1732:15 (T. Stauber) (referencing PX-15 Excerpts at 1; PX-39; PX-41, where an aide reported interruptions to her breaks, and admitting the aide was not paid more for that pay period); 2300:17–2308:11; 2310:3-2312:9; 2315:24-2316:2 (I. Manolias) (referencing PX-7C at 640; PX 45, where aide circled "no" for sleep on her aide activity sheet, admitting Serene did nothing after receiving the time sheet and the aide was not paid extra).

## ARGUMENT

The Second Circuit describes the burden to show the good faith required to avoid liquidated damages as "a difficult one to meet." *SNET,* 121 F.3d at 71 (internal quotations omitted) "Double damages are the norm, single damages the exception . . ." *Id*. Here, Defendants did not make the required showing that they took "active steps to ascertain the dictates of the FLSA and then move[d] to comply with them." *Id.*; *RSR*, 172 F.3d at 142. In fact, Defendants did not provide *any* evidence, let alone the required "plain and substantial evidence" that they acted in "subjective good faith and [with] objective reasonableness" in the conduct that led to their violation of one of the FLSA's most basic requirements: to pay for all hours worked. *SNET*, 121 F.3d at 70-71. (internal quotations omitted).

### I.    Defendants did not take "active steps" to ascertain the requirements of the FLSA.

Defendants' own testimony revealed that they failed to make adequate attempts to ascertain the requirements of the FLSA for "live-in" aides in any part of the relevant time period of March 2017 to December 2020. To prevail on a good faith defense, "it is insufficient for the employer merely to show that it harbored an employee with knowledge of the FLSA in general. Rather, the employer must show at a minimum that it undertook to apply the FLSA's requirements to the particular job at issue." *Young v. Cooper Cameron Corp.*, 2006 WL 1562377, at *9 (S.D.N.Y. June 6, 2006), *report and recommendation adopted*, 2007 WL 2809871 (S.D.N.Y. Sept. 26, 2007).

Here, Defendants made no attempt to understand the FLSA when first expanding services to include live-in aides or any time thereafter, purportedly focusing on compliance with New York State Labor Law and Department of Health regulations instead. In addition, Defendants took no active steps to obtain legal advice on the requirements of the FLSA, relying on other businesses in the industry and general guidance—i.e., guidance not specific to Serene—from payroll companies and human resources associations. None of these steps qualify as good faith. Defendants claimed

to have retained counsel on an *ad hoc* basis for consultation on labor issues after the Department's investigation began but provided no evidence that any such consultations actually occurred during the relevant time period. Such meager claims fail to demonstrate the required "active steps."

A. <u>Serene made no attempt to ascertain the FLSA-specific requirements for employers of live-in home health aides.</u>

CEO Irene Manolias's testimony revealed a singular focus on New York State Department of Health requirements for home health agencies, and to a lesser extent New York labor law. Her most detailed testimony described preparing for certification as a licensed home health agency, preparing policy documents for review by the NYS DOH, and consulting with a former NYS DOH employee, Julie Anunziata, for assistance with Serene's first aide activity sheet for live-in aides. *E.g.*, LD Tr. at 5:1-10:14. Manolias also testified that Serene focused its compliance solely on state law because "New York State labor law encompasses federal law." LD Tr. at 69:7-13.

These details do not help Defendants' case. Reliance on other laws does not establish a good faith defense, even if there is an understanding that the law at issue may be congruent with federal law. *E.g., McKinney v. Med Grp. Transp. LLC*, 988 F. Supp. 2d 993, 1004 (E.D. Wis. 2013) (finding employers' reliance on state determination of worker classification because the state is required to be consistent with the FLSA was not objectively reasonable and was not a basis to avoid liquidated damages); *Serrano v. Repub. Servs., Inc.*, 2017 WL 2531918, at *15 (S.D. Tex. June 12, 2017) ("The testimony that a legal opinion on California law gave [employer] an impression of compliance with federal law is not sufficient to demonstrate an affirmative effort to comply [with the FLSA]."). Here, the New York State Court of Appeals decision in *Andryeyeva*, which Manolias claimed to have followed closely, should have given her "pause" and reason to inquire into the FLSA. *See id.* (noting that California requirements should have given employer "pause" and desire to investigate differences between California law and the FLSA).

11

In addition, to the extent that Manolias attempted, at the Sept. 4 Hearing, to imply that Serene's Human Resources and Payroll staff had failed to monitor the law or made mistakes which led to Serene's FLSA violations, *e.g.*, LD Tr. at 104:18-21, this blame game only highlights Defendants' culpability. Attempting to "hang responsibility for a flagrant violation on lower level employees" does not show good faith. *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 931–32 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990), and *aff'd sub nom. Appeal of Solid Waste Servs., Inc.*, 897 F.2d 524 (3d Cir. 1990) (rejecting a good faith defense that relied in part on "a unilateral move on the part of the payroll clerk"). Thus, Defendants cannot meet their substantial burden "by shifting the blame to others to keep them apprised of the law." *Dep't of Lab. v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 697–98 (S.D. Ohio 2025).

### B. Serene's reliance on industry norms and generalized human resources guidance is insufficient to establish good faith.

In lieu of seeking advice on the FLSA compliance of Serene's specific policies and practices, Defendants relied on publicly available, generalized information. For example, Manolias testified about purported efforts to stay up to date with general homecare industry practices, such as by attending webinars. *E.g.*, LD Tr. at 39:1-8. However, the seminars and webinars she attended were group events where Serene could not have received particularized guidance. *See* LD Tr. at 89:1-10. This sentiment was echoed by Hoffman's testimony about his membership in the Society of Human Resources Management ("SHRM") and consultation of other "industry organizations." LD Tr. at 115:8-14. In addition, Defendants' witness Kristi Manolias repeatedly tried to explain away Serene's practices by stating "it's an industry standard." Trial Tr. at 923:20; 924:1-2.

Generally "stay[ing] on top" of FLSA developments through seminars, publications, and discussions with experienced managers is not sufficient to establish good faith. *Young*, 2006 WL 1562377, at *9-10. Further, "reliance on an accountant or payroll provider does not qualify as an

12

'active step' to ascertain the dictates of the law . . ." *Martineko v. 212 Steakhouse, Inc.*, 2024 WL 3928849, at *25 (S.D.N.Y. Aug. 13, 2024) (collecting cases), *report and recommendation adopted sub nom. Martinenko v. 212 Steakhouse, Inc.,* 2024 WL 4275286 (S.D.N.Y. Sept. 24, 2024).

In addition, the Second Circuit has long rejected relying on industry standards as a good faith measure. *E.g., Elghourab v. Vista JFK, LLC*, 818 F. App'x 63, 67 (2d Cir. 2020) (summary order affirming district court's finding rejecting "industry norm" as adequate showing of good faith to avoid liquidated damages). *See also SNET*, 121 F.3d at 71 ("Were SNET's argument to carry the day, anytime an employer unintentionally violates an unsettled wage or hour provision of the FLSA, the employer would be acting in good faith so long as it acted in accord with prevailing industry practice and no employee had complained. Such a view is incompatible with the compensatory nature of liquidated damages under the FLSA."); *Bowrin*, 417 F. Supp. 2d at 474 ("acting 'in accord with prevailing industry practice' is insufficient to establish a good faith defense to liquidated damages") (internal citation omitted).

C. Defendants presented no evidence of efforts to obtain relevant, specific legal advice about Serene's FLSA compliance.

It is undisputed that Serene had no in-house counsel on staff throughout the relevant March 2017 to December 2020 period. LD Tr. at 90:4-8. Defendants also concede that Serene had no legal counsel whatsoever to "consult[] about employee pay or labor requirements" from 2017 to 2019. LD Tr. at 99:19-23. Defendants' alleged efforts to eventually consult with legal counsel are simply far too meager to constitute good faith, even assuming Manolias's testimony about those consultations is to be believed.

To establish good faith reliance on counsel's advice, an employer must show consultations that bear specifically on the policies and practices at issue. "Brief conversations with counsel, particularly where Defendants admit they did not ask any questions regarding their obligations

13

under or compliance with wage and hour laws, do not meet Defendants' burden." *Rafter v. Everlast Sign & Serv. Inc.*, 2025 WL 2240446, at *24 (E.D.N.Y. Aug. 6, 2025). *See also, e.g., Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 412  (4th Cir. 2025) (no good faith defense where "[employer's counsel] did not interview any of the [employees], did not visit any of the client facilities, and did not review any of [employer's] memoranda regarding best practices"); *Bowrin*, 417 F. Supp. 2d at 473-74 (general conversations with counsel about FLSA coverage insufficient); *Debejian v. Atl. Testing Lab'ys, Ltd.*, 64 F. Supp. 2d 85, 91–92 (N.D.N.Y. 1999) (rejecting good faith defense for lack of  proof showing extent of defendant's inquiry to counsel regarding FLSA requirements).

Here, Defendants provided no evidence – at all – of the subject matter of the alleged consultations and no information about the consultation process, such as whether counsel reviewed any documents, consulted Serene staff, interviewed employees, or provided any written guidance. In fact, Defendants failed to establish that any attorney provided any advice specific to Serene's actual practices. Such "vague and general" claims to have obtained legal counsel are "simply insufficient" as the measure of good faith required to avoid liquidated damages. *Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 365–66 (D. Md. 2015) (employers' "vague and general" recollection of legal advice did not establish good faith defense). Defendants' alleged attempts to get compliance assistance were too skimpy to qualify as "active steps" to ascertain the FLSA's requirements.

## II.  Defendants did not "move to comply" with the FLSA.

The jury verdict concluding that Defendants not only failed to pay live-in aides for all hours worked but also violated the FLSA's recordkeeping provision constitutes a finding that Defendants did not "move to comply" with the law, as required to show good faith. "This Circuit has

14

recognized that a failure to comply with record keeping requirements is sufficient to find an employer has failed to act in good faith." *Chen*, 2023 WL 2613834, at *6 (citing *Ramirez*, 830 F. App'x at 675).

As shown at trial, and detailed above, Defendants never recorded aides' actual time worked.[4] In particular, Defendants never had any method in place to track the time aides worked during the 8-hour sleep period and three 1-hour meal periods that Serene deemed non-compensable. Moreover, as the jury concluded, Defendants knew that aides did work unpaid hours and failed to pay them for that work. ECF No. 284 at 2 (completed verdict sheet); 282 at 29 (jury instruction regarding employer knowledge). Defendants knew about the unpaid work because aides reported it, sometimes through notes on their Aide Activity Sheets or through HHAeXchange, other times through phone calls captured in Defendants' records like Skype messages and call logs. Regardless of form, Defendants ignored those reports and never paid an aide more than 12.5 or 13 hours per 24-hour shift in any part of the relevant time period, again, as detailed above.

This complete indifference to aides' attempts to report unpaid time worked, compounded with Defendants' recordkeeping failure, shows that Defendants did not "move to comply" as required for a good faith defense. *E.g., Ramirez*, 830 F. App'x at 675 (stating "the fact that Lin had only minimal and unreliable records shows a failure to act to comply with the dictates of the law"; finding no good faith) (citing *RSR*, 172 F.3d at 142-43 (employer with "extensive knowledge of the FLSA's requirements" still liable where it "utterly failed to take the steps necessary to ensure [its] pay practices complied with the Act")). *See also Reich v. SNET.*, 892 F. Supp. 389, 403-405 (D. Conn. 1995), *aff'd*, 121 F.3d 58 (2d Cir. 1997) (employer failed to keep records of work

---

[4] *See* FN 2, *supra*.

employees performed during meal periods; finding no good faith); *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 23 (2d Cir. 2002) ("[D]efendants' utter failure to implement proper recordkeeping even after [an] investigation giving rise to [a] settlement [supports] the finding that the defendants' violations were willful and not rooted in a good faith reasonable belief that its practices complied with FLSA."). *Compare Nqadolo v. Care at Home, LLC*, 2025 WL 2432612, at *10–11 (D. Conn. Aug. 22, 2025) (good faith found where employer paid aide for sleep and break interruptions) *with Acosta v. Lifetime Living, Inc*., 2020 WL 10758976, at *10 (S.D. Tex. June 4, 2020) (no good faith where employer failed to pay for sleep interruptions and extra shifts). Because Defendants did not take "active steps" or "move to comply," they did not show subjective good faith.

### III. Defendants' conduct was not objectively reasonable.

The final consideration for a good faith defense is whether an employer's conduct was "objectively reasonable." *SNET,* 121 F.3d at 72. The trial record here is rife with evidence of the opposite and Defendants' testimony at the Sept. 4 Hearing did not alter the logical conclusion that Defendants did not act reasonably.

### A. Defendants' practice of deducting full sleep and meal periods from all live-in aides' pay every shift was not reasonable.

Defendants treated live-in aides' sleep and meal periods as non-compensable but did not track the time live-in aides worked during those periods. This practice is objectively unreasonable. *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 931–32 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990), and *aff'd sub nom. Appeal of Solid Waste Servs., Inc.*, 897 F.2d 524 (3d Cir. 1990) (rejecting good faith defense and stating: "The conclusion that defendants' conduct was objectively unreasonable is further supported by the practice of deducting lunch breaks regardless of whether

or not such breaks were taken without making an effort to ascertain whether employees were taking the breaks.").

Defendants' policies setting forth their requirements for live-in aides' work further expose the true nature of Defendants' conduct. Defendants' policies explicitly required live-in aides to work at all hours, including during breaks and sleep time. Requiring work – but failing to track the time employees spent performing that work – is a prototypical sign of a lack of good faith. *E.g, SNET*, 892 F. Supp. at 403-405 (finding employer's actions objectively unreasonable – and no good faith – where employer failed to track the time but required work during unpaid lunch periods). For example, Defendants' policies made live-in aides "responsible for the well-being of the patient at all hours." Trial Tr. at 543:14-17 (K. Manolias) (quoting PX-10); 2213:13-16 (I. Manolias). Defendants' policies also dictated that aides could not leave a patient alone and unattended under any circumstances*, see* Trial Tr. at 543:20-23; 546:6-17 (K. Manolias); and stated that aides faced termination if they left a patient unattended, *see* Trial Tr. at 545:16-20 (K. Manolias). Defendants even required some aides to turn and position their patients every two hours. *See* Trial Tr. at 549:12-17 (K. Manolias) (reviewing PX-7C Excerpts at 2). Defendants' failure to track and pay for all time they required aides to work was completely unreasonable.

B.  Defendants' conduct was unreasonable because Serene failed to follow its own supposed policies.

Even if one were to believe Defendants' claim that Serene maintained certain policies that, on their face, could comply with the FLSA if applied faithfully, Defendants' conduct was objectively unreasonable because Serene did not act in accordance with its own stated policies. *See, e.g., Mummert v. Vencor Inc.*, 21 F. App'x 710, 713 (9th Cir. 2001) (finding employer's "failure to follow its own policy fatal to its claim of good faith" and allowing liquidated damages in FLMA case). This is true both for Defendants' claim to have paid aides for all hours worked and

17

Defendants' claim to have provided adequate instruction to aides requiring them to report interruptions to sleep and meal periods.

At trial, Defendants claimed that Serene's policy was to pay aides for call-to-duty interruptions during unpaid sleep and meal periods. *E.g.*, Trial Tr. at 1849:12-22. The evidence showed otherwise: Defendants did not pay any live-in aides for any call-to-duty interruptions during the relevant period. *E.g.*, *supra* FN 3 (Defendants' admissions); Trial Tr. at 2427:14-15, 18-20; 2431:11-15; 2432:21-2433:4; 2437:17-2438:12; 2438:24-2439:20; 2612:10-22 (Stahl's review of Defendants' payroll). As such, the jury concluded that Defendants violated the FLSA by failing to pay for that time worked. ECF No. 284 at 2 (completed verdict sheet).

Defendants also claimed that aides were fully informed that they were required to report interruptions to sleep and meals and that they would be paid for time so reported. The record is replete with testimony from both sides demonstrating that Defendants did not so inform aides. Most notably, at the Sept. 4 Hearing, Defendant Manolias was confronted with her own prior admissions that Serene provided no written guidance to live-in aides instructing them to report interruptions to sleep and meal breaks. LD Tr. at 78:15-79:1. Aides' testimony at trial showed confusion about Defendants' directives, particularly because when aides reported interruptions, they were not paid for the time reported. *E.g.*, Trial Tr. at 137:19-25 (Musana Donaldson); 182:5-20 (Patrick Atta); 600:9-23, 615:5-616:6 (Taibat Kareem); 1244:19-1245:5 (Delisha Sanders); 1444:5-1445:5 (Abigail Boakye-Boateng); 2067:3-2068:10 (Buhle Mhlongo); 2123:12-24; 2125:3-10, 2126:8-2127:10, 2128:12-21, 2128:12-2130:7 (Helena Eshun). Many also recalled that in addition to not being paid when they reported work during uncompensated periods, they were not told to record the amount of time they had worked or reminded to report such interruptions. *E.g.*, Trial Tr. at 448:23-449:2 (Alethia Powell-Roberts); 961:2-962:4 (Nana Osei); 1021:6-

18

1022:17 (Tysharra Wright); 1867:18-23, 1868:15-1869:3 (Krystal Marine). At the same time, Defendants confused the issue of their instructions to aides by producing documents on the eve of trial, namely Defendants' "Job Description," which only served to muddy the waters.[5]

However, the question of whether, how, or when Defendants instructed aides to report interruptions to sleep or meal time need not be decided. Notably, the jury was not required to determine that question. However, in a last-ditch effort to establish a good faith defense, Defendants will likely ask the Court to address the issue. Defendants will engage in yet another blame game and claim that they acted reasonably in relying on aides' Aide Activity Sheets to pay only 12.5 or 13 hours per 24-hour shift since many aides did not use the sheets to report interruptions to sleep or meal periods. This is a red herring. Defendants' late-produced "Job Description" is simply not relevant to the question of whether Defendants acted in good faith. Defendants' claim of good faith intent expressed by allegedly informing aides of the requirement to report unpaid time falls flat because the trial record revealed that *even when aides did report unpaid time, Defendants ignored those reports and did not pay aides for that time*.

As the jury concluded, Defendants failed to pay aides for time worked during sleep and meal periods, even when Defendants knew that work had taken place. The trial showed that Defendants' policies were a sham and Defendants' alleged instructions to aides, even if given, were worthless. Defendants themselves did not follow the policy they claim to have maintained. Defendants' instructions to aides may be fuzzy, but Defendants' true practice is crystal clear. Defendants required aides to work through unpaid sleep and meal periods, failed to set up a system

---

[5] Because of their gross discovery misconduct, Defendants' purported "Job Description/Agreement" was precluded from use at trial, except for impeachment. For the adjudication of Defendants' good faith defense, the Court should decline to admit that document now, for reasons discussed at length in the Secretary's Response to Defendants' Motion in Limine to Admit Ex. LLLLLL. ECF No. 317.

that fully captured aides' actual time worked, ignored aides' reports of unpaid work, and paid only 12.5 or 13 hours each 24-hour shift regardless of actual hours worked. Defendants' failure to follow even their own internal guidance shows unreasonable conduct and lack of good faith.

C.   <u>Defendants' conduct was unreasonable because they did not follow the policies which they claim to have developed to comply with New York State Labor Law</u>.

At the Sept. 4 Hearing, Defendants attempted to shoehorn the FLSA into their purported state law compliance efforts, *see e.g.*, LD Tr. at 45-46, but this only revealed their unreasonable conduct. Defendants did not even follow the internal policies they claim to have developed in compliance with New York State law. *See e.g.*, LD Tr. at 69:7-11.

First, Defendants' claim to have focused on state law is belied by the fact that they paid 12.5 hours per 24-hour shift until the Department began its investigation, when they also repeatedly recognized that New York Labor Law requires employers to compensate live-in aides for a minimum of 13 hours per 24-hour live-in shift. *See* LD Tr. at 44:19-45:4 (Manolias testifying about following New York state court of appeals litigation and explaining that she heard about the "13-hour rule" since "somewhere around 2015").

Second, even if Defendants did attempt to ascertain the requirements of New York Labor Law by following the *Andryeyeva v. New York Health Care, Inc.* case, LD Tr. at 44-45, the conduct that led to their FLSA violations—i.e., failure to track and compensate all actual hours worked— does not comport with that case's dictates. As the court in *Andryeyeva* explained:

> The employer must pay when the employee is interrupted during these breaks for any time worked and must pay for the entire break when the employee does not receive the requisite hours of sleep and meal breaks. In other words, when the employee is able to take the prescribed eight hours of sleep and three hours of meal breaks, the home health care aide is paid for working the remaining time of the 24– hour shift—13 hours. If, in fact, the aide does not receive the minimum break time because the patient needs assistance, the aide is paid for 24 hours of work time.

*Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 166, 124 N.E.3d 162, 182 (2019). But, as the jury found, Defendants did not ensure that aides obtained sleep and rest periods free from calls to duty and failed to pay when aides did work during those periods. Therefore, Defendants' claim that they focused on state law as a way of showing FLSA compliance can only be viewed as self-serving, and only further illustrates that Defendants cannot meet their difficult burden to show good faith.

### D. Defendants' conduct shows bad faith.

The trial record contains other signs of Defendants' unreasonableness. For example, Defendants did track the actual hours that office staff worked, including lunch breaks, using a website that allowed office staff to log in and out electronically for breaks. Trial Tr. at 1356:22-1358:3. Defendants also maintained a system for tracking live-in aides' completed tasks, requiring aides to check them off on Aide Activity Sheets on a daily basis, and, when using electronic systems, requiring aides to confirm daily tasks electronically. Trial Tr. at 547:25-548:15; 1360:9-16. Defendants could have devoted the same focus – and perhaps, even the same electronic systems – to capturing live-in aides' actual time worked. Remarkably, even when Defendants did have an electronic system that had the capacity to track aides' work during sleep and meal periods, Defendants not only quickly abandoned it for actual use, but continued to instruct aides to use it and then ignored the data aides entered. Trial Tr. at 1733:10–1734:2; 1736:5–1738:6, 1741:7-25. Defendants have failed to prove that they acted with objective reasonableness. The evidence shows otherwise and instead reveals Defendants' bad faith.

## CONCLUSION

At the Sept. 4 Hearing, Defendants' attempt to portray their negligible efforts to comply with the FLSA as good faith only revealed their indifference to the FLSA's most basic

requirements: tracking and paying for all hours worked. As the trial demonstrated, Defendants had no intention to pay live-in aides for all their time worked, let alone an "honest intention" to ascertain and comply with the law. *SNET,* 121 F.3d at 71. Defendants failed to meet their burden and must pay an amount equal to the back wages of $5,293,437.55 in liquidated damages, for a total of $10,586,875.10.

DATED:      September 30, 2025
            New York, New York

                            JONATHAN L. SNARE
                            Acting Solicitor of Labor

                            JEFFREY S. ROGOFF
                            Regional Solicitor

                            *s/*
                            B. CARINA DE LA PAZ
                            HOLLIS V. PFITSCH
                            Trial Attorneys

                            U.S. Department of Labor
                            Office of the Regional Solicitor
                            201 Varick Street, Room 983
                            New York, NY 10014
                            646.264.3654/3667
                            646.264.3660 (fax)
                            delapaz.barbara.c@dol.gov
                            pfitsch.hollis.v@dol.gov
                            NY-SOL-ECF@dol.gov

                            Attorneys for Plaintiff
                            Secretary of Labor