UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lori Chavez-DeRemer, Secretary of Labor, United States Department of Labor,<br><br>                                   Plaintiff,<br><br>                  -v-<br><br>Sarene Services, Inc. d/b/a Serene Home Nursing Agency; Irene Manolias, Individually,<br><br>                                   Defendants. | 2:20-cv-3273<br>(NJC) (ST) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

In this action, the Secretary of the United States Department of Labor ("Secretary") seeks to enforce the Fair Labor Standards Act of 1938 ("FLSA") against Defendants Sarene Services, Inc. ("Sarene"), a company that provides home health services, and Irene Manolias, the company's owner (collectively "Defendants"). (Am. Compl., ECF No. 139.) The Amended Complaint brings claims to enforce the FLSA's overtime, recordkeeping, and anti-retaliation provisions on behalf of more than 500 workers whom Defendants formerly employed as home health aides, who are known as "live-in" aides because they worked 24-hour shifts in the homes of Sarene patients. (*See id.* (bringing claims under 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), 215(a)(3), 215(a)(5), 216, 217).)

Before the Court is Defendants' Motion for Reconsideration brought pursuant to Local Civil Rule 6.3, which seeks an order vacating the Court's September 2, 2025 Order denying Defendants' motion to stay this action ("Order"). (Mot. Reconsid., ECF No. 314; Mem., ECF

No. 315.) For the reasons discussed below, the Motion for Reconsideration is denied in its entirety.

## PROCEDURAL HISTORY

The Secretary filed this action on July 21, 2020. After more than three years of discovery, this Court commenced a jury trial in this action on April 1, 2025. (Min. Entry, Apr. 1, 2025.) The trial lasted more than three weeks. (*See* Min. Entry, Apr. 23, 2025.) On April 23, 2025, the jury rendered a verdict finding Defendants liable for violating the FLSA's overtime, recordkeeping, and anti-retaliation provisions. (Min. Entry, Apr. 23, 2025; Jury Verdict Sheet, ECF No. 284.) The jury found that, on average, Defendants' former live-in aides who worked more than 40 hours in a week, worked approximately three unpaid hours per 24-hour shift during the relevant time period. (Jury Verdict Sheet at 2.)

Pursuant to the jury's verdict, Defendants are liable for unpaid overtime compensation for more than 500 live-in aides formerly employed by Defendants during the relevant time period and corresponding liquidated damages under 29 U.S.C. § 216(c). On July 14, 2025, the Court held a teleconference with the parties and scheduled a bench trial for September 4 and 5, 2025 regarding the sole issue remaining in the litigation: whether the imposition of liquidated damages should be reduced under 29 U.S.C § 260 because Defendants have shown that "the act[s] or omission[s] giving rise to [this] action [were] in good faith and that [Defendants] had reasonable grounds for believing that [their] act[s] or omission[s] [were] not a violation of the [FLSA] . . . ." 29 U.S.C § 260; Min. Entry, July 15, 2025.[1]

---

[1] On December 6, 2024, prior to the jury trial in this action, the Court granted the Secretary's application for the Court to conduct a bench trial regarding Defendants' good faith defense to liquidated damages under 29 U.S.C § 260 in the event that the jury were to find Defendants

On August 25, 2025, Defendants filed a motion to stay all proceedings invoking the proposed Department of Labor regulation discussed below ("Motion to Stay") (Mot. Stay, ECF No. 303). On August 29, 2025, the Secretary opposed the Motion to Stay. (Mot. Stay Opp'n, ECF No. 304). On September 2, 2025, the Court issued the Order, denying the Motion to Stay. (Order Denying Stay, ECF No. 305.)

On September 4, 2025, the Court held a bench trial on Defendants' good faith defense to liquidated damages. (Min. Entry, Sept. 4, 2025.) On September 16, 2025, Defendants filed the Motion for Reconsideration. (Mot. Reconsid.; Mem.) On September 30, 2025, the Secretary filed her opposition. (Opp'n, ECF No, 318.) The Motion for Reconsideration is therefore fully briefed.

## LEGAL STANDARDS

Local Civil Rule 6.3 provides that a "motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." The standards governing a motion for reconsideration of a court order under Local Civil Rule 6.3 is identical to that for a motion for relief from a final judgment, order, or proceeding under Rule 60(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016) ("The standards governing motions under Local Rule 6.3 along with Fed. R. Civ. P. . . . 60(b) are the same."); *Kane v. New York State Unified Ct. Sys.*, No. 25-cv-3595, 2025 WL 2645577, at *1 (E.D.N.Y. Sept. 15, 2025) (same). As a result, even where a

---

liable for unpaid overtime compensation and liquidated damages under the FLSA, 29 U.S.C. § 216(c). (Dec. 6, 2024, Min. Entry (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 (2d Cir. 1988) (providing that the issue of a good faith defense to liquidated damages for unpaid overtime wages in violation of 29 U.S.C. § 216(c) is "within the discretion of the district judge" under 29 U.S.C. § 260)).)

3

party moves for reconsideration of a court order under only Local Civil Rule 6.3, decisions considering Rule 60(b) motions are instructive.

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sharma v. Rent the Runway, Inc.*, No. 22-cv-6935, ___ F. Supp. 3d ___, 2025 WL 2637971, at *2 (E.D.N.Y. Sept. 12, 2025). The standard for granting a Rule 60(b) motion—and therefore, a Local Civil Rule 6.3 motion—for reconsideration is "strict." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). The decision to grant or deny such a motion rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Commerzbank AG*, 100 F.4th at 377. In other words, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Id.* Reconsideration may not be used as a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *see also Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022). Rather, a motion for reconsideration "is properly denied where it seeks only to relitigate issues already decided." *Pastor v. P'ship for Child.'s Rts.*, 856 F. App'x 343, 345 (2d Cir. 2021) (citing *Zerman v. Jacobs*, 751 F.2d 82, 84–85 (2d Cir. 1984)).

## DISCUSSION

### I.   The Proposed Rule

As addressed in the Order, Defendants' request for an indefinite stay centered on two exemptions to the FLSA's minimum wage and overtime requirements. The first exemption is for individuals "employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15) (the "companionship services exemption"). The second exemption is for individuals who are "employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21) (the "live-in domestic services exemption").

Until 2013, rules promulgated by the United States Department of Labor ("DOL") permitted third-party employers—"employers of home care workers other than the individuals receiving care or their families or households," including home care agencies—to claim these exemptions from the FLSA's minimum wage and overtime requirements. 90 Fed. Reg. 28976, 28976–77 (July 2, 2025). In 2013, the DOL revised its regulations, narrowing the definition of companionship services and preventing third-party employers from claiming *either* the companionship services exemption *or* the live-in domestic services exemption. *Id.* (citing 78 Fed. Reg. 60454 (Oct. 1, 2013)). It is undisputed that these regulations were in effect during the time period relevant to this action—March 19, 2017 to December 31, 2020—and that they remain in effect at this time. 29 C.F.R. § 552.109(a), (c); Am. Joint Pre-Trial Order at 5, ECF No. 225.

On July 2, 2024, the DOL issued a proposed rule ("Proposed Rule") that would restore the pre-2013 regulations permitting third-party home care agencies to claim both the

5

companionship services exemption and the live-in domestic services exemption to the FLSA's minimum wage and overtime provisions for home care workers in their employ. 90 Fed. Reg. 28976 (proposing to amend 29 C.F.R. § 552.109(a), (c)).

## II. The Motion to Stay and this Court's Order

In the Motion to Stay, Defendants sought an indefinite stay of this action in light of the Proposed Rule, which they argued would potentially moot this action in the event that it was eventually adopted as a final rule. (Mot. Stay at 1–2.) In the Order, I evaluated the Motion to Stay by considering each of the factors set out in *Kappel v. Comfort*, 914 F. Supp. 1056 (S.D.N.Y. 1996), which district courts in the Second Circuit consider when resolving a motion to stay. (Order Denying Stay at 4–8.) These factors are:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.* at 1058; *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023). I found that each factor counseled against granting a stay and, accordingly, denied the Motion to Stay. (Order Denying Stay at 4–8.)

## III. The Parties' Arguments on Defendants' Motion for Reconsideration

Defendants seek reconsideration of the Order on three grounds. First, Defendants argue that the Court overlooked caselaw relating to the retroactivity of administrative rules, specifically, the Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and its progeny. (Mem. at 1–2.) Second, Defendants assert that the Court incorrectly found that Defendants waived any affirmative defense challenging the application of the current DOL regulations because, at the time the Defendants filed the Answer, the Proposed Rule

6

permitting third-party home care agencies to claim the companionship services and live-in domestic services exemptions had not yet been proposed. (*Id.* at 3.) Third, Defendants argue that the Order's analysis of the *Kappel* factors regarding the burdens on the parties, non-parties, and the public overlooked the following: (1) that Defendants "potentially face a judgment exceeding $10 million in a case that could be moot"; (2) that the basis for the stay request is the Secretary's own Proposed Rule; and (3) that denial of a stay affects the interests of non-parties and the public because entry of a judgment against Defendants in this action "could create harmful precedent in the home care industry that would negatively affect both the home health aides and their patients." (*Id.* at 3–5.)

The Secretary makes four arguments in opposition. First, the Secretary argues that Defendants' Motion for Reconsideration has "simply re-styled" the same arguments made in the underlying Motion to Stay, providing additional caselaw not previously presented to the Court. (Opp'n at 1–2.) Second, the Secretary argues that the Court did not "overlook controlling decisions or data" because the Order relied on "the seminal case" of *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), which stands for "the principle that even if the proposed rule becomes final, it would only apply prospectively," and because the cases on which Defendants rely, including *Landgraf*, are the "progeny" of *Bowen* and support the same principle. (*Id.* at 2.) The Secretary points out that Congress has not provided any express grant of authority to the Secretary to promulgate retroactive rules, and that the cases on which Defendants rely are distinguishable because they address whether "a statute or regulation [is] *impermissibly* retroactive"—not whether a proposed rule *must* be retroactive. (*Id.* at 2–4 (emphasis in original).) Third, the Secretary argues that the Court correctly found that Defendants waived any affirmative defense related to DOL regulations or exemptions because the text of the FLSA

7

itself, specifically 29 U.S.C. § 213(a)(15) and 29 U.S.C. § 213(b)(21), "gives notice of the possibility of an exemption" and, had Defendants acted conscientiously, they would have timely raised such an affirmative defense. (*Id.* at 4.) Fourth, the Secretary argues that the Court correctly evaluated the potential prejudice of denying an indefinite stay of this action and that Defendants' assertion of prejudice to the home care industry was fully considered because the home care industry's interests are aligned with Defendants' interests, which were considered in the Order. (*Id.* at 4–5.)

### IV. The Order's Application of the Law Relating to the Retroactivity of Administrative Rules

Defendants' arguments concerning the Order's application of the law regarding the potential retroactivity of administrative regulations do not identify any controlling law the Court ignored or any "clear error" warranting reconsideration, but instead largely mischaracterize case law and repeat arguments already considered by the Court. *Commerzbank AG*, 100 F.4th at 377. Indeed, in the Order, I already addressed Defendants' argument that the Proposed Rule could be amended to be retroactive, and found that: (1) "Defendants concede[d]" that "the current proposed rule is not retroactive" (Order Denying Stay at 6 (citing Mot. Stay at 1)); (2) that Defendants "[had] not identified *any text* in the proposed rule that requires retroactive application" (*id.* (emphasis added)); and (3) that "Defendants' burden argument is based on speculation that the proposed rule *may* be amended to apply retroactively and that, at some unspecified time in the future, it *may* ultimately be adopted in that amended form" (*id.* (emphasis in original)).

First, Defendants misconstrue the Supreme Court's decision in *Landgraf* to argue that it supports their argument that the Proposed Rule is likely to be retroactive. (Mot. Reconsid. at 1–2.) Contrary to Defendants' assertion, *Landgraf* is consistent with *Bowen* and the Order.

8

In *Landgraf,* the Supreme Court sought to resolve a tension between its holdings in *Bowen* and its earlier decision in *Bradley v. School Board of Richmond*, 416 U.S. 696 (1974). *See Landgraf*, 511 U.S. at 264. In *Bradley*, the Supreme Court had held that "a court is to apply the law in effect at the time it renders its decision." *Bradley*, 416 U.S. at 711. Yet, in *Bowen*, 488 U.S. at 208, it later held that "[r]etroactivity is not favored in the law" and that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." In *Landgraf*, the Supreme Court reiterated that "[t]he presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf*, 511 U.S. at 270. It also harmonized *Bradley* and *Bowen* by setting out a two-step inquiry to determine whether a statute applies retroactively to conduct that occurred prior to the statute's enactment:

> When a case implicates a federal statute enacted after the events in suit, *the court's first task* is to determine *whether Congress has expressly prescribed* the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. *When, however, the statute contains no such express command*, *the court must determin*e whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that *it does not govern absent clear congressional intent favoring such a result*.

*Id*. at 280 (emphasis added); *see also id.* at 264–64, 272–80. Thus, where Congress has "expressly" addressed whether a statute or, as in this case, a proposed regulation, will apply retroactively, that express prescription controls. *Id*. However, where Congress has *not* explicitly addressed retroactivity, a statute or a proposed regulation *cannot* apply retroactively without "clear congressional intent" if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* This two-step inquiry is entirely in line with *Bowen*'s emphasis on whether the

9

text of an administrative regulation signals that the regulation is to apply retroactively, which the Order correctly cited. (Order Denying Stay at 6 (citing *Bowen*, 488 U.S. at 208).)

Defendants' reliance upon *National Mining Association v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002), an out-of-Circuit decision, is unpersuasive. (*See* Mem. at 2.) Applying *Bowen* and *Landgraf*, the D.C. Circuit held that a new rule was "*impermissibly* retroactive as applied to pending claims"—the opposite point of what Defendants argue here— because the rule would have a retroactive effect and the agency promulgating the rule did not have congressional authorization to promulgate retroactive rules. *Nat'l Min. Ass'n.*, 292 F.3d at 859–60 (emphasis added). Here, as the Secretary points out, Congress has *not* authorized the Secretary to promulgate retroactive rules. (*See* Opp'n at 2–3 (citing Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (granting Secretary authority "to prescribe necessary rules, regulations" with no mention of retroactive effect); 29 U.S.C. § 213(a)(15) (authorizing the Department of Labor to "define[] and delimit[]" relevant terms with no mention of retroactive effect)).) Accordingly, *National Mining* does not present any intervening change of controlling law or demonstrate any clear error in this Court's conclusion that "Defendants fail[ed] to establish a clear case of hardship or inequity in being required to go forward with this litigation." (Order Denying Stay at 4.)

Defendants' reliance on another out-of-Circuit decision—*Levy v. Sterling Holding Company, LLC*, 475 F. Supp. 2d 463 (D. Del. 2007), *aff'd,* 544 F.3d 493 (3d Cir. 2008)—is similarly unpersuasive. (*See* Mem. at 2.) In *Levy*, a district court in Delaware applied *Bowen* and *Landgraf* to find that certain clarifying amendments to Securities and Exchange Commission rules were not a substantive change, would therefore *not* have retroactive effect, and thus were applicable in an action filed prior to the promulgation of the clarifying amendments. *Levy*, 475 F.

10

Supp. 2d at 475–78. *Levy* does not represent an intervening change of controlling law, nor does it demonstrate any clear error in this Court's Order denying the Motion to Stay.

Accordingly, Defendants have failed to identify any intervening change of controlling law or any clear error that warrants reconsideration of the Order's application of the law governing the potential retroactivity of administrative rules. *See Commerzbank AG*, 100 F.4th at 377.

V. **The Order's Finding that Defendants Waived Any Affirmative Defense Challenging the Application of Current DOL Regulations Governing the Companionship Services and Live-in Domestic Services Exemptions**

Defendants' argument that the Order's waiver finding was incorrect is unpersuasive for two reasons. First, the Order's finding of waiver did not require Defendants to act with "clairvoyance," as Defendants assert, but instead required Defendants to act with "conscientiousness" by timely asserting an affirmative defense challenging the Secretary's position on the applicability of the FLSA's companionship services and live-in domestic services exemptions—both of which are set forth in the plain text of the FLSA and have been unchanged during the entire course of this litigation. *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009); *see also* 29 U.S.C. §§ 213(a)(15), (b)(21). Defendants could have asserted a defense that these exemptions apply to them as a third-party employer of live-in aides, but they chose not to do so in any of the three answers filed in this case. (*See* Answer, ECF No. 10; Amended Answer, ECF No. 13; Answer Am. Compl., ECF No. 154).

Second, even if Defendants did not waive an affirmative defense that the exemptions do not apply, reconsideration is not warranted because, as discussed above and at length in the Order, the Proposed Rule is not final and *current* DOL regulations do not permit third-party home care agencies, including Defendants, to claim the FLSA's companionship services and

11

live-in domestic services exemptions. *See supra* Discussion § IV; Order Denying Stay at 4–8. I therefore deny reconsideration based on Defendants' argument that the Order erred in finding that Defendants waived any affirmative defense challenging the application of current DOL regulations governing the FLSA's companionship services and live-in domestic services exemptions.

## VI. The Order's Application of the *Kappel* Factors

Defendants' arguments regarding the Order's findings on the first, second, fourth, and fifth *Kappel* factors do not warrant reconsideration because Defendants fail to show any intervening change of controlling law or clear error in this Court's reasoning or that manifest injustice would result from the Order's denial of their requested indefinite stay of this action. *See Commerzbank AG*, 100 F.4th at 377.

The Order found that the first *Kappel* factor—the Secretary's private interests in proceeding expeditiously balanced against the prejudice to the Secretary if delayed—weighs strongly against imposing a stay because of the "significant resources" the Secretary expended "in vigorously prosecuting this action" and the Secretary's "strong private interest in proceeding expeditiously to finish prosecuting this representative action on behalf of more than 500 of Defendants' former employees." (Order Denying Stay at 4.)

Contrary to Defendants' contention, the fact that the Proposed Rule is one proposed by the Secretary does not alter this analysis. As discussed in the Order, the Proposed Rule lacks any indication that it will be retroactive. (*Id.*.) Defendants fail to point to *any* text in the Proposed Rule or any extrinsic document or source indicating that the Secretary has *any* intent for the rule—if it is adopted as a final rule—to apply retroactively to *any* conduct, much less the conduct of Defendants in this action. (*See* Mot. Stay; Mem.) Accordingly, Defendants' request

12

for an indefinite stay is contrary to the Secretary's private interests in this action, notwithstanding the fact that the Secretary has offered the Proposed Rule.

Defendants' argument that the Order purportedly overlooked that Defendants "potentially face a judgment exceeding $10 million in a case *that could be moot*" in its consideration of the second *Kappel* factor is meritless for the same reasons. (Mot. Reconsid. at 3–4 (emphasis added).) Contrary to Defendants' contention, the Order considered Defendants' potential mootness argument. (Order at 6–7.) The Order correctly found that the potential mootness of the judgment in this action is at best "speculation," because Defendants have already conceded in their Motion to Stay that the Proposed Rule, as currently drafted, will not be retroactive and because the "DOL is under no requirement to finalize the [P]roposed [R]ule within a set amount of time and could even withdraw the [P]roposed [R]ule." (Order Denying Stay at 6 (citing Mot. Stay at 1).) Defendants have put forth no evidence that those findings were erroneous. (*See* Mot. Reconsid.) Accordingly, the Order correctly concluded that Defendant's private interest and any burden faced by Defendants with proceeding to judgment in this action—the second *Kappel* factor—weighed against granting an indefinite stay. (Order Denying Stay at 6.)

To the extent that it was error for the Court not to explicitly note that Defendants' face a potential judgment exceeding $10 million based on the jury's verdict for the Secretary on all claims in this action, the Court makes clear that it fully recognizes that Defendants face the imposition of a significant damages award. If Defendants fail to prove their affirmative good faith defense to liquidated damages under 29 U.S.C. § 260, they will face a damages award exceeding $10 million. If Defendants succeed in proving this affirmative defense, they will still face a damages award exceeding $5 million. In either situation, Defendants face a significant monetary penalty due to the jury's determination that they violated the FLSA's overtime,

13

recordkeeping, and anti-retaliation provisions. The Court fully accounts for this context in determining that Defendant's private interest and any burden faced by Defendants with proceeding to a judgment in this action weighs *against* granting their request for an *indefinite* stay because, as discussed at length, Defendants fail to show that Congress granted the Secretary the authority to promulgate retroactive regulations and that the Proposed Rule, even if eventually enacted, would apply retroactively to exempt their conduct between March 2017 and December 2020 from the FLSA's overtime requirements. (Order Denying Stay at 6–7.)

      Defendants' argument that the Order overlooked the interests of non-parties and the public in expanding access to home care services is also unpersuasive. Defendants' contention that denial of the requested indefinite stay of this particular action would "create harmful precedent in the home care industry that would negatively affect both the home health aides and their patients," boils down to Defendants' policy disagreement with the current regulations defining the scope of the companionship services and live-in domestic services exemptions to the FSLA's overtime requirements. (Mot. Reconsid. at 5.) To the extent Congress determines that it is in the public interest to broaden these exemptions to include the conduct of third-party employers, including Defendants, from March 2017 through December 2020, Congress can make that policy change by enacting a statute or otherwise empowering the Secretary to enact a retroactive regulation. But here, where Defendants fail to show that the Proposed Rule retroactively applies to their past conduct or that Congress has even authorized the Secretary to promulgate retroactive regulations, Defendants' repeated expressions of their policy disagreement with the current regulations fails to show that the Order overlooked any facts in its weighing of the *Kappel* factors. The Order found that the fourth and fifth *Kappel* factors—(4) the interests of persons not parties to the civil litigation and (5) the public interest—weighed against

14

granting the Motion to Stay because the requested stay "would last *indefinitely*, causing even further delay to this long-pending litigation with no discernible end" and because further delay would harm the "[m]ore than 500 of Defendants' former employees who worked as live-in aides from March 2017 through 2020," whom a "jury has already determined . . . are owed back wages for performing uncompensated overtime hours" "between five and eight years ago." (Order Denying Stay at 4–5 (citing Jury Verdict Sheet).) The Order thus appropriately considered the interests of non-parties and the public in light of the regulations applicable to Defendants' conduct during the relevant time period, the scope of the Secretary's rulemaking authority, and the text of the Proposed Rule.

## CONCLUSION

For the reasons stated above, Defendants have failed to identify any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," which would warrant granting the Motion for Reconsideration. *Commerzbank AG*, 100 F.4th at 377. Accordingly, the Motion for Reconsideration (ECF No. 314) is denied.

Dated: Central Islip, New York
October 22, 2025

                                               /s/ Nusrat J. Choudhury
                                               NUSRAT J. CHOUDHURY
                                               United States District Judge