**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Keith Sonderling, Acting Secretary, United States Department of Labor,[1]<br><br>                                   Plaintiff,<br><br>                   -v-<br><br>Sarene Services, Inc. d/b/a Serene Home Nursing Agency; Irene Manolias, Individually,<br><br>                                   Defendants. | 2:20-cv-3273<br>(NJC) (ST) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

The Secretary of the United States Department of Labor brought this action to enforce the Fair Labor Standards Act of 1938 ("FLSA") against Defendants Sarene Services, Inc. ("Sarene"), a company that provides home health services, and Irene Manolias, the company's owner (collectively "Defendants"). (Am. Compl., ECF No. 139.) The Amended Complaint brings claims to enforce the FLSA's overtime, recordkeeping, and anti-retaliation provisions on behalf of more than 500 workers whom Defendants formerly employed as home health aides. (*See id.* (bringing claims under the FLSA, 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), 215(a)(3), 215(a)(5), 216, 217).) Before the Court is the parties' renewed joint letter motion to approve the proposed consent judgment to resolve the claims against Defendants. (ECF Nos. 332, 333.)

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Keith Sonderling is automatically substituted for Lori Chavez-DeRemer as Plaintiff in this action. *See* Fed. R. Civ. P. 25(d). The Clerk of Court is respectfully directed to update the case caption consistent with this substitution.

For the reasons set forth below, the motion is granted and the proposed consent judgment, which is filed as an attachment to this Memorandum and Order, is approved.

## BACKGROUND

The Secretary filed this action on July 21, 2020, alleging that Defendants failed to keep accurate time records and to pay hundreds of former live-in aide employees minimum and overtime wages in violation of various provisions of the FLSA, 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5). (Compl., ECF No. 1.) After several years of discovery, the Secretary filed the Amended Complaint on July 16, 2024, which added FLSA retaliation claims under 29 U.S.C. § 215(a)(3). (Am. Compl., ECF No. 139.)

On April 1, 2025, the Court commenced a four-week jury trial on the Secretary's recordkeeping, overtime, and retaliation claims. (Min. Entry, Apr. 1, 2025; Second Proposed Jury Tr. JPTO, ECF No. 225.[2]) On April 25, 2025, the jury rendered a verdict finding Defendants liable for violating the FLSA's overtime and recordkeeping provisions from March 19, 2017 through December 31, 2020 and for violating the FLSA's anti-retaliation provisions in the course of gathering declarations from former Sarene live-in aides—the workers on whose behalf the Secretary is pursuing this action. (Min. Entry, Apr. 25, 2025; Jury Verdict Sheet, ECF No. 284; Second Proposed Jury Tr. JPTO, ECF No. 225 at 5.) Pursuant to the jury's verdict, Defendants are liable for unpaid overtime compensation and liquidated damages under 29 U.S.C. § 219(c), statutory damages for the FLSA recordkeeping violation, and $46,200 in punitive damages for violation of the FLSA's anti-retaliation provision. (Jury Verdict Sheet.)

---

[2] The Second Proposed Jury Trial JPTO amended the parties' First Proposed Jury Trial JPTO, filed December 13, 2024. (ECF No. 182.)

On September 4, 2025, the Court held a one-day bench trial regarding the sole issue remaining in the litigation: whether the imposition of liquidated damages should be reduced under 29 U.S.C. § 260 due to any good faith of the Defendants. (Min. Entry, Sept. 4, 2025.) On February 18, 2026, the Court issued an Opinion and Order ruling that liquidated damages would not be reduced, as Defendants failed to demonstrate that they had acted in good faith and that it was objectively reasonable to believe that they were not violating the FLSA's requirements with respect to their live-in aide employees. *See Chavez-Deremer v. Sarene Services, Inc.*, 2026 WL 467788 (E.D.N.Y. 2026). Accordingly, the Court ordered Defendants to "pay an amount equal to the back wages of $5,293,437.55 in liquidated damages for a total of $10,586,875.10."[3] *Id*. at *38. The Court further ordered the parties to jointly propose the terms of a judgment for entry by the Court. *Id*.

On July 16, 2026, the parties filed a joint letter motion to approve a proposed consent judgment that would resolve the claims against Defendants. (ECF No. 332.) On July 29, 2026, at the Court's direction, the parties filed a corrected proposed consent judgment containing revisions to the attached exhibits. (Elec. Order, July 24, 2026; Consent Judgment, ECF No. 333.)

Under the terms of the proposed consent judgment, Defendants shall pay $3,176,900.00 in unpaid overtime back wages, $3,176,900.00 in liquidated damages, and $46,200 in punitive damages to the employees listed in Exhibit A to the proposed consent judgment, for a total payment of $6,400,00.00. (ECF No. 333 at 4.) Pursuant to the proposed consent judgment, Defendants are prohibited from violating sections 6, 7, 11(c), 15(a)(2), 15(a)(3), and 15(a)(5) of the FLSA, and each party will bear its own fees and expenses incurred in connection with this

---

[3] The parties had stipulated that the amount of back wages owed by Defendants was $5,293,437.55. (*See* ECF No. 301.)

action. (*Id.* at 2–4, 9.) Defendants must also visibly display in its offices U.S. Department of Labor flyers regarding employees' rights under the FLSA, and Defendant Manolias and certain employees at Sarene must undergo professional training regarding the requirements of the FLSA. (*Id*. at 8.)

## LEGAL STANDARDS

The Second Circuit "recognizes a strong federal policy favoring the approval and enforcement of consent decrees." *S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 293 (2d Cir. 2014) (internal quotation marks omitted). In reviewing a proposed consent judgment involving an enforcement agency, a court must "determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved." *Id*. at 294 (internal quotation marks omitted). The court must consider the following four factors when evaluating whether a proposed consent decree is fair and reasonable: (1) "the basic legality of the decree"; (2) "whether the terms of the decree, including its enforcement mechanism, are clear"; (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." *Id*. at 294–95 (internal citations omitted). "The primary focus of the inquiry, however, should be on ensuring the consent decree is procedurally proper, using objective measures similar to the factors set out above, taking care not to infringe on the [enforcement agency's] discretionary authority to settle on a particular set of terms." *Id*. at 295. A court must enter a proposed consent judgment involving an enforcement agency "absent a

4

substantial basis in the record for concluding that the proposed consent decree does not meet these requirements. . . ." *Id*. at 294.

## DISCUSSION

Here, the parties' proposed consent judgment is "fair and reasonable" in accordance with the factors set forth in *S.E.C. v. Citigroup Global Markets, Inc.* and the "public interest would not be disserved" by its entry. 752 F.3d at 294. All four factors considered to evaluate the fairness and reasonableness of a proposed consent judgment weigh in favor of approval for the reasons explained below.

### I.     Basic Legality of the Proposed Consent Judgment

The proposed consent judgment satisfies the "basic legality" requirement. *Citigroup*, 752 F.3d at 294. "A proposed consent judgment with the U.S. government is legal as long as the court has authority to enter the judgment and the plaintiff has authority to enforce it." *S.E.C. v. Xia*, No. 21-cv-5350, 2024 WL 3592170, at *5 (E.D.N.Y. July 26, 2024). The proposed consent judgment enjoins Defendants from violating the FLSA's minimum wage, overtime, recordkeeping, and anti-retaliation provisions, requires Defendants to maintain accurate records of employees' hours and wages, and requires Defendants to take certain steps designed to promote employees' awareness of their rights under the FLSA. (ECF No. 333 at 3, 8.) The proposed consent judgment also provides for monetary relief in the form of $3,176,900.00 in unpaid overtime back wages, $3,176,900.00 in liquidated damages, and $46,200 in punitive damages to the employees listed in Exhibit A to the proposed consent judgment, for a total payment of $6,400,00.00. (ECF No. 333 at 4.)

The Court has the authority to enter a judgment in this action for injunctive and monetary relief. *See* 28 U.S.C. § 1331 (granting federal question jurisdiction); *id*. § 1345 (granting original

jurisdiction over civil actions commenced by the United States or one if its agencies or officers); 29 U.S.C. § 216 (allowing damages actions to be brought in state or federal court for FLSA violations); 29 U.S.C. § 217 (granting federal courts jurisdiction to restrain FLSA violations). Plaintiff—the Secretary of Labor—has the authority to enforce the FLSA. *See* 29 U.S.C. §§ 216, 660(c) (authorizing the Secretary of Labor to bring FLSA enforcement actions). Accordingly, the proposed consent judgment comports with the basic legality standard.

## II.   Clarity of the Proposed Consent Judgment

The proposed consent judgment is clear on its terms and the mechanism for enforcing its requirements. "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed" and that makes clear "precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (quotation marks omitted). The proposed consent judgment identifies particular FLSA provisions with which Defendants must comply and describes the specific actions that are prohibited: (1) Defendants are prohibited from paying live-in aides wages "at rates less than those which are now . . . applicable under Section 6 [of the FLSA]"; (2) Defendants are prohibited from requiring workers to work more than the maximum hours permitted under Sections 7 and 15(a)(2) of the FLSA "unless the employees receive compensation" for those excess hours "at rates not less than one and one-half times the employees' regular rates" of pay; (3) Defendants may not "discourag[e] employees from speaking . . . or otherwise cooperating with the Department" in its enforcement of the FLSA; and (4) Defendants must not "retaliat[e] or threaten[] to retaliate against employees because of their protected activity," among other things. (ECF No. 333 at 2–4.) The proposed consent judgment further specifies that Defendants must "make, keep, and preserve adequate records" with respect to employees' wages, hours worked, and conditions of employment. (*Id*. at 3.) Under the consent

6

judgment, Defendants must also visibly display in its offices flyers of the U.S. Department of Labor regarding employees' rights under the FLSA, and Defendant Manolias and certain employees at Sarene must undergo professional training regarding the requirements of the FLSA. (*Id*. at 8.) The proposed consent judgment also sets forth the means by which Defendants shall notify eligible employees of their rights under the settlement agreement, and attaches English and Spanish language versions of the notice as Exhibit C. (*Id*. at 8.)

With respect to monetary relief, the proposed consent judgment clearly identifies the specific employees who will receive unpaid back wages, liquidated damages, and punitive damages and the specific amounts that each employee will receive. (*See* Ex. A, ECF No. 333 at 11–21.) The proposed consent judgment also clarifies when and by which mechanism Defendants will make payment to the Secretary, and provides that the Secretary will distribute payments to Defendants' employees. (*Id*. at 5–6.) According to the consent judgment, Defendants' failure to pay may result in the Secretary filing with the Court an executed Confession of Judgment, which is attached as Exhibit B to the consent judgment, for the full amount awarded at trial of $10,586,875.10 in back wages and liquidated damages and $46,200 in punitive damages, in addition to post-judgment interest which will accrue starting September 9, 2026. (*Id*. at 6–7.)

Each of the aforementioned terms of the consent judgment is clearly laid out. Therefore, the proposed consent judgment is clear on its terms and execution.

### III.    Resolution of the Actual Claims of the Complaint

The proposed consent judgment resolves the actual claims in the Amended Complaint, which concern Defendants' alleged failure to comply with the FLSA's overtime and recordkeeping provisions from around March 19, 2017 through December 31, 2020, and with the

FLSA's anti-retaliation provisions. (*See* Am. Compl. ¶¶ 106–116, ECF No. 139.) The proposed consent judgment provides Defendants' employees, who are enumerated in Exhibit A to the consent judgment, unpaid back wages, liquidated damages, and punitive damages and enjoins Defendants from engaging again in the same conduct in violation of the FLSA. It also provides for injunctive relief designed to promote employees' awareness of their rights under the FLSA, including their rights to overtime pay. (ECF No. 333 at 8.) Accordingly, the proposed consent judgment resolves the actual claims in the Complaint.

### IV.    Lack of Improper Collusion or Corruption

There is no evidence in the record suggesting that the proposed consent judgment is tainted by improper collusion or corruption. By contrast, the parties were involved in extensive, adversarial litigation over the course of several years, which included three years of discovery, voluminous motions in limine, a four-week jury trial, and a one-day bench trial. *See Sarene Services, Inc.*, 2026 WL 467788, at \*2–4; *see also* Dkt. Moreover, the parties only reached a settlement with the assistance of a skilled mediator, retired Magistrate Judge Steven Gold of this District, over the course of lengthy negotiations. Therefore, the proposed consent judgment is free of improper collusion or corruption.

### V.    The Public Interest

Finally, the "public interest would not be disserved" by entry of the consent judgment against Defendants. *Citigroup*, 752 F.3d at 294. "The job of determining whether the proposed [agency] consent decree best serves the public interest . . . rests squarely with the [agency], and its decision merits significant deference." *Id*. at 296. "Courts in this Circuit have approved consent judgments when the judgments do not 'bar[] private litigants from pursuing their own claims independent of the relief obtained under the consent decree,' . . . or when 'no participants

8

in [the] proceeding have set forth a legitimate basis for concluding that the consent decree would harm the public.'" *Xia*, 2024 WL 3592170 at *9 (citing *S.E.C. v. Caledonian Bank Ltd.*, 317 F.R.D. 358, 374 (S.D.N.Y. 2016)). Here, the Secretary maintains that the proposed consent judgment is "fair and reasonable, and serves the public interest." (ECF No. 332 at 1.) No participants in the proceeding have asserted that the consent decree would harm the public. Accordingly, the Court affords the Secretary's determination "significant deference" and finds that the proposed consent judgment serves the public interest. *Citigroup*, 752 F.3d at 296.

## CONCLUSION

For the foregoing reasons, the proposed consent judgment is fair and reasonable and does not disserve the public interest. As a result, the Court approves the proposed consent judgment, which is filed as an attachment to this Memorandum and Order.

The Clerk of the Court is directed to enter judgment accordingly and close the case. Nevertheless, the assigned magistrate judge shall have jurisdiction over any contempt proceeding related to the Consent Judgment as set forth in the document itself.

Dated: Central Islip, New York
July 31, 2026

 */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

9